**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF FLORIDA**

GRATUITY SOLUTIONS, LLC and
GRATUITY, LLC

Plaintiff,

v.

TOAST, INC.

Defendant.

**Civil Action No.** _____

**JURY TRIAL DEMANDED**

**VERIFIED COMPLAINT**

Plaintiffs Gratuity Solutions, LLC and Gratuity, LLC (collectively "GS", "Gratuity Solutions" or "Plaintiffs"), for their Complaint against Defendants Toast, Inc. (referred to herein as "Toast"), allege the following:

**NATURE OF THE ACTION**

1.     Plaintiffs bring this action to recover damages for, and to stop, misappropriation of Plaintiffs' trade secrets and other confidential information that has occurred, and continues to occur, by certain of Toast's officers, directors, and/or members of its Customer Advisory Board(s), who obtained access to Plaintiffs' trade secrets and other confidential information pursuant to confidentiality agreements including, but not limited to, Plaintiffs' Joint User Agreement; and who have violated those agreements by then using, disclosing, and/or encouraging others to disclose Plaintiffs' protected trade secrets and other confidential information to Toast, which

has used such misappropriated information to develop its own competing systems and features and damaged Plaintiffs' business and business relationships.

## THE PARTIES

2.     Plaintiff Gratuity Solutions, LLC is a limited liability company organized under the laws of the State of Florida with a place of business at 3520 Kraft Road, Suite 200 Naples, FL 34105.

3.     Plaintiff Gratuity, LLC is a limited liability company organized under the laws of the State of Florida with a place of business at 3520 Kraft Road, Suite 200 Naples, FL 34105.

4.     Defendant Toast, Inc. is a corporation organized under the laws of the State of Delaware with a principal place of business at 333 Summer Street, Boston, MA 02210.  According to Toast's website, Toast sells and provides it restaurant management products and services throughout the United States, including in the State of Florida, and within this judicial district specifically, and has continuously and systematically availed itself of the privileges of doing business in the State of Florida for years, and has introduced and continues to introduce its products and services in Florida, and in this judicial district specifically.  (*See* Ex. 1, https://pos.toasttab.com/local-partner-directory?type=florida&topic=#category-filter;                              Ex.                              2, https://www.toasttab.com/local/search?filters=eyJ1c2VyTGF0IjoyNy45NTE2OD k2LCJ1c2VyTG9uZyI6LTgyLjQ1ODc1MjY5OTk5OTk5LCJ1c2VyQ2l0eSI6IlRhb XBhIiwidXNlclN0YXRlIjoiRkwifQ%3D%3D&pg=1;                              Ex.                              3,

https://www.toasttab.com/local/search?filters=eyJ1c2VyTGF0IjoyNy43NjcxMjcx

LCJ1c2VyTG9uZyI6LTgyLjYzODQ0NTEsInVzZXJDaXR5IjoiU3QuIFBldGVyc2

J1cmciLCJ1c2VyU3RhdGUiOiJGTCJ9&pg=1;                  Ex.                  4,

https://www.toasttab.com/local/search?filters=eyJ1c2VyTGF0IjoyOC41MzgzOD

MyLCJ1c2VyTG9uZyI6LTgxLjM3ODkyNjksInVzZXJDaXR5IjoiT3JsYW5kbyIsI

nVzZXJTdGF0ZSI6IkZMIn0%3D&pg=1;                  Ex.                  5,

https://pos.toasttab.com/blog/savage-labs;                  Ex.                  6,

https://pos.toasttab.com/blog/buccan;  Ex.  7,  https://pos.toasttab.com/blog/on-

the-line/how-to-start-a-food-business-from-home-in-florida;                  Ex.                  8,

https://pos.toasttab.com/blog/on-the-line/how-to-open-a-restaurant-in-florida;  Ex.

9,      https://pos.toasttab.com/blog/on-the-line/bar-licenses-and-permits-in-florida.)

Upon information and belief, Toast employs, and has employed, various Account

Executives throughout the State of Florida to help with the sale of its products and

services    in    the    State    of    Florida,    (*See*,    *e.g.*,    Ex.    10,

https://www.indeed.com/cmp/Toast,-Inc/reviews?id=d1406f834116612e;  Ex.  11,

https://www.linkedin.com/jobs/view/lakeland-fl-territory-account-executive-at-

toast-3920101973/; Ex. 12, https://www.linkedin.com/in/morgan-innes-2571542a/;

Ex.  13,  https://www.instagram.com/lifeattoast/p/CUDq9LbrKMN/;  Ex.  14,

https://www.zoominfo.com/p/Dennis-Madrid/3741392613;                  Ex.                  15,

https://www.salary.com/job/toast/regional-vice-president-sales-

florida/j202202151318289660996;                  Ex.                  27,

https://pos.toasttab.com/customers/swah-rey;.)

3

5.     According to Toast's website, it also maintains an official Customer Advisory Board.  (*See* Ex. 16, https://pos.toasttab.com/customer-advisory-board.) According to Toast, its official Customer Advisory Board is "composed of industry leaders from across the Toast customer network . . ." who "provide Toast with valuable insights to help guide the future of Toast . . ." and provide "insights and feedback that help inform our product roadmap . . . ."   (*See* Ex. 17, https://pos.toasttab.com/news/toast-announces-2024-customer-advisory-board-members.)

6.     A number of present and former members of Toast's official Customer Advisory Board are, or were in the past, also customers of Plaintiffs, and as such, have had access to and have received Plaintiffs' trade secrets and other confidential information pursuant to various confidentiality agreements including, but not limited to, Plaintiffs' Joint User Agreement, and specifically including the Confidentiality Provisions of Section 11, which survive that agreement.  (*See* Ex. 18.)

7.     According to Toast's Customer Advisory Board website, Joy Zarembka ("Zarembka") has been the Vice President of Planning and Innovation for Busboys and Poets since 2014, and is also a member of Toast's Customer Advisory Board.  (*See* Ex.  19,  https://pos.toasttab.com/customer-advisory-board;  Ex.  20, https://www.busboysandpoets.com/.)  Upon information and belief, Zarembka has been involved in the misappropriation of Plaintiffs' trade secrets and other confidential information, both in her capacity as a member of Toast's Customer Advisory Board

and in her capacity as Vice President of Planning and Innovation for Busboys and Poets.

8.     On or about August 18, 2016, Zarembka was provided with Plaintiffs' offer to provide Busboys and Poets with gratuity management services "subject to the terms set forth" in Plaintiffs' Service Level and User Agreement.  (*See* Ex. 21.)

9.     Since at least January 20, 2018, Busboys and Poets and all employees thereof, including Zarembka as Vice President of Planning and Innovation for Busboys and Poets, have been subject to the provisions of Plaintiffs' Joint User Agreement, including the Confidentiality Provisions of Section 11.

## JURISDICTION AND VENUE

10.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 for claims brought under the Federal Defend Trade Secrets Act, 18 U.S.C. § 1836.

11.     This Court also has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 because there is complete diversity among the parties and the amount in controversy exceeds $75,000, exclusive of interest and costs.

12.     This Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

13.     Toast is subject to this Court's general personal jurisdiction based on its continuous and systematic availment of the privileges of doing business in the State of Florida, including regularly doing and soliciting business from customers in Florida, including selling products and services to its customers throughout the State of Florida for years, and otherwise engaging in other persistent courses of conduct and/or

deriving substantial revenue from goods and services provided to individuals in the State of Florida. (See Ex. 1, https://pos.toasttab.com/local-partner-directory?type=florida&topic=#category-filter; Ex. 2, https://www.toasttab.com/local/search?filters=eyJ1c2VyTGF0IjoyNy45NTE2OD k2LCJ1c2VyTG9uZyI6LTgyLjQ1ODc1MjY5OTk5OTk5LCJ1c2VyQ2l0eSI6IlRhb XBhIiwidXNlclN0YXRlIjoiRkwifQ%3D%3D&pg=1; Ex. 3, https://www.toasttab.com/local/search?filters=eyJ1c2VyTGF0IjoyNy43NjcxMjcx LCJ1c2VyTG9uZyI6LTgyLjYzODQ0NTEsInVzZXJDaXR5IjoiU3QuIFBldGVyc2 J1cmciLCJ1c2VyU3RhdGUiOiJGTCJ9&pg=1; Ex. 4, https://www.toasttab.com/local/search?filters=eyJ1c2VyTGF0IjoyOC41MzgzOD MyLCJ1c2VyTG9uZyI6LTgxLjM3ODkyNjksInVzZXJDaXR5IjoiT3JsYW5kbyIsI nVzZXJTdGF0ZSI6IkZMIn0%3D&pg=1; Ex. 5, https://pos.toasttab.com/blog/savage-labs; Ex. 6, https://pos.toasttab.com/blog/buccan; Ex. 7, https://pos.toasttab.com/customers/swah-rey; Ex. 8, https://pos.toasttab.com/blog/on-the-line/how-to-start-a-food-business-from-home-in-florida; Ex. 9, https://pos.toasttab.com/blog/on-the-line/how-to-open-a-restaurant-in-florida.) Upon information and belief, Toast employs, and has employed, various Account Executives throughout the State of Florida to help with the sale of its products and services in the State of Florida, (*See*, e.g., Ex. 10, https://www.indeed.com/cmp/Toast,-Inc/reviews?id=d1406f834116612e; Ex. 11, https://www.linkedin.com/jobs/view/lakeland-fl-territory-account-executive-at-

toast-3920101973/; Ex. 12, https://www.linkedin.com/in/morgan-innes-2571542a/;

Ex. 13, https://www.instagram.com/lifeattoast/p/CUDq9LbrKMN/; Ex. 14,

https://www.zoominfo.com/p/Dennis-Madrid/3741392613;        Ex.        15,

https://www.salary.com/job/toast/regional-vice-president-sales-

florida/j202202151318289660996.)

14.    Venue is proper in this district because Toast is subject to general personal

jurisdiction in the State of Florida, and is thus a resident under 28 U.S.C. § 1391(c).

## BACKGROUND

**Toast's Confidentiality Obligations to Plaintiffs**

15.    Plaintiffs and Defendant Toast began their partnership and business

interactions on or about August 2016 when Plaintiffs approached Toast to discuss

building a solution to enable Toast Point-of-Sale customers to utilize the Plaintiffs'

platform for gratuity distributions.  Plaintiffs were put in touch with Ming-Tai Huh,

who at the time, on information and belief, was responsible for Toast's partnerships

and products.

16.    Plaintiffs and Defendant Toast entered into their first Non-Disclosure

Agreement ("2016 NDA"), which was drafted by Defendant and signed by Mr. Huh,

on or about August 29, 2016.  A true and correct copy of this agreement is attached as

Exhibit 22.  Based on the 2016 NDA, Toast obtained access to Plaintiffs' trade secrets

and other confidential information including, for example, certain technical and/or

financial information related to, for example, certain business plans and strategies;

customer lists and preferences; development information and plans including feature

sets and applications and/or methodologies for integrating and implementing such features sets; work flows; software routines and applications for obtaining and processing customer-specific information; system architectures and interfaces; and associated source code.

17. From 2016 through the date of this filing, Toast lists Gratuity Solutions as an "Integration Partner" on their website and consistently refers customers and clients to Plaintiffs.

18. In late 2019, a business broker approached Toast on behalf of Plaintiffs to ask whether Toast would be interested in discussing acquiring Plaintiffs. Mr. Matthew Baumgartner, Toast's Principal of Corporate Development and Strategy indicated that Toast would be interested and sent over a second NDA agreement ("2019 NDA") for both parties as part of discussions related to merger or acquisition of Plaintiffs by Toast. A true and correct copy of this agreement is attached as Exhibit 23. During the course of these negotiations, Plaintiffs' trade secrets and other confidential information were further disclosed to Toast including certain technical and/or financial information related to, for example, certain business plans and strategies; customer lists and preferences; development information and plans including feature sets and feature development and release plans; applications and/or methodologies for integrating and implementing such features sets and future features; work flows including customer-specific flows, software routines and applications for obtaining and processing customer-specific information; system architectures and interfaces; and associated source code.

19.    After a January 14, 2020 call to discuss the possibility of acquiring Plaintiffs, Mr. Baumgartner emailed the business broker to indicate that Toast would *not* be moving forward with acquiring Plaintiffs, stating: "Right now we won't be able to go further in the M&A process but are excited to grow in our partnership with the team."

20.    Since at least 2016, Toast was aware of the functions, capabilities, and requirements of Plaintiffs' software as it was advertised as an integrated product on Toast's platform, and knew or should have known that certain information was not publicly known, including Plaintiffs' trade secrets and other confidential information including, for example, technical and/or financial information related to, for example, certain business plans and strategies; customer lists and preferences; development information and plans including feature sets and feature development and release plans; applications and/or methodologies for integrating and implementing such features sets and future features, work flows including customer-specific flows, software routines and applications for obtaining and processing customer-specific information; system architectures and interfaces; and associated source code.

21.    During the business relationship between Toast and Plaintiffs, Toast was aware or should have been aware of the confidentiality restrictions Plaintiffs placed on access to and use of their trade secrets and other confidential information, both with respect to Toast and Plaintiffs' other customers.

22.    On September 1, 2021, Plaintiffs reached out to Toast's General Counsel, Brian Elworthy, CEO Chris Comparato, and integrations lead Mr. Ming-Tai Huh to

update them on Plaintiffs' performance and to invite them to re-engage in merger and acquisition discussions.  No response from was received from Toast.

23.    On or around November 16, 2021, Toast announced its own gratuity management solution entitled "Toast Tips Manager" which contained many of the specific features found in Plaintiffs' products, and which continues to add new features identified and developed by Plaintiffs.

24.    On September 19, 2022, Plaintiffs filed suit against Toast for patent infringement of U.S. Patent No. 9,741,050 ("the '050 patent"), in the U.S. District Court for the District of Massachusetts.  (*See Gratuity Solutions, LLC and Gratuity, LLC v. Toast, Inc.*, Civ. Action No. 1:22-cv-11539 (D. Mass.).)  That case is presently stayed pending an *Inter Partes* Reexamination ("IPR") before the U.S. Patent and Trademark Office.

25.    Although the '050 patent generally discloses methods and systems for managing gratuity distributions for multiple customers, the invention uses an "interface"—such as the "gratuity sync application"—that  may be configured in any number of ways depending on each customer's specific system requirements and "gratuity distribution rules" which can be tailored depending on each customer's specific needs such as number of employees, the type of job performed by each employee, the length of each employee's shift, and other customer-specific information.  During the litigation, however, Toast argued, *inter alia*, that the asserted patent claims were indefinite for failing to disclose the specific configuration of Plaintiffs' "gratuity sync application" interface.  (*See* Ex. 26, D.I. 82-1.)

26.    Plaintiffs have maintained that disclosure of such configuration information is not necessary because: (1) the patent claims are directed to systems where the interface may be configured in any number of ways depending on each customer's specific system requirements as well as their customized gratuity distribution rules (which can be tailored depending on each customer's specific needs such as number of employees, the type of job performed by each employee, the length of each employee's shift, and other customer-specific information that is specific to each); and (2) the configurations of Plaintiffs' interface, including the "*recipes*" used depending on each customer's specific requirements, needs, and preferences, are all trade secrets maintained in confidence through Plaintiffs' Joint User Agreement.

27.    Based on the similarity in features sets as between Plaintiffs' commercial offerings and those of Toast, as well as the speed with which Toast developed its competing product features, Plaintiffs believe that Toast misappropriated Plaintiffs' confidential trade secrets to develop its competitive products.

28.    Further, on or about July 17, 2024, Plaintiffs discovered that Toast was actually publishing Plaintiffs' trade secrets on Toast's public website. (*See* Ex. 24 (pending motion to file under seal).)

**Joy Zarembka's Obligations to Maintain Plaintiffs' Confidential Information**

29.    On or about August 18, 2016, Zarembka of Busboys and Poets was provided with Plaintiffs' offer to provide Busboys and Poets with gratuity management services "subject to the terms set forth" in Plaintiffs' Service Level and User

Agreement.  Zarembka was therefore aware of, or should have been aware of, Busboys and Poets' continuing obligations to maintain the confidentiality of Plaintiffs' trade secrets and other confidential information.

30.    Since at least January 20, 2018, Busboys and Poets and all its employees, including Zarembka, owed Plaintiffs a duty not to misappropriate Plaintiffs' trade secrets and other confidential information based on the signing of, and agreement to abide by, Plaintiffs' Joint User Agreement, including the Confidentiality provisions of Section 11.

31.    Plaintiffs' Joint User Agreement sets forth in Section 11, the Confidentiality provisions that users agree to when they sign or accept the terms of the Joint User Agreement, which reads:

## 11. Confidentiality

a.    You agree to not use any technical information, financial information, designs, work flows, software, user interfaces, marketing designs or materials, operational methods, product development plan and techniques, data, computer programs, systems, software, source code, object code, hardware systems, mask words databases, financial information, customer information, legal or litigation information and strategy, pricing information or terms of contracts, or any other similar or related information developed or possessed by GS, including, without limitation, trade secrets as defined under Applicable Law, relating to the Services, to GS or GS's business, operations or real or intellectual properties (collectively, "**Confidential Information**") disclosed to You by GS or learned by You through Your use of the Services for any purpose other than the limited purposes set forth in the Agreement.  You shall not disclose or permit disclosure of any Confidential Information to any third party.  You shall take all reasonable measures to protect the secrecy of the Confidential Information of GS, and prevent it from falling into the public domain.

32.    Plaintiffs have consistently maintained the secrecy of their trade secrets and other confidential information by taking precautions not to disseminate such information to the public, such as by conditioning any access to such trade secret and other confidential information through contractual provisions of various agreements

such as the non-disclosure agreements entered into with Toast, and Plaintiffs' Joint User Agreements with its customers including, but not limited to, Busboys and Poets, including Section 11's Confidentiality provision, which survives any agreement with a customer.

## COUNT I – MISAPPROPRIATION OF TRADE SECRETS
## UNDER THE DEFEND TRADE SECRETS ACT (18 U.S.C. § 1836)

33.     The allegations set forth in the foregoing paragraphs 1 through 32 are incorporated into this First Claim for Relief.

34.     Plaintiffs own various trade secrets and other confidential information related to and embodied in their gratuity management products and services sold in interstate commerce throughout the United States including, for example, technical and/or financial information related to, for example, certain business plans and strategies, customer lists and preferences, development information and plans including feature sets and feature development and release plans, applications and/or methodologies for integrating and implementing such features sets and future features, work flows including customer-specific flows, software routines and applications for obtaining and processing customer-specific information, system architectures and interfaces, and associated source code.

35.     Plaintiffs have historically taken various measures to maintain the secrecy of their trade secrets from the public, including restricting access to such information and through the use of non-disclosure agreements and other agreements, such as Plaintiffs' Joint User Agreements, to notify persons with access to such trade

secrets and other confidential information of their duties and obligations to maintain the secrecy and confidentiality of Plaintiffs' trade secrets and other confidential information.

36.    Plaintiffs' trade secrets and other confidential information related to their commercial products and services used in interstate commerce have been and continue to be misappropriated by Toast through improper means in violation of 18 U.S.C. § 1836, including through certain members of Toast's Customer Advisory Board who entered into agreements with Plaintiffs to maintain the confidentiality of Plaintiffs' trade secrets and other confidential information including, but not limited to, Plaintiffs' Joint User Agreement, and thereafter breached their obligations and duties to protect Plaintiffs' trade secrets and other confidential information under that agreement by providing such trade secrets and other confidential information to Toast.

37.    Upon information and belief, Toast obtained Plaintiffs' trade secrets and other confidential information through at least the actions of Zarembka, who while acting in both her capacity as a member of Defendant Toast's Customer Advisory Board and as Vice President of Planning and Innovation for Busboys and Poets, a former customer of Plaintiffs, violated her obligations and duties under Plaintiffs' Joint User Agreement, including the Confidentiality Provisions of Section 11 and provided such information to Toast. (*See, e.g.*, Ex. 25, https://www.youtube.com/watch?v=-hu71rRbVCA.)

38.    Toast was aware of, should have been aware of, or was otherwise willfully blind to, Zarembka's provision of Plaintiffs' trade secrets and other

confidential information in violation of her duties and obligations to maintain the confidentiality of Plaintiffs trade secrets and other confidential information pursuant to Plaintiffs' Joint User Agreement with Busboys and Poets including the Confidentiality Provisions of Section 11.

39.    Toast's misappropriation of Plaintiffs' trade secrets and other confidential information was willful and malicious as Toast knew of, should have known of, or was otherwise willfully blind to, Zarembka's disclosure and use of Plaintiffs' trade secrets and other confidential information in violation of the duties owed to Plaintiffs under Plaintiffs' Joint User Agreement with Busboys and Poets, including the Confidentiality Provisions of Section 11.

40.    Plaintiffs' business has been, and continues to be, damaged by Toast's misappropriation and unauthorized use of Plaintiffs' trade secrets and other confidential information.

## COUNT II – TRADE SECRET MISAPPROPRIATION UNDER FLORIDA'S UNIFORM TRADE SECRETS ACT

41.    The allegations set forth in the foregoing paragraphs 1 through 40 are incorporated into this Second Claim for Relief.

42.    Plaintiffs own various trade secrets and other confidential information related to and embodied in their gratuity management products and services sold in interstate commerce throughout the United States, for example, technical and/or financial information related to, for example, certain business plans and strategies, customer lists and preferences, development information and plans including feature

sets and feature development and release plans, applications and/or methodologies for integrating and implementing such features sets and future features, work flows including customer-specific flows, software routines and applications for obtaining and processing customer-specific information, system architectures and interfaces, and associated source code.

43.    Plaintiffs have historically taken various measures to maintain the secrecy of their trade secrets from the public, including restricting access to such information and through the use of non-disclosure agreements and other agreements, such as Plaintiffs' Joint User Agreements, to notify persons with access to such trade secrets and other confidential information of their duties and obligations to maintain the secrecy and confidentiality of Plaintiffs' trade secrets and other confidential information.

44.    Plaintiffs' trade secrets and other confidential information related to their commercial products and services used in interstate commerce have been and continue to be misappropriated by Toast through improper means in violation of the Florida's Uniform Trade Secrets Act, Fla. Stat. §688.001 *et seq.*, including through certain members of Toast's Customer Advisory Board who entered into agreements with Plaintiffs to maintain the confidentiality of Plaintiffs' trade secrets and other confidential information including, but not limited to, Plaintiffs' Joint User Agreement, and thereafter breached their obligations and duties to protect Plaintiffs' trade secrets and other confidential information under that agreement by providing such trade secrets and other confidential information to Toast.

45. Upon information and belief, through Zarembka's activities as both Vice President of Planning and Innovation for Busboys and Poets, and her capacity as a member of Toast's Customer Advisory Board, Plaintiffs' trade secrets and other confidential information were provided to Toast, in violation of her obligations and duties owed to Plaintiffs under Plaintiffs' Joint User Agreement with Busboys and Poets, including Section 11's Confidentiality Provision. (*See, e.g.*, Ex. 25, https://www.youtube.com/watch?v=-hu71rRbVCA.)

46. Toast was aware of, should have been aware of, or was otherwise willfully blind to Zarembka's provision of Plaintiffs' trade secrets and other confidential information to Toast in violation of their obligations and duties owed to Plaintiffs under Plaintiffs' Joint User Agreement with Busboys and Poets, including Section 11's Confidentiality Provision.

47. Defendants' misappropriation of Plaintiffs' trade secrets and other confidential information was willful and malicious in that Toast knew of, should have known of, or was otherwise willfully blind to Zarembka's disclosure of Plaintiffs' trade secrets and other confidential information in violation of her obligations and duties owed to Plaintiffs under Plaintiffs' Joint User Agreement with Busboys and Poets, including Section 11's Confidentiality Provision.

48. Plaintiffs' business has been, and continues to be, damaged by Toast's misappropriation and unauthorized use of Plaintiffs' trade secrets and other confidential information.

## COUNT III – CIVIL CONSPIRACY TO MISAPPROPRIATE TRADE

## SECRETS

49.    The allegations set forth in the foregoing paragraphs 1 through 48 are incorporated into this Third Claim for Relief.

50.    Plaintiffs' trade secrets and other confidential information were misappropriated via an understanding among Toast and certain members of its Customer Advisory Board, to misappropriate Plaintiffs' trade secrets and other confidential information on behalf of Toast including, but not limited to, Zarembka's breach of the confidentiality obligations owed to Plaintiffs under Plaintiffs' Joint User Agreement with Busboys and Poets, including Section 11's Confidentiality Provision, thereby damaging Plaintiffs' business.

51.    Toast knew, should have known, or was willfully blind to, the unauthorized use, dissemination, and disclosure of Plaintiffs' trade secrets and other confidential information by members of its Customer Advisory Board were in breach of the duties and obligations owed to Plaintiffs, including under the Joint User Agreement between Plaintiffs and certain members of Toast's Customer Advisory Board including, but not necessarily limited to, Zarembka.

52.    Toast's allowing members of its Customer Advisory Board to misappropriate Plaintiffs trade secrets and other confidential information has damaged and continues to damage Plaintiffs business and business relationships.

53.    By allowing and/or encouraging members of its Customer Advisory Board to breach their obligations and duties to protect Plaintiffs' trade secrets and other

confidential information, such as pursuant to Plaintiffs' Joint User Agreement, and/or by failing to prevent such unauthorized disclosure, Toast is liable for damages caused by the conspiracy to misappropriate Plaintiffs' trade secrets and other confidential information.

### COUNT IV - INTENTIONAL INTERFERENCE WITH CONTRACT

54. The allegations set forth in the foregoing paragraphs 1 through 53 are incorporated into this Fourth Claim for Relief.

55. Toast knew or should have known that certain members of its Customer Advisory Board were under obligations and duties to protect Plaintiffs trade secrets and other confidential information including, but not necessarily limited to, Zarembka who was subject to the Joint User Agreement between Plaintiffs and Busboys and Poets, including Section 11's Confidentiality provision.

56. Toast encouraged members of its Customer Advisory Board including, but not necessarily limited to, Zarembka, to breach her duties and obligations to protect Plaintiffs' trade secrets and other confidential information, such as those under the Joint User Agreement between Plaintiff and Busboys and Poets, including Section 11's Confidentiality provisions, thereby interfering with Plaintiffs' contracts with its customers.

57. Toast's interference with Plaintiffs' contracts with its customers, including the confidentiality provisions of Plaintiffs' Joint User Agreement, has damaged and continues to damage Plaintiffs in an amount to be determined at trial.

## JURY DEMAND

58.     Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiffs demand a trial by jury on all issues triable as such.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for the following relief against Defendant Toast as follows:

A.     An immediate Order requiring Toast to preserve all information and correspondence currently stored on its servers, business computers, systems, archives, and/or personal electronic devices, any and all information that relates to the issues raised in this Complaint, including all communications with its Customer Advisory Board members generally and Zarembka in particular;

B.     An immediate Order granting Plaintiffs the right to conduct an immediate inspection of Toast's business computers by reputable experts in information technology to determine the extent of Toast's misappropriation of, and conspiracy to misappropriate, Plaintiffs' trade secrets and other confidential information, and to report the same to the Court;

C.     An Order pursuant to at least 18 U.S.C. § 1836(b)(3)(A) enjoining Defendant from: (1) any further use of Plaintiffs' trade secrets and other confidential information; (2) to remove Plaintiffs' trade secrets and confidential information from Defendant's computer systems; (3) to destroy any materials derived from Plaintiffs' trade secrets or confidential information; and (4) to identify all persons or entities to

whom products or services were provided that were developed using Plaintiffs' trade secrets and confidential information.

D.      An award of compensatory damages to Plaintiffs for their actual damages for Defendant's misappropriation, in an amount to be determined at trial, pursuant to at least 18 U.S.C. § 1836(b)(3)(B).

E.      An award of exemplary or punitive damages for Defendant's intentional and malicious conspiracy to misappropriate, and actual misappropriation of, Plaintiffs' trade secrets and other confidential information in an amount to be determined at trial, pursuant to at least 18 U.S.C. § 1836(b)(3)(C);

F.      An award of attorneys' fees, pursuant to at least 18 U.S.C. § 1836(b)(3)(D);

G.      An award to Plaintiffs of any pre- and post-judgment interest.

H.      An award to Plaintiffs of their costs in bringing this action.

I.      An award of such further relief at law or in equity as the Court deems just and proper.


Dated:  August 14, 2024


DEVLIN LAW FIRM LLC


/s/ Alan Wright
Timothy Devlin (to be admitted *pro hac vice*)
Delaware Bar No. 4241
tdevlin@devlinlawfirm.com


21

Alan Wright (to be admitted *pro hac vice*)
Virginia Bar No. 46506
awright@devlinlawfirm.com
DEVLIN LAW FIRM LLC
1526 Gilpin Avenue
Wilmington, Delaware 19806
Telephone: (302) 449-9010
Facsimile: (302) 353-4251

CHEFFY PASSIDOMO, P.A.


/s/ *Louis D. D'Agostino*
Louis D. D'Agostino, Esq.
Florida Bar No. 776890
Rachael S. Loukonen, Esq.
Florida Bar No. 668435
lddagostino@napleslaw.com
rloukonen@napleslaw.com
CHEFFY PASSIDOMO, P.A.
821 Fifth Avenue South
Naples, Florida 34102
Telephone: (239) 261-9300
Facsimile: (239) 261-9782

*Attorneys for Plaintiffs Gratuity Solutions, LLC*
*and Gratuity, LLC*

22

# DECLARATION

Under penalties of perjury, I, Aleksandar Stepanovich, hereby declare that I have read Plaintiffs' Verified Complaint and hereby verify and declare that the facts stated in it are true to the best of my knowledge and belief.

/s/