**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA**

GRATUITY SOLUTIONS, LLC and
GRATUITY, LLC

               Plaintiffs,

    v.

TOAST, INC.

               Defendant.

**Civil Action No. 2:24-cv-00737-JLB-NPM**


**JURY TRIAL DEMANDED**

## VERIFIED SECOND AMENDED COMPLAINT

Plaintiffs Gratuity Solutions, LLC and Gratuity, LLC (collectively "GS", "Gratuity Solutions" or "Plaintiffs"), for their Verified Second Amended Complaint against Defendant Toast, Inc. (referred to herein as "Toast"), allege the following:

## NATURE OF THE ACTION

1.    Plaintiffs bring this action to recover damages for, and to stop, misappropriation of Plaintiffs' trade secrets and other confidential information that has occurred, and continues to occur, by certain of Toast's officers, directors, and/or members of its Customer Advisory Board(s), who obtained access to Plaintiffs' trade secrets and other confidential information pursuant to confidentiality agreements including, but not limited to, Plaintiffs' Joint User Agreement; and who have violated those agreements by then using, disclosing, and/or encouraging others to disclose Plaintiffs' protected trade secrets and other confidential information to Toast, which has used such misappropriated information to develop its own competing systems and

features and damaged Plaintiffs' business and business relationships, including the loss of approximately 100 customer locations to Toast.

## THE PARTIES

2.     Plaintiff Gratuity Solutions, LLC is a limited liability company organized under the laws of the State of Florida with a place of business at 3520 Kraft Road, Suite 200 Naples, FL 34105.

3.     Plaintiff Gratuity, LLC is a limited liability company organized under the laws of the State of Florida with a place of business at 3520 Kraft Road, Suite 200 Naples, FL 34105.

4.     Defendant Toast, Inc. is a corporation organized under the laws of the State of Delaware with a principal place of business at 333 Summer Street, Boston, MA 02210.  According to Toast's website, Toast sells and provides it restaurant management products and services throughout the United States, including in the State of Florida, and within this judicial district specifically, and has continuously and systematically availed itself of the privileges of doing business in the State of Florida for years, and has introduced and continues to introduce its products and services in Florida, and in this judicial district specifically.  (*See* Ex. 1, https://pos.toasttab.com/local-partner-directory?type=florida&topic=#category-filter;                                        Ex.                                        2, https://www.toasttab.com/local/search?filters=eyJ1c2VyTGF0Ijoy Ny45NTE2OD k2LCJ1c2VyTG9uZyI6LTgyLjQ1ODc1MjY5OTk5OTk5LCJ1c2VyQ2l0eSI6IlRhb XBhIiwidXNlclN0YXRlIjoiRkwifQ%3D%3D&pg=1;                    Ex.                    3,

https://www.toasttab.com/local/search?filters=eyJ1c2VyTGF0IjoyNy43NjcxMjcx

LCJ1c2VyTG9uZyI6LTgyLjYzODQ0NTEsInVzZXJDaXR5IjoiU3QuIFBldGVyc2

J1cmciLCJ1c2VyU3RhdGUiOiJGTCJ9&pg=1;            Ex.            4,

https://www.toasttab.com/local/search?filters=eyJ1c2VyTGF0IjoyOC41MzgzOD

MyLCJ1c2VyTG9uZyI6LTgxLjM3ODkyNjksInVzZXJDaXR5IjoiT3JsYW5kbyIsI

nVzZXJTdGF0ZSI6IkZMIn0%3D&pg=1;            Ex.            5,

https://pos.toasttab.com/blog/savage-labs;            Ex.            6,

https://pos.toasttab.com/blog/buccan; Ex. 7, https://pos.toasttab.com/blog/on-

the-line/how-to-start-a-food-business-from-home-in-florida;            Ex.            8,

https://pos.toasttab.com/blog/on-the-line/how-to-open-a-restaurant-in-florida; Ex.

9,    https://pos.toasttab.com/blog/on-the-line/bar-licenses-and-permits-in-florida.)

Upon information and belief, Toast employs, and has employed, various Account

Executives throughout the State of Florida to help with the sale of its products and

services    in    the    State    of    Florida,    (*See*,    e.*g*.,    Ex.    10,

https://www.indeed.com/cmp/Toast,-Inc/reviews?id=d1406f834116612e;    Ex.    11,

https://www.linkedin.com/jobs/view/lakeland-fl-territory-account-executive-at-

toast-3920101973/; Ex. 12, https://www.linkedin.com/in/morgan-innes-2571542a/;

Ex.    13,    https://www.instagram.com/lifeattoast/p/CUDq9LbrKMN/;    Ex.    14,

https://www.zoominfo.com/p/Dennis-Madrid/3741392613;            Ex.            15,

https://www.salary.com/job/toast/regional-vice-president-sales-

florida/j202202151318289660996;            Ex.            27,

https://pos.toasttab.com/customers/swah-rey;.)

**Toast's Customer Advisory Board**

5.      According to Toast's website, it also maintains an official Customer Advisory Board.  (*See* Ex. 16, https://pos.toasttab.com/customer-advisory-board.) According to Toast, its official Customer Advisory Board is "composed of industry leaders from across the Toast customer network . . ." who "provide Toast with valuable insights to help guide the future of Toast . . ." and provide "insights and feedback that help inform our product roadmap . . . ."   (*See* Ex. 17, https://pos.toasttab.com/news/toast-announces-2024-customer-advisory-board-members.)

6.      A number of present and former members of Toast's official Customer Advisory Board are, or were in the past, also customers of Plaintiffs, and as such, have had access to and have received Plaintiffs' trade secrets and other confidential information pursuant to various confidentiality agreements including, but not limited to, Plaintiffs' Joint User Agreement, and specifically including the Confidentiality Provisions of Section 11, which survive that agreement.  (*See* Ex. 18.)  Among the Toast Advisory Board members that are, or were in the past, also customers of Plaintiffs, are:

- Joy Zarembka - COO, Busboys and Poets, Washington, DC;

- JT Riley- VP of Operations, Taste of Belgium, Cincinnati, OH;

- Andrei Stern- Co-Founder/CFO, SuViche Hospitality Group, Miami, FL;

4

- James Perry- Operational Systems Support Manager, José Andrés Group;

- Tyler Schack - VP of Technology, Walk-Ons Sports Bistreaux;

- John Shattinger- Vice President of Technology, Robeks;

- Jeremy Theisen- Chief Growth and Development Officer, Craveworthy Brands;

- Vinny Torregrossa - Senior Director of Technology, Nothing Bundt Cakes;

- Mike Bausch, Owner, Andolini's Pizzeria;

- Shandor Collins, Director of IT, Trapper's Sushi;

- Nick Sorise, Direction of Growth & Development, Parker Restaurant Group;

- Randy Barnett, VP of Innovative Technology, Systems & Data, Front Burner Brands;

- Sean Power, Director of IT, Ford Restaurant Group;

- Tiffany Saylor, Senior Director of IT, Front Burner Brands;

- John Schattinger, Vice President of Technology, Robeks.

7. According to Toast's Customer Advisory Board website, Joy Zarembka ("Zarembka") has been the Vice President of Planning and Innovation for Busboys and Poets since 2014, and is also a member of Toast's Customer Advisory Board. (*See*

Ex. 19, https://pos.toasttab.com/customer-advisory-board; Ex. 20, https://www.busboysandpoets.com/.)

8. On or about August 18, 2016, Zarembka was provided with Plaintiffs' offer to provide Busboys and Poets with gratuity management services "subject to the terms set forth" in Plaintiffs' Service Level and User Agreement. (*See* Ex. 21.)

9. Since at least January 20, 2018, Busboys and Poets and all employees thereof, including Zarembka as Vice President of Planning and Innovation for Busboys and Poets, have been subject to the provisions of Plaintiffs' Joint User Agreement, including the Confidentiality Provisions of Section 11.

10. According to Toast, its Customer Advisory Board is "composed of industry leaders from across the Toast customer network . . ." who "provide Toast with valuable insights to help guide the future of Toast . . ." and provide "insights and feedback that help inform our product roadmap . . . ." (*See* Ex. 17, https://pos.toasttab.com/news/toast-announces-2024-customer-advisory-board-members.)

11. Upon information and belief, based on her access to Plaintiffs' trade secrets and other confidential information, at least Zarembka has been involved in the misappropriation of Plaintiffs' trade secrets and other confidential information, both in her capacity as a member of Toast's Customer Advisory Board and in her capacity as Vice President of Planning and Innovation for Busboys and Poets. Zarembka has admitted providing Toast with information to improve its products. (*See, e.g.*, Ex. 25, https://www.youtube.com/watch?v=-hu71rRbVCA.)

## JURISDICTION AND VENUE

12.    This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 for claims brought under the Federal Defend Trade Secrets Act, 18 U.S.C. § 1836.

13.    This Court also has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 because there is complete diversity among the parties and the amount in controversy exceeds $75,000, exclusive of interest and costs.

14.    This Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

15.    Toast is subject to this Court's general personal jurisdiction based on its continuous and systematic availment of the privileges of doing business in the State of Florida, including regularly doing and soliciting business from customers in Florida, selling products and services to its customers throughout the State of Florida for years, and otherwise engaging in other persistent courses of conduct and/or deriving substantial revenue from goods and services provided to individuals in the State of Florida.        (See        Ex.        1,        https://pos.toasttab.com/local-partner-directory?type=florida&topic=#category-filter;        Ex.        2, https://www.toasttab.com/local/search?filters=eyJ1c2VyTGF0IjoyNy45NTE2OD k2LCJ1c2VyTG9uZyI6LTgyLjQ1ODc1MjY5OTk5OTk5LCJ1c2VyQ2l0eSI6IlRhb XBhIiwidXNlclN0YXRlIjoiRkwifQ%3D%3D&pg=1;        Ex.        3, https://www.toasttab.com/local/search?filters=eyJ1c2VyTGF0IjoyNy43NjcxMjcx LCJ1c2VyTG9uZyI6LTgyLjYzODQ0NTEsInVzZXJDaXR5IjoiU3QuIFBldGVyc2 J1cmciLCJ1c2VyU3RhdGUiOiJGTCJ9&pg=1;        Ex.        4,

https://www.toasttab.com/local/search?filters=eyJ1c2VyTGF0IjoyOC41MzgzOD

MyLCJ1c2VyTG9uZyI6LTgxLjM3ODkyNjksInVzZXJDaXR5IjoiT3JsYW5kbyIsI

nVzZXJTdGF0ZSI6IkZMIn0%3D&pg=1;                Ex.                5,

https://pos.toasttab.com/blog/savage-labs;                Ex.                6,

https://pos.toasttab.com/blog/buccan;                Ex.                7,

https://pos.toasttab.com/customers/swah-rey;                Ex.                8,

https://pos.toasttab.com/blog/on-the-line/how-to-start-a-food-business-from-home-

in-florida;   Ex.   9,   https://pos.toasttab.com/blog/on-the-line/how-to-open-a-

restaurant-in-florida.)   Upon information and belief, Toast employs, and has

employed, a number of Account Executives throughout the State of Florida to help

with the sale of its products and services in the State of Florida, (*See*, e.g., Ex. 10,

https://www.indeed.com/cmp/Toast,-Inc/reviews?id=d1406f834116612e; Ex. 11,

https://www.linkedin.com/jobs/view/lakeland-fl-territory-account-executive-at-

toast-3920101973/; Ex. 12, https://www.linkedin.com/in/morgan-innes-2571542a/;

Ex. 13, https://www.instagram.com/lifeattoast/p/CUDq9LbrKMN/; Ex. 14,

https://www.zoominfo.com/p/Dennis-Madrid/3741392613;                Ex.                15,

https://www.salary.com/job/toast/regional-vice-president-sales-

florida/j202202151318289660996.)   Alternatively, Toast is subject to this Court's

specific personal jurisdiction based upon its misappropriation, use, and public

dissemination of Plaintiffs' trade secrets within this District as set forth more fully

herein.

16.    Venue is proper in this district because Toast is subject to general and/or specific personal jurisdiction in the State of Florida, and is thus a resident under 28 U.S.C. § 1391(c).

## BACKGROUND

**Toast's Confidentiality Obligations to Plaintiffs**

17.    Plaintiffs and Defendant Toast began their business interactions on or about August 2016 when Plaintiffs approached Toast to discuss building a solution to enable Toast Point-of-Sale customers to utilize the Plaintiffs' platform for gratuity distributions.  Plaintiffs were put in touch with Ming-Tai Huh, who at the time, on information and belief, was responsible for Toast's partnerships and products.

18.    Plaintiffs and Defendant Toast entered into their first Non-Disclosure Agreement ("2016 NDA"), which was drafted by Defendant and signed by Mr. Huh, on or about August 29, 2016.  A true and correct copy of this agreement is attached as Exhibit 22.  Based on the 2016 NDA, Toast obtained access to some of Plaintiffs' trade secrets and other confidential information including certain technical and/or financial information related to, for example, certain business plans and strategies; customer lists and preferences; development information and plans including feature sets and feature development, and release plans; applications and/or methodologies for integrating and implementing such features sets and future features; work flows including customer-specific flows, software routines and applications for obtaining and processing customer-specific information; system architectures and interfaces; and associated source code.

19.    From 2016 through the date of this filing, Toast lists Gratuity Solutions as an "Integration Partner" on their website and consistently refers customers and clients to Plaintiffs.

20.    In late 2019, a business broker approached Toast on behalf of Plaintiffs to ask whether Toast would be interested in discussing acquiring Plaintiffs.  Mr. Matthew Baumgartner, Toast's Principal of Corporate Development and Strategy, indicated that Toast would be interested and sent over a second NDA agreement ("2019 NDA") for both parties as part of discussions related to merger or acquisition of Plaintiffs by Toast. A true and correct copy of this agreement is attached as Exhibit 23. During the course of these negotiations, some of Plaintiffs' trade secrets and other confidential information were further disclosed to Toast including certain technical and/or financial information related to, for example, certain business plans and strategies; customer lists and preferences; development information and plans including feature sets and feature development and release plans; applications and/or methodologies for integrating and implementing such features sets and future features; work flows including customer-specific flows, software routines and applications for obtaining and processing customer-specific information; system architectures and interfaces; and associated source code.

21.    After a January 14, 2020 call to discuss the possibility of acquiring Plaintiffs, Mr. Baumgartner emailed the business broker to indicate that Toast would *not* be moving forward with acquiring Plaintiffs, stating: "Right now we won't be able

to go further in the M&A process but are excited to grow in our partnership with the team."

22.    Since at least 2016, Toast was generally aware of the functions, capabilities, and requirements of Plaintiffs' software as it was advertised as an integrated product on Toast's platform, and knew or should have known that certain information was not publicly known, including Plaintiffs' trade secrets and other confidential information including, for example, technical and/or financial information related to, for example, certain business plans and strategies; customer lists and preferences; general development information and plans including potential feature sets, feature development, and release plans; applications and/or methodologies for integrating and implementing such features sets and future features, work flows including customer-specific flows, software routines and applications for obtaining and processing customer-specific information; system architectures and interfaces; and associated source code.

23.    During the business relationship between Toast and Plaintiffs, Toast was aware or should have been aware of the confidentiality restrictions Plaintiffs placed on access to and use of their trade secrets and other confidential information, both with respect to Toast and Plaintiffs' other customers.

24.    On September 1, 2021, Plaintiffs reached out to Toast's General Counsel, Brian Elworthy, CEO Chris Comparato, and integrations lead Mr. Ming-Tai Huh to update them on Plaintiffs' performance and to invite them to re-engage in merger and acquisition discussions.  No response from was received from Toast.

25. On or around November 16, 2021, Toast announced its own gratuity management solution entitled "Toast Tips Manager" which contained many of the specific features found in Plaintiffs' products, and which continues to add new features identified and developed by Plaintiffs.

26. Despite Toast's general obligations of confidentiality owed to Plaintiffs, during these discussions regarding a potential acquisition, at no time was Toast provided access to Plaintiffs' PayDayPortal system, including any of the specific trade secrets that have been made available over time to users who have agreed to abide by Plaintiffs' Joint User Agreement. Toast has certainly never been authorized to access Plaintiffs' PayDayPortal system or access any of the trade secrets contained therein for product features developed and introduced since the introduction of Toast's competing Toast Tips Product.

**The Massachusetts Patent Action**

27. On September 19, 2022, Plaintiffs filed suit against Toast for patent infringement of U.S. Patent No. 9,741,050 ("the '050 patent"), in the U.S. District Court for the District of Massachusetts. (*See Gratuity Solutions, LLC and Gratuity, LLC v. Toast, Inc.*, Civ. Action No. 1:22-cv-11539 (D. Mass.) ("the Patent action").).

28. The Patent action consists of two causes of action: (1) infringement of the '050 patent's claimed gratuity management system; and (2) breach of contract with respect to Toast's breach of the two NDAs Toast entered into with Plaintiffs during potential acquisition discussions. There are no allegations in the Patent action relating

12

to trade secret misappropriation by Toast or any members of its Customer Advisory Board, such as Zarembka.

29.    A patent protects inventions that are required to be publicly disclosed and claimed in the patent, whereas trade secret inherently protect only valuable information that is maintained in confidence, and as such, these distinct methods of protecting intellectual property do not conflict.  *See Kewanee v. Bicron*, 460 U.S. 470, 484 (1974) ("Certainly the patent policy of encouraging invention is not disturbed by the existence of another form of incentive to invention.  In this respect the two systems are not and never would be in conflict.").

30.    Accordingly, the Massachusetts Patent action has *no* allegations regarding: (1) misappropriation of Plaintiffs' trade secrets including features implemented and configured through Plaintiffs' PayDayPortal system; or (2) any conspiracy to access and misappropriate Plaintiffs' trade secrets through members of Toast's Customer Advisory Board.

31.    The Patent action is still pending, but the Massachusetts district court stayed that action after the U.S. Patent and Trademark Office ("USPTO") granted Toast's September 19, 2023, Petition for *Inter Partes* Reexamination ("IPR") of the '050 patent.  The IPR is also still pending as the USPTO reconsiders the validity of the '050 patent.  A decision is not expected until 2025, and until that decision issues, the Patent action is stayed preventing Plaintiffs from pressing their infringement claims against

13

Toast until the USPTO issues its Final Written Decision[1] and the district court in Massachusetts lifts the stay.

32.    Although the '050 patent generally discloses the capabilities of the patented system—namely the specific hardware components of the gratuity management system and examples of its general capabilities for providing customers with a remote management system depending on their varied needs, the '050 patent does not and cannot disclose the specific trade secrets found in Plaintiffs' PayDayPortal system.

33.    Many of the features on Plaintiffs' PayDayPortal system were not even developed, let alone available on its PayDayPortal system, until well after Plaintiffs filed their application for the '050 patent.

34.    Notably, while the '050 patent's system requires use of an "interface"—also referred to as the "gratuity sync application" which is a combination of software and/or hardware that  may be configured in any number of ways depending on each customer's specific system requirements—the specific details of how to configure that interface and the "recipes" used to implement those features as found in Plaintiffs' PayDayPortal system are *not* disclosed in the '050 patent.

35.    During the Patent action, Toast argued, *inter alia*, that certain of the asserted '050 patent claims are "indefinite" for failing to disclose these specific

---

[1] The USPTO is statutorily required under 35 U.S.C. § 326(a)(11), to issue its Final Written Decision within one year of its March 27, 2024 Decision Instituting IPR2023-01408.

configurations of Plaintiffs' "gratuity sync application" interface. (*See* Ex. 26, D.I. 82-1.)

36.    Plaintiffs maintain in the Patent action that disclosure of such configuration information for its interface is not necessary because the patent claims are broadly directed to *systems* where the interface may be configured in any number of ways depending on each customer's specific system requirements as well as their customized "gratuity distribution rules" which can be tailored depending on each customer's specific needs.  Indeed, the specific information regarding configuration of Plaintiffs interface are maintained as trade secrets by Plaintiffs.

**Toast's Misappropriation of Plaintiffs' Trade Secrets**

37.    Beginning in approximately 2022, Plaintiffs began noticing that Toast's competing Tips Manager product had started offering certain features resembling those only available to Plaintiffs' customers through its PayDayPortal system, access to which is restricted to Plaintiffs' customers who have agreed to abide by Plaintiffs' Joint User Agreement (Ex. 18).

38.    Plaintiffs suspected misappropriation of its trade secrets from a customer, as Toast was not a customer of Plaintiffs, and as such did not have an account and had never signed Plaintiffs' Joint User Agreement, and was never authorized to access any information on Plaintiffs' confidential PayDayPortal system, including its trade secrets and other confidential information.

39.    Moreover, since the stay of the Patent action, Plaintiffs' co-founder, Chief Information Officer, and inventor of the '050 patent, Aleksandar Stepanovich,

has noticed that Toast's Tips Manager product has begun offering more feature sets that are nearly identical to those found in Plaintiffs' commercial product and only available through its confidential PayDayPortal system. In addition to their similarity in function and configuration, the speed with which Toast introduced these features for its competing product leads Plaintiffs to believe that Toast has, and continues to, misappropriated Plaintiffs' confidential trade secrets to develop its competitive products while the Patent action remains stayed.

40.    More importantly, however, the configurations of Plaintiffs' interface, including the implementation of specific features, include customer-specific "*recipes*" used depending on each customer's specific equipment, requirements, needs, and preferences, are all trade secrets maintained in confidence, including through Plaintiffs' Joint User Agreement. These confidential details on how to implement Plaintiffs' software solutions is highly valuable because the information identifies how Plaintiffs have implemented specific features that were identified by Plaintiffs as valuable to their customers, and which were developed by Plaintiffs to address those customers' needs. Had Toast developed these features independently, it is unlikely that they would use nearly identical terminology, definitions, work-flows and ordering of configuration steps as found in Gratuity Solutions' PayDayPortal system.

41.    Also following the stay of the Patent Action, and further confirming Plaintiffs' suspicions that Toast was obtaining and misappropriating Plaintiffs' trade secrets to provide additional features in its competing Toast Tips Manager product, on or about July 17, 2024, Plaintiffs discovered that Toast had begun actually *publishing*

Plaintiffs' trade secrets on Toast's public website. Plaintiffs, including Mr. Stepanovich, reviewed many of Toast's website URLs, and produced a detailed listing of features from Toast's Tips Manager public website, and Plaintiffs' feature sets made available to Plaintiffs' customers pursuant to the confidentiality provisions of the Joint User Agreement (Ex. 18), and which include Plaintiffs' trade secrets and other confidential information. (*See* Ex. 29 (pending motion to file under seal).)

42.    Importantly, the trade secrets provided in Exhibit 29 are being provided under seal so that the court can review Plaintiffs' non-public trade secrets which appeared on the competing Toast Tips Manager public website, where Toast published information on its nearly identical features that included Plaintiffs' trade secrets.  The instructional videos, in particular, as set forth in Exhibit 29, involved more than mere disclosure of Plaintiffs' trade secrets—they actually provide the public with detailed "how-to" instructions to design and implement a gratuity management system using Plaintiffs' confidential and proprietary trade secrets and know-how, which further damages Plaintiffs and their business operations.

**Joy Zarembka's Obligations to Maintain Plaintiffs' Confidential Information**

43.    On or about August 18, 2016, Zarembka of Busboys and Poets was provided with Plaintiffs' offer to provide Busboys and Poets with gratuity management services "subject to the terms set forth" in Plaintiffs' Service Level and User Agreement.  Zarembka was therefore aware of, or should have been aware of, Busboys

and Poets' continuing obligations to maintain the confidentiality of Plaintiffs' trade secrets and other confidential information.

44.     Since at least January 20, 2018, Busboys and Poets and all its employees, including Zarembka, owed Plaintiffs a duty not to misappropriate Plaintiffs' trade secrets and other confidential information based on the signing of, and agreement to abide by, Plaintiffs' Joint User Agreement, including the Confidentiality provisions of Section 11.

45.     Plaintiffs' Joint User Agreement sets forth in Section 11, the Confidentiality provisions that users agree to when they sign or accept the terms of the Joint User Agreement, which reads:

## 11. Confidentiality

a.     You agree to not use any technical information, financial information, designs, work flows, software, user interfaces, marketing designs or materials, operational methods, product development plan and techniques, data, computer programs, systems, software, source code, object code, hardware systems, mask words databases, financial information, customer information, legal or litigation information and strategy, pricing information or terms of contracts, or any other similar or related information developed or possessed by GS, including, without limitation, trade secrets as defined under Applicable Law, relating to the Services, to GS or GS's business, operations or real or intellectual properties (collectively, "**Confidential Information**") disclosed to You by GS or learned by You through Your use of the Services for any purpose other than the limited purposes set forth in the Agreement.  You shall not disclose or permit disclosure of any Confidential Information to any third party.  You shall take all reasonable measures to protect the secrecy of the Confidential Information of GS, and prevent it from falling into the public domain.

46.     Plaintiffs have consistently maintained the secrecy of their trade secrets and other confidential information by taking precautions not to disseminate such information to the public, such as by conditioning any access to such trade secret and other confidential information through contractual provisions of various agreements such as the non-disclosure agreements entered into with Toast, and Plaintiffs' Joint

User Agreements with its customers including, but not limited to, Busboys and Poets, including Section 11's Confidentiality provision, which survives any agreement with a customer.

47.    Despite Plaintiffs' efforts, upon information and belief, Toast has used members of its Customer Advisory Board, including at least Zarembka, to access, obtain, improperly use, and now disseminate without authorization, Plaintiffs' valuable and confidential trade secrets thus damaging Plaintiffs and their business operations.

## COUNT I – MISAPPROPRIATION OF TRADE SECRETS
## UNDER THE DEFEND TRADE SECRETS ACT (18 U.S.C. § 1836)

48.    The allegations set forth in the foregoing paragraphs 37-48 are incorporated into this First Claim for Relief.

49.    Plaintiffs own various trade secrets and other confidential information related to and embodied in their gratuity management products and services sold in interstate commerce throughout the United States, including at least its PayDayPortal system which includes, for example, technical and/or financial information related to, for example, certain business plans and strategies, customer lists and preferences, development information and plans including feature sets and feature development and release plans, applications and/or methodologies for integrating and implementing such features sets and future features, work flows including customer-specific flows, software routines and applications for obtaining and processing

19

customer-specific information, system architectures and interfaces, and associated source code.

50.     Plaintiffs have historically taken various measures to maintain the secrecy of their trade secrets from the public, including restricting access to such information and through the use of user accounts and passwords, two-tier authentication, encryption, and non-disclosure agreements and other agreements, such as Plaintiffs' Joint User Agreements, to notify persons with access to Plaintiffs' trade secrets and other confidential information of their duties and obligations to maintain the secrecy and confidentiality of that confidential information.

51.     Plaintiffs' trade secrets and other confidential information related to their commercial products and services used in interstate commerce have been and continue to be misappropriated by Toast through improper means in violation of 18 U.S.C. § 1836, including through certain members of Toast's Customer Advisory Board who entered into agreements with Plaintiffs to maintain the confidentiality of Plaintiffs' trade secrets and other confidential information including, but not limited to, Plaintiffs' Joint User Agreement, and thereafter breached their obligations and duties to protect Plaintiffs' trade secrets and other confidential information under that agreement by providing such trade secrets and other confidential information to Toast.

52.     Upon information and belief, Toast obtained Plaintiffs' trade secrets and other confidential information through at least the actions of Zarembka, a former customer of Plaintiffs who, while acting in both her capacity as a member of Defendant Toast's Customer Advisory Board and as Vice President of Planning and Innovation

for Busboys and Poets, admittedly provided information to Toast that Plaintiffs believe violated her obligations and duties under Plaintiffs' Joint User Agreement, including the Confidentiality Provisions of Section 11 and provided such information to Toast. (*See, e.g.*, Ex. 25, https://www.youtube.com/watch?v=-hu71rRbVCA.)

53.    Upon information and belief, Toast has never been authorized to access Plaintiffs' confidential PayDayPortal system, has never agreed to abide by Plaintiffs' Joint User Agreement, and would have not been able to offer the nearly identical features now available on its Toast Tips Manager product without misappropriating Plaintiffs' trade secrets.

54.    Toast was aware of, should have been aware of, or was otherwise willfully blind to, provision of Plaintiffs' trade secrets and other confidential information by any member of its Customer Advisory Board in violation of any duties and obligations to maintain the confidentiality of Plaintiffs' trade secrets and other confidential information pursuant to Plaintiffs' Joint User Agreement and the Confidentiality Provisions of Section 11, including at least Zarembka, who obtained access to Plaintiffs' trade secrets through her position with Busboys and Poets, which agreed to Plaintiffs' Joint User Agreement.

55.    Toast's misappropriation of Plaintiffs' trade secrets and other confidential information was willful and malicious as Toast knew of, should have known of, or was otherwise willfully blind to, at least Zarembka's disclosure and use of Plaintiffs' trade secrets and other confidential information in violation of the duties owed to Plaintiffs under Plaintiffs' Joint User Agreement with Busboys and Poets,

including the Confidentiality Provisions of Section 11.  Plaintiffs' business has been, and continues to be, damaged by Toast's misappropriation and unauthorized use and publication of Plaintiffs' trade secrets and other confidential information.

## COUNT II – TRADE SECRET MISAPPROPRIATION UNDER FLORIDA'S UNIFORM TRADE SECRETS ACT

56.    The allegations set forth in the foregoing paragraphs 37 through 56 are incorporated into this Second Claim for Relief.

57.    Plaintiffs own various trade secrets and other confidential information related to and embodied in their gratuity management products and services sold in interstate commerce throughout the United States, for example, technical and/or financial information related to, for example, certain business plans and strategies, customer lists and preferences, development information and plans including feature sets and feature development and release plans, applications and/or methodologies for integrating and implementing such features sets and future features, work flows including customer-specific flows, software routines and applications for obtaining and processing customer-specific information, system architectures and interfaces, and associated source code.

58.    Plaintiffs have historically taken various measures to maintain the secrecy of their trade secrets from the public, including restricting access to such information by requiring user accounts and passwords, two-tier authentication, encryption, and through the use of non-disclosure agreements and other agreements, such as Plaintiffs' Joint User Agreements, to notify persons with access to Plaintiffs'

trade secrets and other confidential information of their duties and obligations to maintain the secrecy and confidentiality of that confidential information.

59.      Plaintiffs' trade secrets and other confidential information related to their commercial products and services used in interstate commerce have been and continue to be misappropriated by Toast through improper means in violation of the Florida's Uniform Trade Secrets Act, Fla. Stat. §688.001 *et seq.*, including through certain members of Toast's Customer Advisory Board who entered into agreements with Plaintiffs to maintain the confidentiality of Plaintiffs' trade secrets and other confidential information including, but not limited to, Plaintiffs' Joint User Agreement, and thereafter breached their obligations and duties to protect Plaintiffs' trade secrets and other confidential information under that agreement by providing such trade secrets and other confidential information to Toast.

60.      Upon information and belief, at least through Zarembka's activities as both Vice President of Planning and Innovation for Busboys and Poets, and her capacity as a member of Toast's Customer Advisory Board, Plaintiffs' trade secrets and other confidential information were provided to Toast, in violation of her obligations and duties owed to Plaintiffs under Plaintiffs' Joint User Agreement with Busboys and Poets, including Section 11's Confidentiality Provision. (*See, e.g.*, Ex. 25, https://www.youtube.com/watch?v=-hu71rRbVCA.)

61.      Toast was aware of, should have been aware of, or was otherwise willfully blind to any member of its Customer Advisory Board's provision of Plaintiffs' trade secrets and other confidential information to Toast, including at least Zarembka,

23

in violation of their obligations and duties owed to Plaintiffs under Plaintiffs' Joint User Agreement, such as Busboys and Poets, including Section 11's Confidentiality Provision.

62.    Defendants' misappropriation of Plaintiffs' trade secrets and other confidential information was willful and malicious in that Toast knew of, should have known of, or was otherwise willfully blind to any member of Toast's Customer Advisory Board member's disclosure of Plaintiffs' trade secrets and other confidential information, including at least Zarembka, in violation of their obligations and duties owed to Plaintiffs under Plaintiffs' Joint User Agreement, including Zarembka's obligations through Busboys and Poets, including Section 11's Confidentiality Provision.

63.    Plaintiffs' business has been, and continues to be, damaged by Toast's misappropriation and unauthorized use of Plaintiffs' trade secrets and other confidential information.

## COUNT III – CIVIL CONSPIRACY TO MISAPPROPRIATE PLAINTIFFS' TRADE SECRETS

64.     The allegations set forth in the foregoing paragraphs 37 through 64 are incorporated into this Third Claim for Relief.

65.    Plaintiffs' trade secrets and other confidential information were misappropriated via an understanding among Toast and certain members of its Customer Advisory Board, to misappropriate Plaintiffs' trade secrets and other confidential information on behalf of Toast including, but not limited to, Zarembka's

breach of the confidentiality obligations owed to Plaintiffs under Plaintiffs' Joint User Agreement with Busboys and Poets, including Section 11's Confidentiality Provision, thereby damaging Plaintiffs' business.

66.    Toast knew, should have known, or was willfully blind to, the unauthorized use, dissemination, and disclosure of Plaintiffs' trade secrets and other confidential information by any member of its Customer Advisory Board was in breach of the duties and obligations owed to Plaintiffs, including under the Joint User Agreement between Plaintiffs and certain members of Toast's Customer Advisory Board including, but not necessarily limited to, Zarembka via Busboys and Poets.

67.    Toast's allowing members of its Customer Advisory Board to misappropriate Plaintiffs trade secrets and other confidential information has damaged and continues to damage Plaintiffs business and business relationships.

68.    By allowing and/or encouraging members of its Customer Advisory Board to breach their obligations and duties to protect Plaintiffs' trade secrets and other confidential information, such as pursuant to Plaintiffs' Joint User Agreement, and/or by failing to prevent such unauthorized disclosure, Toast is liable for damages caused by the conspiracy to misappropriate Plaintiffs' trade secrets and other confidential information.

**COUNT IV - INTENTIONAL INTERFERENCE WITH CONTRACT**

69.    The allegations set forth in the foregoing paragraphs 37 through 69 are incorporated into this Fourth Claim for Relief.

70.     Toast knew or should have known that certain members of its Customer Advisory Board were under obligations and duties to protect Plaintiffs trade secrets and other confidential information including, but not necessarily limited to, Zarembka who was subject to the Joint User Agreement between Plaintiffs and Busboys and Poets, including Section 11's Confidentiality provision.

71.     Toast encouraged members of its Customer Advisory Board including, but not necessarily limited to, Zarembka, to breach her duties and obligations to protect Plaintiffs' trade secrets and other confidential information, such as those under the Joint User Agreement between Plaintiff and Busboys and Poets, including Section 11's Confidentiality provisions, thereby interfering with Plaintiffs' contracts with its customers.

72.     Toast's interference with Plaintiffs' contracts with its customers, including the confidentiality provisions of Plaintiffs' Joint User Agreement, has damaged and continues to damage Plaintiffs in an amount to be determined at trial.

## JURY DEMAND

73.     Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiffs demand a trial by jury on all issues triable as such.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for the following relief against Defendant Toast as follows:

A.     An immediate Order requiring Toast to preserve all information and correspondence currently stored on its servers, business computers, systems, archives,

26

and/or personal electronic devices, any and all information that relates to the issues raised in this Complaint, including all communications with its Customer Advisory Board members generally and Zarembka in particular;

B.    An Order pursuant to at least 18 U.S.C. § 1836(b)(3)(A) permanently enjoining Defendant from: (1) any further use of Plaintiffs' trade secrets and other confidential information; (2) ordering Defendant to destroy any materials derived from Plaintiffs' trade secrets or confidential information; and (3) ordering Defendant to identify all persons or entities to whom products or services were provided that were developed using Plaintiffs' trade secrets and confidential information.

C.    An Order granting Plaintiffs the right to conduct an immediate inspection of Toast's business computers by reputable experts in information technology to determine the extent of Toast's misappropriation of, and conspiracy to misappropriate, Plaintiffs' trade secrets and other confidential information, and to report the same to the Court;

D.    An award of compensatory damages to Plaintiffs for their actual damages for Defendant's misappropriation, in an amount to be determined at trial, pursuant to at least 18 U.S.C. § 1836(b)(3)(B).

E.    An award of exemplary or punitive damages for Defendant's intentional and malicious conspiracy to misappropriate, and actual misappropriation of, Plaintiffs' trade secrets and other confidential information in an amount to be determined at trial, pursuant to at least 18 U.S.C. § 1836(b)(3)(C);

F.    An award of attorneys' fees, pursuant to at least 18 U.S.C. § 1836(b)(3)(D);

G.    An award to Plaintiffs of any pre- and post-judgment interest.

H.    An award to Plaintiffs of their costs in bringing this action.

I.    An award of such further relief at law or in equity as the Court deems just and proper.


Dated:  September 16, 2024

DEVLIN LAW FIRM LLC


*/s/ Alan Wright*
Timothy Devlin (admitted *pro hac vice*)
Delaware Bar No. 4241
tdevlin@devlinlawfirm.com
Alan Wright (admitted *pro hac vice*)
Virginia Bar No. 46506
awright@devlinlawfirm.com
DEVLIN LAW FIRM LLC
1526 Gilpin Avenue
Wilmington, Delaware 19806
Telephone: (302) 449-9010
Facsimile: (302) 353-4251

CHEFFY PASSIDOMO, P.A.
*/s/ Louis D. D'Agostino*
Louis D. D'Agostino, Esq.
Florida Bar No. 776890
Rachael S. Loukonen, Esq.
Florida Bar No. 668435
lddagostino@napleslaw.com
rloukonen@napleslaw.com
CHEFFY PASSIDOMO, P.A.
821 Fifth Avenue South
Naples, Florida 34102

Telephone: (239) 261-9300
Facsimile: (239) 261-9782

*Attorneys for Plaintiffs Gratuity Solutions, LLC and Gratuity, LLC*

## CERTIFICATE OF SERVICE

*I HEREBY CERTIFY* that on this 16th day of September, 2024 the foregoing was electronically filed with the Clerk of Court using the CM/ECF portal which will send a notice of electronic filing to all counsel of record.

DEVLIN LAW FIRM

By: */s/ Alan Wright*
Alan Wright (admitted *pro hac vice*)
Virginia Bar No. 46506
awright@devlinlawfirm.com