# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF FLORIDA
### FT. MYERS DIVISION

GRATUITY SOLUTIONS, LLC and
GRATUITY, LLC

                Plaintiff,                      Case No.: 2:24-cv-00737-JLB-NPM

        v.

TOAST, INC.

                Defendant.

---

## DEFENDANT'S MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT OR, IN THE ALTERNATIVE, TO TRANSFER TO THE DISTRICT OF MASSACHUSETTS

GOODWIN PROCTER LLP

s/ Srikanth K. Reddy
Srikanth K. Reddy, Esq. *pro hac vice*
Massachusetts Bar # 669264
Kate E. MacLeman, Esq. *pro hac vice*
Goodwin Procter LLP
Massachusetts Bar # 684962
100 Northern Avenue
Boston, MA 02210
(617) 570-1000
SReddy@goodwinlaw.com
KMacLeman@goodwinlaw.com

Andrew Ong, Esq. *pro hac vice*
California Bar # 267889
601 Marshall Street
Redwood City, CA 94063
(650) 752-3153
AOng@goodwinlaw.com

*Counsel for Toast, Inc*

QUARLES & BRADY LLP

s/ Kelli A. Edson
Kelli A. Edson, Esq
Florida Bar No. 179078
Quarles & Brady LLP
101 East Kennedy Boulevard
Suite 3400
Tampa, FL 33602-5195
(813) 387-0300
kelli.edson@quarles.com

*Counsel for Toast, Inc.*

## I.    INTRODUCTION

Unhappy with the state of their still-pending litigation against Toast in the United States District Court for the District of Massachusetts, Plaintiffs Gratuity Solutions, LLC and Gratuity, LLC (collectively, "GS") ignore the doctrine against claim splitting and impermissibly filed this second case against Toast based on the same factual allegations already asserted in the Massachusetts litigation—namely, that Toast misused GS's confidential information in developing its gratuity allocation software "Toast Tips Manager."  Moreover, in their Second Amended Complaint ("SAC"), which alleges misappropriation of a third, different set of alleged "trade secrets," GS still does not allege any plausible claim upon which relief can be granted, nor does it allege facts supporting personal jurisdiction over Toast.  GS's case should be dismissed for each of these independent reasons, or in the alternative, transferred to the District of Massachusetts under the first-to-file rule.

First, GS's SAC constitutes improper claim splitting.  GS is required to assert all of its causes of action arising from a common set of facts in one lawsuit.  This is for good reason: to promote judicial efficiency, protect parties from duplicative litigation, and allow a district court to choose how to manage its docket.  GS chose to sue Toast over the development of the Toast Tips Manager by filing a lawsuit in Massachusetts asserting claims of patent infringement and breach of contract.  Now, more than two years later, GS files this new suit over the same allegations repackaged as claims of trade secret misappropriation and intentional interference.  That is exactly what the claim-splitting doctrine precludes.

1

Second, GS fails to plead a plausible claim of trade secret misappropriation under either the Defend Trade Secrets Act ("DTSA") or the Florida Uniform Trade Secrets Act ("FUTSA").  Among GS's allegations is that Toast used a member of its Customer Advisory Board ("CAB") to gain access to what it "knew or should have known" were "secret" features of GS's PayDayPortal program—a *commercially-available product*.  That is nonsensical.  In its new disclosure of purported trade secrets, Exhibit 29, GS points out various features of Toast's Tips Manager product and how-to videos, and says, without explanation, that the content was copied from GS's PayDayPortal program.  Even assuming *arguendo* that is true (and it is not), GS cannot claim trade secret protection over the features of its commercially available product that are available to anyone with a login and password.  What's more, those same features and functions were published in GS's patent applications with the USPTO.  In other words, what GS claims are its trade secrets are not even secret.

GS's tort claims for civil conspiracy to misappropriate trade secrets and intentional interference likewise fail.  Because these claims are based on the same underlying factual allegations as the misappropriation claims, they fail on the merits and, separately, are preempted by FUTSA.

Finally, the Court has no personal jurisdiction over Toast.  Toast is not incorporated in Florida, has no place of business here, and does not conduct activities in Florida sufficient to render it "at home" in the state.  As a result, the Court has no general personal jurisdiction over Toast.  Nor does the Court have specific personal jurisdiction over Toast: none of the events leading up to this action took place in

Florida, and Toast did not take any steps to specifically target Florida.  In fact, the only connection between this case and Florida is that *GS* is present there, but that does not support jurisdiction over *Toast*.

Already on its third try, GS's SAC should be dismissed in its entirety and with prejudice, or, at a minimum, transferred under the first-to-file rule.  The Court was clear that the FAC was GS's "one mulligan" and cautioned GS in no uncertain terms that it needed to carefully review both the substance of its purported trade secrets and the overlap between this case and the District of Massachusetts action before proceeding with yet another amended complaint.  Hr'g Tr. 30-34.  GS did not heed that warning.  Their squandering of judicial resources should end here.

## II.    BACKGROUND

Toast is a Massachusetts-based company that sells restaurant management products and services throughout the United States.  SAC, D.I. 50 ¶ 4.  GS has developed a platform for gratuity distribution for the hospitality industry.  *Id.* ¶ 17.

In 2016, GS approached Toast "to discuss building a solution to enable Toast Point-of-Sale customers to utilize the Plaintiffs' platform for gratuity distributions."  *Id.*  According to GS, Toast drafted and signed a Non-Disclosure Agreement, and Toast thereafter had access to GS's gratuity management system.  *Id.* ¶ 18.[1]

"In late 2019, a business broker approached Toast on behalf of [GS] to ask whether Toast would be interested in discussing acquiring [GS]" and Toast "sent over

---

[1] While GS pleads that a "true and correct copy of the [the 2016 NDA] Agreement is attached as Exhibit 22" to the SAC, what was filed is only a single page of a larger document.  *See* D.I. 50-23.

3

a second NDA agreement . . . for both parties as part of discussions related to merger or acquisition of Plaintiffs by Toast."[2]  *Id.* ¶ 20.  Shortly thereafter, on a January 14, 2020 call, Toast informed GS that it "would *not* be moving forward with acquiring [GS] . . . ."  *Id*. ¶ 21.  On September 1, 2021, GS again reached out to Toast seeking to be acquired. *Id.* ¶ 24.  Toast did not respond.  *Id.*  GS filed two lawsuits thereafter.

### A. The Massachusetts Action and Associated Proceedings

GS first sued Toast in the District of Massachusetts on September 19, 2022. Complaint, *Gratuity Solutions, LLC et al. v. Toast, Inc.*, No. 1:22-cv-11539 (D. Mass. Sept. 19, 2022), D.I. 1 ("D. Mass. Complaint").  There, GS alleged that Toast Tips Manager infringes two GS patents, and further that Toast breached its contractual obligations from the pair of NDAs purportedly executed in 2016 and 2019.  *Id.*

In support of its breach of contract claim in D. Mass., GS alleged that Toast breached the NDAs by "disclosing or causing to be disclosed through its website . . . proprietary information revealed to it by GS, including through the design, implementation, and instructions for use of the Toast Tips Manager."  *Id.* ¶ 83.  As for the patent claims, GS alleged that Toast infringed a pair of patents titled "System and Method for Managing Gratuities."  *Id*. ¶ 12.  According to GS, the inventions claimed in the patents "enhance the performance of tipped-employee business computer systems by enabling them to aggregate and compile tipped transaction and employee performance data and automatically apply pre-defined distribution rules to manage

---

[2] The 2019 NDA attached as an exhibit to the SAC is not signed by GS.  *See* D.I. 50-24.

payroll." *Id*. ¶ 16.  On Toast's motion, the court dismissed the infringement claim as to one of the two asserted patents, and the parties proceeded with discovery on the remaining claims.  *Gratuity Solutions*, No. 1:22-cv-11539 (D. Mass. June 7, 2023), D.I. 48; *Id.*, D.I. 58 (July 12, 2023).

On September 18, 2023, Toast filed a petition for *inter partes* review ("IPR") challenging the remaining asserted patent with the Patent Trial and Appeal Board ("PTAB").  *Id.*, D.I. 109 (Apr. 24, 2024) at 4.  The PTAB instituted the IPR on March 27, 2024, and Toast moved to stay the district court case.  *Id.* at 4-5.  GS opposed the motion, but "concede[d] that [its breach of contract] claim is  factually 'intertwined to some extent' with its infringement claim."  *Id*. at 8.  The Massachusetts court stayed the case in its entirety on April 24, 2024.  *Id.* at 10.

### B.  The Florida Action

GS filed their second suit against Toast in this District on August 14, 2024. *Gratuity Solutions, LLC*, No. 2:24-cv-00737 (M.D. Fla.), D.I. 1.  While the docket entries are restricted from view, the undersigned counsel understands that GS filed an *ex parte* motion for temporary restraining order ("TRO"), and the Court held a first *ex parte* conference.  The undersigned counsel understands that it was after that event that GS filed their first amended complaint ("FAC") on August 28, 2024, D.I. 18, to try a second time to articulate their claims.  Toast appeared on August 29, 2024, D.I. 22, and attended the TRO hearing on September 4, 2024.

After denying the TRO motion, the Court cautioned GS that it should look closely at what it was alleging were trade secrets and the "juxtaposition" of the Florida

5

and Massachusetts actions (Hr'g Tr. 26, 30-34) and ordered GS to "notify the Court in writing on or before September 11, 2024, whether they will be proceeding forth with their . . . Amended Complaint, which, as revealed at a September 4, 2024 hearing, alleges that Defendant was misappropriating certain trade secrets, despite those purported trade secrets being made available to the public on websites Plaintiffs maintain." *Id.*, D.I. 44. GS filed the SAC on September 16, 2024.

As with the first two complaints, the SAC alleges that Toast has engaged in "misappropriation of Plaintiffs' trade secrets and other confidential information," and specifically that "certain of Toast's officers, directors, and/or members of its Customer Advisory Board(s)" have "obtained access to Plaintiffs' trade secrets and other confidential information pursuant to confidentiality agreements," and subsequently used those "protected trade secrets and other confidential information" to develop "its own competing systems" for gratuity management. SAC ¶ 1.

### C. The Alleged Trade Secrets

Attached to their SAC at Exhibit 29 is GS's latest attempt at articulating trade secrets they assert Toast stole. In Exhibit 29, GS no longer tries to match features of their PayDayPortal program with those of Toast's Tips Manager product. Instead, GS points to mundane how-to videos and articles regarding calculating tips using Toast's Tips Manager product that Toast posted on its website, and GS claims, without any real explanation other than their say-so, that the posted content comes from the features of GS's PayDayPortal program. Ex. 29, at 1 ("The following screenshots from the Web Pages of the TOAST Main Help Center website, correlate to the

corresponding Gratuity Solutions' trade secret feature functionality and implementation details that allow Gratuity Solutions' customers to tailor, streamline, and maximize the benefits of Gratuity Solutions' platform."). In total, GS identifies 16 features of Toast's Tips Manager program that GS says were first available to all customers using GS's PayDayPortal program beginning in 2014. The list includes basic features like certain labels and job titles Toast uses (Ex. 29, at 1, 3-4), ways to do math (Ex. 29, at 7), and 40-minutes of a video on tip-pooling policies (Ex. 29, at 15).

## III.   ARGUMENT

### A. GS's SAC Should be Dismissed for Improper Claim Splitting

The SAC should be dismissed because GS cannot bring their claims in a new action in a different court while their first action is still pending. It is well settled that a plaintiff "may not file duplicative complaints in order to expand their legal rights." *Vanover v. NCO Fin. Servs., Inc.*, 857 F.3d 833, 841 (11th Cir. 2017) (internal citation omitted). The Eleventh Circuit has adopted a two-factor claim-splitting test: "(1) whether the case involves the same parties and their privies, and (2) whether separate cases arise from the same transaction or series of transactions." *Vanover*, 857 F.3d at 841-42. Lawsuits "arise from the same transaction" when they are "based on the same nucleus of operative facts." *Id*. at 842.

GS's SAC clearly constitutes claim-splitting: the two cases involve the same parties and are "based on the same nucleus of operative facts." *Vanover*, 857 F.3d at 842. Both actions center on the technology used in the design and implementation of Toast Tips Manager. *Compare* D. Mass. Complaint ¶¶ 41, 83-84, *with* SAC ¶¶ 41, 53.

7

And both actions allege (falsely) that Toast misused confidential information it received from GS pursuant to NDAs.  By filing a new lawsuit in a different district court while the Massachusetts litigation is pending, GS is plainly attempting to evade the authority of the Massachusetts district court.  *See Vanover*, 857 F.3d at 840-43 (affirming dismissal of second complaint on account of claim-splitting doctrine); *see also Kennedy v. Floridian Hotel, Inc.*, 998 F.3d 1221, 1236-37 (11th Cir. 2021) (same).

While GS frames the legal ramifications of the alleged misuse as breach of contract in the Massachusetts action and trade secret misappropriation here, the underlying allegations "arise from the same nucleus of fact."  *Harutyunyan v. Magis, LLC*, 2024 WL 1436049, at *2 (M.D. Fla. Mar. 1, 2024).  Indeed, the factual allegations in the SAC are nearly identical to the D. Mass. Complaint.  In particular, GS's core allegations regarding the execution, scope, and authority of the parties' NDAs are the foundation of both GS's breach of contract claim in Massachusetts and GS's trade secret misappropriation claim here.  *See* Declaration of Srikanth K. Reddy in Support of Defendant's Motion to Dismiss Plaintiffs' Second Amended Complaint or, in the Alternative, to Transfer to the District of Massachusetts ("Reddy Decl.") Ex. A (chart comparing complaints).

GS's efforts to distinguish the two actions in the SAC are unavailing.  Focusing first on the patent infringement claim in the Massachusetts action, GS alleges that while a patent "protects inventions that are required to be publicly disclosed," trade secret law "protect[s] only valuable information that is maintained in confidence."  SAC ¶ 29. But the Massachusetts action involves claims for *both* patent infringement

8

*and* breach of contract. The Massachusetts breach-of-contract claim is substantively indistinguishable from the trade-secrets claim it brings here—both are based on Toast's alleged disclosure of "[p]roprietary [i]nformation," including "trade secrets." D. Mass. Compl. ¶ 80.

Moreover, even if the Massachusetts action solely involved patent infringement claims, the two cases would still arise out of the same nucleus of fact. GS specifically acknowledged, in the Massachusetts action, that "[its breach of contract] claim is factually 'intertwined to some extent' with its infringement claim." *Supra* at p. 5. That acknowledgement is unsurprising given that, save for a handful of paragraphs, the facts pled in Massachusetts to support the patent claim are the same as those pled to support the breach of contract claim. *Compare* D. Mass. Compl. ¶¶ 38-55, *with* D. Mass. Compl. ¶¶ 74-86.

GS separately alleges that the Florida action presents purportedly "new" allegations regarding members of Toast's CAB and particular features surrounding GS's PayDayPortal program. SAC ¶¶ 28-30. These allegations still involve the same core claim—*i.e.*, that Toast injured GS by accessing and sharing GS's "confidential information." Even assuming these allegations were entirely new, the claim splitting doctrine still warrants dismissal, because the cases arise from the same nucleus of facts—namely, the development of Toast Tips Manager vis a vis GS's "confidential information." As was true in *Vanover*, the cases are "related in time, origin, and motivation," and "form a convenient trial unit" and therefore cannot be split. *Vanover*,

9

857 F.3d at 842 (dismissing second claim that involved additional facts, differing time periods, and new causes of action).

### B. <u>GS's SAC Fails to Adequately Plead Trade Secret Misappropriation (Counts I-II)</u>

GS's SAC should also be dismissed because it fails to adequately allege any plausible claim of trade secret misappropriation under either the DTSA or FUTSA. To plead trade secret misappropriation under the DTSA or FUTSA, GS must show that: (1) it possessed a "trade secret"; (2) it "'took reasonable measures' to protect the trade secret"; and (3) Toast "used or disclosed the trade secret despite a duty to maintain secrecy." *ProV Int'l Inc. v. Lucca*, 2019 WL 5578880, at *2 (M.D. Fla. Oct. 29, 2019).

Under Rule 12(b)(6), "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted). Pleadings may be made based on "information and belief," but "the 'belief' must be 'based on factual information that makes the inference of culpability plausible.'" *SCOMA Chiropractic, P.A. v. Jackson Hewitt Inc.*, 2017 WL 3149360, at *4 (M.D. Fla. July 25, 2017) (citing *Daisy, Inc. v. Pollo Operations, Inc.*, 2015 WL 1418607, at *5 (M.D. Fla. Mar. 27, 2015)). "[T]he Court need not accept as true any conclusory allegations in the complaint based 'upon information or belief' unless the complaint contains enough well-pleaded factual allegations to state a claim for relief that is plausible on its face." *Sellstate Realty Sys. Network, Inc. v. Black*, 2021 WL 354169, at *2 (M.D. Fla. Feb. 2, 2021).

*First*, GS's new (now third different) list of alleged trade secrets still fails to identify any information that falls under the statutory definition of a trade secret. In their latest attempt at a trade secret disclosure, Exhibit 29, GS points to Toast how-to videos and features and functionality of its Toast Tips Manager product and says, without explanation, that the content—mundane product features of calculating, pooling and distributing tips—comes from GS's PayDayPortal program. Even assuming it does,[3] GS cannot claim trade secret protection over features of their commercially-available product, apparent to anyone with a login and password. *See, e.g.*, *Warehouse Sols., Inc. v. Integrated Logistics, LLC*, 610 F. App'x 881, 885–86 (11th Cir. 2015) (affirming summary judgment and denying trade secret protection to a software "program's 'features and functions'" after noting that how the program "looked and worked was readily apparent to authorized users with an ID and password"). As Judge Easterbrook noted in *IDX Sys. Corp.*: "a trade-secret claim based on readily observable material is a bust." *IDX Sys. Corp. v. Epic Sys. Corp.*, 285 F.3d 581, 584 (7th Cir. 2002) (affirming dismissal of misappropriation claim and denying trade secret protection to plaintiff's software's "data-entry screens" because "things that any user or passerby sees at a glance are 'readily ascertainable by proper means'").

A trade secret is, in relevant part, information that "derives independent economic value . . . from not being generally known to, and not being readily

---

[3] To be clear it does not—Toast developed, on its own, each feature of its platform. Independent development of an alleged trade secret is an absolute defense to misappropriation claims. *See, e.g.*, 18 U.S.C. § 1839(6).

ascertainable through proper means by, another person." 18 U.S.C. § 1839(3)(B). GS identifies no information that qualifies as a trade secret and indeed does not even allege in a conclusory way that what they now are calling trade secrets "derive independent economic value." GS's SAC must be dismissed for this reason alone. *E.g. Gordon Food Serv., Inc. v. Price Armstrong, LLC*, 2021 WL 7448881, at *6 (M.D. Fla. July 8, 2021) (plaintiff failed to allege misappropriation where it purportedly provided the defendant "with confidential proprietary documents" but did "not allege any facts to suggest that any of the documents" had "information that derives independent economic value from not being generally known").

But even putting that pleading defect aside, the features and functionality of PayDayPortal *are* "generally known" and "readily ascertainable through proper means"—indeed they are apparent to all of its users. As a result, what GS calls trade secrets simply are not trade secrets as a matter of law. *See, e.g.*, *Advantor Sys. Corp. v. DRS Tech. Servs., Inc.*, 678 Fed. App'x 839, 854 (11th Cir. 2017) (stating that "[d]efinitionally," publicly available information is not a trade secret); *IDX Sys. Corp.*, 285 F.3d at 584 (holding that "details that ordinary users of the software could observe without reverse engineering" were not eligible for trade secret protection); *My Mavens, LLC v. Grubhub, Inc.*, 2023 WL 5237519, at *20 (S.D.N.Y. Aug. 14, 2023) (rejecting argument that filtering function on a restaurant ordering website was a trade secret); *ARP Wave, LLC v. Salpeter*, 2021 WL 168501, at *6 n.13 (D. Minn. Jan. 19, 2021) (granting, in part, defendant's motion for summary judgment and criticizing plaintiffs for "fail[ing] to explain how a display or control could possibly be a trade secret when

it is exposed to the public").[4]

In addition, contrary to what GS writes on the face of Exhibit 29, the vast majority of the features identified in GS's new list were publicly disclosed in GS's U.S. Patent Nos. 9,741,050 and 10,726,436, patents issuing from an application *first published over a decade ago*.[5]  *See* Reddy Decl. Ex. B (chart comparing alleged trade secrets to patent disclosures).  For example, "trade secret" Feature #2 is disclosed in Figure 4 in the '050 patent.  *See also* Reddy Decl. Ex.  C ('050 patent) at Col. 17, ll. 12-45; Col. 20, ll. 56-67.  Patent and trade secret protection cannot be used to cover the same information.  Public patent disclosure necessarily destroys the requisite secrecy for trade secret protection.  *E.g.*, *Tedder Boat Ramp Sys., Inc. v. Hillsborough Cnty., Fla.*, 54 F. Supp. 2d 1300, 1303 (M.D. Fla. 1999) ("The Supreme Court has established that the patenting of a product negates the possibility that the product is also a trade secret."); *Blake v. Pro. Coin Grading Serv.*, 898 F. Supp. 2d 365, 380 (D. Mass. 2012) (plaintiff "cannot claim that [information] was confidential information as of the date of the patent publication").[6]

---

[4] GS previously relied on *Humanitary Med. Ctr., Inc. v. Artica*, 2023 US Dist. LEXIS 225349, at *7 (M.D. Fla. Dec. 19, 2023) to argue that the PayDayPortal user interface is eligible for trade secret protection, but that citation stands only for the unremarkable proposition that using password-protection *may* be enough to establish that someone has taken reasonable measures to protect their trade secrets.  And that case, unlike here, dealt with senior level employees who allegedly misappropriated password-protected patient and employee lists.  The two cases are not analogous.

[5] The Court can take judicial notice of patent documents under Fed. R. Evid. 201 at the pleadings stage.  *See, e.g.*, *Anderson v. Kimberly-Clark Corp.*, 570 F. App'x 927, 932 n.3 (Fed. Cir. 2014); *see also Nationwide Van Lines, Inc. v. Transworld Movers Inc.*, 853 F. App'x 604, 606 (11th Cir. 2021).

[6] For this same reason, GS also cannot plead reasonable measures were taken to protect their trade secrets.  *See, e.g.*, *Foster v. Pitney Bowes Corp.*, 549 F. App'x 982, 989 (Fed. Cir. 2013) ("[I]deas in [a] published patent application [are] not subject to reasonable efforts to maintain confidentiality.").

*Second*, even assuming *arguendo* GS has alleged a trade secret, their claim of misappropriation, based solely on "information and belief," is implausible. Facts plead on "information and belief" "must be based on factual information that makes the inference of culpability plausible." *Direct Components, Inc. v. Microchip USA, LLC*, 2024 WL 1929522, at *4 (M.D. Fla. May 2, 2024).

Here, GS's sole argument for misappropriation is that "[u]pon information and belief, Toast obtained [GS's] trade secrets" from a member of its CAB, Zarembka, and that Toast "knew or had reason to know" that Zarembka's provision of information about GS's PayDayPortal program to Toast would violate GS's Joint User Agreement with Zarembka's employer. SAC ¶¶ 59-61. To make this argument, GS alleges that Zarembka "admittedly provided information to Toast," citing to a YouTube video that was posted in July 2023. *Id.* ¶ 52. But nowhere in the 29-minute video does Zarembka mention trade secrets, GS, Toast Tips Manger, or even tip allocation. Indeed, at the TRO hearing, this Court recognized that the YouTube video was not "prob[ative] as to trade secrets" and did not even describe what one "would normally understand to be trade secrets." Sept. 4, 2024 Hr'g Tr. at 27:8–18.

Because GS's conclusory assertion of misappropriation is based solely on "information and belief" and not supported by any plausible factual pleadings, the claims must be dismissed. *See Direct Components*, 2024 WL 1929522, at *5 (dismissing misappropriation claim pled based on information and belief); *see also American Registry LLC v. Hanaw*, 2013 WL 6332971, at *4 (M.D. Fla. Dec. 5, 2013) (dismissing misappropriation claim pled "upon information and belief" with no "factual

14

allegations supporting this assertion"); *Knights Armament Co. v. Optical Sys. Tech.*, 568 F. Supp. 2d 1369, 1377 (M.D. Fla. 2008) (dismissing misappropriation counter-claim when plaintiff gave no details on how the trade secrets were misappropriated).

### C. GS's Tort Claims (Counts III-IV) Likewise Fail

Finally, the common law claims (Counts III and IV) must also be dismissed as preempted by the FUTSA because they involve the same underlying factual allegations as the trade secret misappropriation claim.  Fla. Stat § 688.008(1) (preempting laws that provide civil remedies for trade secret misappropriation).  GS pleads the same allegations to support each of their four claims—namely, that Toast used CAB to get access to GS's trade secrets, in what GS alleges was a violation of GS's Joint User Agreement.[7]  As a result, the tort claims are preempted.  *See, e.g.*, *Nephron Pharms. Corp. v. Hulsey*, 2020 WL 7684863, at *20-*22 (M.D. Fla. Oct. 7, 2020) (civil conspiracy claim preempted); *Jouria v. CE Res., Inc.*, 2017 WL 3868422, at *4-*5 (S.D. Fla. July 17, 2017) (tortious interference claim preempted).

Even if the tort claims were not preempted, they also suffer pleading deficiencies.  As to the civil conspiracy claim, because GS failed to plead a colorable

---

[7] *Compare* SAC ¶ 62 ("Toast knew of, should have known of, or was otherwise willfully blind to any members of Toast's Customer Advisory Board member's disclosure of Plaintiffs' trade secrets and other confidential information, including at least Zarembka, in violation of their obligations and duties owed to Plaintiffs under Plaintiffs' Joint User Agreement.") *with* SAC ¶ 66 ("Toast knew, should have known, or was willfully blind to, the unauthorized use, dissemination, and disclosure of Plaintiffs' trade secrets and other confidential information by any member of its Customer Advisory Board was in breach of the duties and obligations owed to Plaintiffs, including under the Joint User Agreement . . .") *and* SAC ¶¶ 70-71 ("Toast knew or should have known that certain members of its Customer Advisory Board were under obligations and duties to protect Plaintiffs trade secrets and other confidential information including, but not necessarily limited to, Zarembka, who was subject to the Joint User Agreement . . . [and] Toast encouraged members of its Customer Advisory Board . . . to breach [their] duties and obligations to protect Plaintiffs' trade secrets . . .").

misappropriation claim, it follows that "there can be no conspiracy with respect thereto." *Gateway Invs., LLC v. Innovest Capital, Inc.*, 402 F. App'x 459, 461 (11th Cir. 2010). GS also does not even allege an agreement or an overt act in furtherance thereof.[8] The closest GS comes is to allege that there was an "understanding" between Toast and CAB (SAC ¶ 65), but that is not enough. *Debose v. Univ. of S. Fla.*, 178 F. Supp. 3d 1258, 1272 (M.D. Fla. 2016) (requiring pleading "particularized facts that are more than vague or conclusory"). As to the intentional interference claim, GS does not plead all of the elements there either;[9] rather, GS pleads only that Toast "encouraged" Zarembka to "breach her duties and obligations" (SAC ¶ 71), and that Toast "knew or should have known" of the Joint User Agreement (SAC ¶ 70). That too is not enough. *See, e.g.*, *NoNaNi Ent., LLC v. Live Nation Worldwide, Inc.*, 2023 WL 1967579, at *3 (M.D. Fla. Feb. 13, 2023) (requiring "more than a mere knowledge of a business relationship in some abstract sense").

## D. The Case Should be Dismissed with Prejudice, or Alternatively, Transferred to the District of Massachusetts

Having already given GS three tries (*see* D.I. 1, 18, 50), the Court should dismiss the SAC with prejudice.[10] But if the Court is inclined to deny the requested relief, then

---

[8] "To succeed on a conspiracy claim, the plaintiff must show (1) an agreement between two or more persons (2) to commit a tort, (3) an overt act to further the agreement, and (4) consequent harm." *Yellowfin Yachts, Inc. v. Barker Boatworks, LLC*, 237 F. Supp. 3d 1230, 1243 (M.D. Fla. 2017), aff'd, 898 F.3d 1279 (11th Cir. 2018).

[9] *Westgate Resorts, Ltd. v. Sussman*, 387 F. Supp. 3d 1318, 1349 (M.D. Fla. 2019) (pleading intentional interference with contract requires: "(1) the existence of a contract; (2) the defendant's knowledge of the contract; (3) the defendant's intentional procurement of the contract's breach; (4) absence of any justification or privilege; and (5) damages resulting from the breach."

[10] Courts in the Eleventh Circuit routinely dismiss claims with prejudice after three such opportunities. *See, e.g.*, *Welch v. Laney*, 57 F.3d 1004, 1009 (11th Cir. 1995); *see also Rock v. BAE Sys., Inc.*, 2013 WL 2455965 at *2 (M.D. Fla. June 6, 2013). Although a court should "grant a plaintiff at least one chance

16

the case should be transferred to the District of Massachusetts where the court has already been managing GS's breach of contract claim. Two courts should not expend the time and resources to address the same underlying claims.

As this Court recognized at the TRO hearing, federal judges follow the first-to-file rule: "[w]here two actions involving overlapping issues and parties are pending in two federal courts, there is a strong presumption across the federal circuits that favors the forum of the first-filed suit under the first-filed rule." *Manuel v. Convergys Corp.*, 430 F.3d 1132, 1135 (11th Cir. 2005). "Because the rule favors the court in which the action was first brought, the proper procedure is for the [second-filed] court to transfer the case to the [first-filed] court to determine which case should, in the interests of sound judicial administration and judicial economy, proceed." *United States v. Cincinnati Ins. Co.*, 2022 WL 1800853, at *1 (M.D. Fla. Feb. 15, 2022) (quotations omitted; alterations in original). "[O]nce the second-filed court" finds there is "substantial overlap" with an earlier-filed case, the "ultimate determination" of how the cases should proceed "belong[s] to the first-filed court." *Id.*

When evaluating whether to transfer a case under the first-filed rule, this Court should consider "(1) the chronology of the two actions; (2) the similarity of the parties; and (3) the similarity of the issues." *Rudolph and Me, Inc. v. Ornament Cent., LLC*, 2011

---

to amend its complaint before dismissing the action with prejudice," it is not required "to grant counseled plaintiffs more than one opportunity to amend a deficient complaint, nor . . . [is] dismissal with prejudice inappropriate where a counseled plaintiff has failed to cure a deficient pleading after having been offered ample opportunity to do so." *Eiber Radiology, Inc. v. Toshiba Am. Med. Sys., Inc.*, 673 Fed. A'ppx 925, 929–30 (11th Cir. Dec. 20, 2016).

WL 3919711, at *2 (M.D. Fla. Sept. 7, 2011). Here, all three factors weigh decisively in favor of a transfer. *First*, the Massachusetts action was filed almost two years before the Florida action. *Second*, the two actions involve the same parties. *Third*, as explained *supra* Section III.A, they involve highly similar, overlapping issues. Thus, in the alternative, the case should be transferred.

Notably, complaints need not be "mirror-images" of each other for the first-to-file rule to apply. *Rudolph*, 2011 WL 3919711, at *3. "What is required is a similarity or an overlapping in subject matter." *Id.* In *Rudolph*, for example, the court transferred a copyright infringement case from the Middle District of Florida to the District of Massachusetts notwithstanding the plaintiff's argument that the matters were "two separate intellectual property actions" with issues that were "too dissimilar." 2011 WL 3919711, at *3. As the court explained, both actions would require addressing overlapping factual allegations—meaning that, absent a transfer, "the overlap of issues and parties would create judicial waste and a potential for incompatible rulings." *Id.*

GS cannot establish the "'compelling circumstances' to warrant an exception to the first-to-file rule." *Marrero v. Laundress, LLC*, 2024 WL 478370, at *3 (M.D. Fla. Jan. 26, 2024). Because GS previously sued Toast in Massachusetts, it can hardly argue that litigating there is unduly burdensome. *See Central Money Mortg. Co. v. Holman*, 122 F. Supp. 2d 1345, 1346 (M.D. Fla. Sept. 29, 2000) (plaintiff could not object to transfer on basis of convenience where the parties would already "be present" in the proposed transferee district "to litigate the suit filed first"). To the extent GS invokes the Massachusetts court's decision to stay the case pending resolution of the

18

IPR, that cuts in favor of, not against, transfer.  GS should not be able to use this action

to obtain an end-run around the Massachusetts court's well-reasoned decision.  *See id.*

### E.  The Court Has No Personal Jurisdiction Over Toast

Even putting aside both GS's deficient factual allegations and the application of

the first-to-file rule, this case should be dismissed for the independent reason that the

Court lacks personal jurisdiction over Toast.[11]  GS cannot satisfy either of the two

requirements for establishing personal jurisdiction over Toast, an out-of-state

defendant.  *Sculptchair, Inc. v. Century Arts, Ltd.*, 94 F.3d 623, 626 (11th Cir. 1996).

First, it cannot show that Florida's long-arm statute "provides a basis for personal

jurisdiction."  *Id.*  Nor can it show that the exercise of jurisdiction compiles with due

process.  *Future Tech. Today, Inc. v. OSF Healthcare Sys.*, 218 F.3d 1247, 1250 (11th Cir.

2000).  While binding caselaw forecloses GS's theories of specific and personal

jurisdiction, "[a]ny doubt about the reach of the Florida long-arm statute and the

Court's jurisdiction are resolved in favor of the defendant and against jurisdiction."

*3Lions Publishing, Inc. v. Interactive Media Corp.*, 389 F. Supp. 3d 1031, 1036 (M.D. Fla.

2019) (internal citation omitted).

### i.  The Court has no general jurisdiction over Toast

"A federal district court in Florida may exercise personal jurisdiction over a

nonresident defendant to the same extent that a Florida court may."  *Fraser v. Smith*,

---

[11] While personal jurisdiction would typically precede the merits, Toast began with Rule 12(b)(6) because one of several defects in GS's theory of specific personal jurisdiction is its failure "under Florida's long-arm statute" to "actually allege[] a claim to invoke jurisdiction."  *Nature Coast Dev. Grp., LLC v. U.S. Specialty Ins. Co.*, 2022 WL 11589413, at *2 (N.D. Fla. Sept. 2, 2022).  *See supra*, n. 14.

594 F.3d 842, 846 (11th Cir. 2010).  The general jurisdiction provision of Florida's long-arm statute, Fla. Stat. § 48.193(2), grants Florida courts jurisdiction over nonresident defendants coextensive with "the limits . . . imposed by the Due Process Clause of the Fourteenth Amendment."  *Id.*  In determining whether the exercise of jurisdiction complies with due process, the court asks: "(1) whether [the] defendant has established sufficient 'minimum contacts' with the [forum state]; and (2) whether the exercise of this jurisdiction over [the] defendant would offend 'traditional notions of fair play and substantial justice.'"  *Future Tech. Today*, 218 F.3d at 1250 (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).  "[O]nly a limited set of affiliations with a forum will render a defendant amenable to all-purpose jurisdiction there."  *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014).  "A corporation's contacts with a state must be "so 'continuous and systematic' as to render [it] essentially at home in the forum State."  *Id.* at 139 (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)).  The "paradigm all-purpose forums" for general jurisdiction are a "corporation's place of incorporation and its principal place of business."  *Carmouche v. Tamborlee Mgmt., Inc.*, 789 F.3d 1201, 1204 (11th Cir. 2015).  Only in "exceptional" cases will a foreign corporation's contacts with a state be so extensive as to render it "at home" in a forum where neither condition is satisfied.  *Id.*[12]  A corporation is not subject to general jurisdiction in a state merely because it

---

[12]  *Perkins v. Benguet Consolidated Mining Co.*, 342 U.S. 437 (1952), is the perennial example of the narrow circumstances where general personal jurisdiction might be appropriate in a state where a corporation is not headquartered or incorporated.  There, the defendant was a Philippines mining company that had relocated to Ohio during World War II, and therefore, "Ohio was the corporation's

20

has substantial business in that state. *See Daimler*, 571 U.S. at 139 & n.20 (having "a particular quantum of local activity" is insufficient for general personal jurisdiction).

Here, Toast is neither incorporated in Florida nor has its principal place of business there; rather, Toast is incorporated in Delaware and has its principal place of business in Massachusetts. Declaration of Eric Bisceglia of Toast, Inc. ("Bisceglia Decl.") ¶ 3; SAC ¶ 4. Toast's contacts with Florida are not so "exceptional" that Toast is "essentially at home" in Florida. *Daimler*, 571 U.S. at 139. GS has not even attempted to make this showing—nor could it. Toast has no offices in Florida, and only about 4% of its employees work in the state (all remotely). Bisceglia Decl. ¶¶3-5.

GS instead alleges that Toast is subject to general personal jurisdiction in Florida "based on its continuous and systematic availment of the privileges of doing business in the State of Florida." SAC ¶ 15.[13] This expansive approach to general personal jurisdiction is squarely foreclosed by the Supreme Court's decision in *Daimler*. *See* 571 U.S. at 139 n.20. Indeed, the Supreme Court described as "unacceptably grasping" GS's precise theory—that a company is subject to general jurisdiction based on "a substantial, continuous, and systematic course of business." *Daimler*, 571 U.S. at 138. In effect, *Daimler* sounded the "death knell" for GS's theory of "doing

principal, if temporary, place of business." *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 779 n.11 (1984).

[13] Specifically, the SAC identifies three examples of this purported availment: (1) "regularly doing and soliciting business from customers in Florida," (2) "selling products and services to its customers throughout the State of Florida for years," and (3) "otherwise engaging in other persistent courses of conduct and/or deriving substantial revenue from goods and services provided to individuals in the State of Florida." SAC ¶15. GS also points to a series of exhibits to their SAC, but they show, at most, that Toast is used by restaurants in Florida, *id.*, Exs. 1-9, and that Toast has some unspecified number of employees and Account Executives in Florida, *id.*, Exs. 10-15.

21

business" jurisdiction. *Kinsman v. Fla. State Univ. Bd. of Tr.*, 2015 WL 11110542, at *4 (M.D. Fla. Apr. 27, 2015) (quotation omitted).

For the same reason, GS cannot establish general personal jurisdiction on the basis of Toast's "selling products and services" in Florida. SAC ¶ 15. A seller of goods—even a "substantial manufacturer or seller of goods"—is not subject to general jurisdiction "wherever its products are distributed." *Goodyear*, 564 U.S. at 929; *see Pelton v. Lowe's Home Ctrs., LLC*, 2021 WL 11490630, at *4 (M.D. Fla. Aug. 24, 2021) (rejecting jurisdiction theory that would "permit [the plaintiff] to sue Lowe's in every state" it sells products). Even where, for example, a railroad has roughly 6% of its track mileage, 5% of its employees, and 10% of its revenue in a particular state, the Supreme Court deemed those contacts insufficient for the exercise of general jurisdiction. *BNSF Ry. Co. v. Tyrrell*, 581 U.S. 402, 406 (2017). Here, GS does not include *any* allegations to contextualize Toast's contacts with Florida, which are far more limited than those the Supreme Court found lacking in *BNSF*. *Supra* at p. 21.

### ii.   The Court has no specific jurisdiction over Toast

For the first time in their SAC, GS also alleges in passing that "Toast is subject to this Court's specific personal jurisdiction based upon its misappropriation, use, and public dissemination of Plaintiffs' trade secrets within this District as set forth more fully herein." SAC ¶ 15. This allegation fails as well.

As with general jurisdiction, a court's exercise of specific personal jurisdiction must comply with due process. In cases involving intentional torts or claims akin to intentional torts, courts evaluate whether a defendant's forum-related contacts satisfy

22

due process by applying the "effects test," which "requires a showing that the defendant (1) committed an intentional tort (2) that was directly aimed at the forum, (3) causing an injury within the forum that the defendant should have reasonably anticipated." *Oldfield v. Pueblo De Bahia Lora, S.A.*, 558 F.3d 1210, 1220 n.28 (11th Cir. 2009) (discussing *Calder v. Jones*, 465 U.S. 783, 789-90 (1984)).  This analysis turns on "the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there." *Walden v. Fiore*, 571 U.S. 277, 285 (2014).

GS vaguely asserts that specific personal jurisdiction is appropriate based on Toast's "misappropriation, use, and public dissemination of Plaintiffs' trade secrets within this District," SAC ¶ 15, but there are zero allegations in the SAC connecting Toast's conduct specifically to Florida:  no allegations, for example, that Toast targeted Florida in disseminating GS's trade secrets in Florida, or that Toast specifically used GS's trade secrets in Florida.  *See ISO Claims Servs., Inc. v. Bradford Techs., Inc.*, 2011 WL 13176209, at *8 (M.D. Fla. Sept. 28, 2011) (misappropriating the "trade secrets and customer lists of a corporation headquartered in South Carolina was not sufficient, in the absence of other contacts, to permit the South Carolina court to exercise personal jurisdiction over the defendants") (discussing with approval *ESAB Grp., Inc. v. Centricut, Inc.*, 126 F.3d 617, 625 (4th Cir. 1997)).

The only connection between this action and Florida is that GS is based in Florida.  But "[a]s the Supreme Court made clear in *Walden*, 'the plaintiff cannot be the only link between the defendant and the forum.'" *Buzz Pop Cocktails Corp. v. Booze Pops, LLC*, 2020 WL 2838825, at *7 (M.D. Fla. Apr. 22, 2020) (quoting *Walden*, 571

23

U.S. at 285). "Rather, it is the defendant's conduct that must form the necessary connection with the forum State that is the basis for its jurisdiction over him." *Walden*, 571 U.S. at 285. As a result, even the defendant's "knowledge of [the plaintiff's] strong [forum state] connections," combined with the "foreseeable harm" a plaintiff suffered in the forum state, is insufficient to support the exercise of personal jurisdiction. *Id.* at 289; *see also id.* at 291 ("[T]he mere fact that [the] defendant's conduct affected plaintiffs with connections to [the forum state] does not suffice to authorize jurisdiction."). In short, there is no "special intentional torts exception to the traditional specific jurisdiction analysis, so that a plaintiff could always sue in his or her home state." *ISO Claims Servs.*, 2011 WL 13176209, at *6 (quoting *IMO Indus., Inc. v. Kiekert AG*, 155 F.3d 254, 265 (3d Cir. 1988)).

Applying these principles, courts in this district have repeatedly held that they lack jurisdiction over comparable claims filed against nonresident defendants. In *Buzz Pop Cocktails*, for example, the court held that it lacked jurisdiction over a claim of trademark infringement because the fact that the plaintiff was allegedly injured in Florida did not show that the defendant "directed any tortious conduct at Florida." 2020 WL 2838825, at *7 (citing cases). The same was true in *CJS Sols. Grp., LLC v. Tokarz*, 2021 WL 848159, at *10 (M.D. Fla. Mar. 5, 2021). The court held that it lacked personal jurisdiction over claims of intentional interference with contract because "mere injury to a forum resident is not a sufficient connection to the forum." *Id.* Rather, under the Supreme Court's decision in *Walden*, the plaintiff had to allege "more than mere allegations that a foreign defendant committed an intentional tort

24

that caused harm to a plaintiff residing in the forum state." *Id.* (citing cases). Plaintiffs have failed to meet this standard.[14]

## IV.   CONCLUSION

For these reasons, GS's SAC should be dismissed with prejudice, or in the alternative, transferred to the District of Massachusetts.

October 14, 2024

Respectfully submitted,

/s/ *Srikanth K. Reddy*
Srikanth K. Reddy, Lead Counsel, *pro hac vice*
GOODWIN PROCTER LLP

(Additional counsel listed on cover)

*Counsel for Toast, Inc.*

## LOCAL RULE 3.01(g) CERTIFICATION

Toast certifies that it had a meet and confer over the telephone with counsel for Plaintiffs on October 10, 2024 regarding the substance of this motion. Plaintiffs indicated that they will oppose this motion.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that the foregoing was electronically filed on October 14, 2024, with the Clerk of Court using the CM/ECF portal. I also certify that a true and correct copy was served this day on counsel of record identified below via transmission of Notices of Electronic Filing generated by CM/ECF to all counsel of record.

*s/ Srikanth K. Reddy*

---

[14] Specific personal jurisdiction is also lacking for the separate reason that GS's allegations are insufficient to establish trade secret misappropriation, and GS has therefore failed to allege that Toast "commit[ed] a tortious act within this state" under Florida's long-arm statute. Fla. Stat. § 48.193(1)(a)(2); *see supra* Section III.C (explaining pleading defects).

25