**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF FLORIDA**

GRATUITY SOLUTIONS, LLC and
GRATUITY, LLC

<div align="center"><em>Plaintiffs,</em></div>

v.

TOAST, INC.,

<div align="center"><em>Defendant.</em></div>

**C.A. No. 2:24-cv-00737-JLB-NPM**

**JURY TRIAL DEMANDED**

**PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION**
**AND MEMORANDUM IN SUPPORT**

Pursuant to the Federal Rule of Civil Procedure 65(a) and the federal Defend Trade Secrets Act, 18 U.S.C. §§ 1831 *et seq.* ("DTSA"), Plaintiffs Gratuity Solutions, LLC and Gratuity, LLC (collectively, "Plaintiffs", "Gratuity" or "GS") by and through its counsel, move for a Preliminary Injunction to prevent Defendant from further use, dissemination, and publication of Plaintiffs' trade secrets and other confidential information.

## INTRODUCTION

Plaintiffs are a Tampa-based company that develops and offers software solutions to restaurants and other hospitality-industry customers for managing gratuity distributions among employees. Plaintiffs and Defendant Toast began their partnership and business interactions on or about August 2016 when Plaintiffs approached Toast to discuss building a solution to enable Toast Point-of-Sale customers to utilize the Plaintiffs' platform for gratuity distributions. Because of the irreplaceable value of Plaintiffs' trade secrets and other confidential information, Plaintiffs and Defendant Toast entered into a Non-Disclosure Agreement on or about August 29, 2016 ("2016 NDA"). Based on the 2016 NDA, Toast obtained access to some of Plaintiffs' trade secrets and other confidential information including certain technical and/or financial information related to, for example, certain business plans and strategies, customer lists and preferences, development information and plans including feature sets and applications and/or methodologies for integrating and implementing such features sets, work flows, software routines

and applications for obtaining and processing customer-specific information, system architectures and interfaces, and associated source code.

In late 2019, a business broker approached Toast on behalf of Plaintiffs to ask whether Toast would be interested in discussing acquiring Plaintiffs.  Mr. Matthew Baumgartner, Toast's Principal of Corporate Development and Strategy indicated that Toast would be interested and sent a second NDA agreement ("2019 NDA") for both parties as part of discussions related to merger or acquisition of Plaintiffs by Toast. During these negotiations, some of Plaintiffs' trade secrets and other confidential information were further disclosed to Toast, including additional technical and/or financial information related to business plans and strategies, customer lists and preferences, development information and plans including feature sets and feature development and release plans, applications and/or methodologies for integrating and implementing such features sets and future features, work flows including customer-specific flows, software routines and applications for obtaining and processing customer-specific information, system architectures and interfaces, and associated source code.

Although the acquisition of Gratuity by Toast never occurred, since at least 2016, Toast has been aware of the functions, capabilities, and requirements of Plaintiffs' software, and knew or should have known that certain information was not publicly known, including Plaintiffs' trade secrets and other confidential information including, for example, technical and/or financial information.  Further, Toast was aware or should have been aware of the confidentiality restrictions Plaintiffs placed on

3

access to and use of their trade secrets and other confidential information, both with respect to Toast as well as Plaintiffs' other customers.  Yet, on or around November 16, 2021, Toast announced its own gratuity management solution entitled "Toast Tips Manager" that competes with Plaintiffs' product.

On September 19, 2022, Plaintiffs filed suit against Toast for patent infringement of U.S. Patent No. 9,741,050 ("the '050 patent"), in the U.S. District Court for the District of Massachusetts.  (*See Gratuity Solutions, LLC and Gratuity, LLC v. Toast, Inc.*, Civ. Action No. 1:22-cv-11539 (D. Mass.) ("the Patent action").)  The Patent action is presently stayed pending an *Inter Partes* Reexamination ("IPR") before the U.S. Patent and Trademark Office, which is not expected to be resolved until 2025.

Although the '050 patent generally discloses methods and systems for managing gratuity distributions for multiple customers, the invention uses an "interface"—such as the "gratuity sync application"—that may be configured in any number of ways depending on each customer's specific system requirements and "gratuity distribution rules" which can be tailored depending on each customer's specific needs such as number of employees, the type of job performed by each employee, the length of each employee's shift, and other customer-specific information.  During the litigation, however, Toast argued, *inter alia*, that the asserted patent claims were indefinite for failing to disclose the specific configuration of Plaintiffs' "gratuity sync application" interface.  (*See* Ex. 26, D.I. 82-1.)

Plaintiffs maintain that disclosure of such information is not necessary because: (1) the patent claims are directed to systems where the interface may be configured in

any number of ways depending on each customer's specific system requirements as well as their customized gratuity distribution rules (which can be tailored depending on each customer's specific needs such as number of employees, the type of job performed by each employee, the length of each employee's shift, and other customer-specific information that is specific to each); and (2) the configurations of Plaintiffs' interface, including any customer-specific information, are trade secrets maintained in confidence through at least Plaintiffs' Joint User Agreement and other restrictions placed on access to its PayDay Portal.

However, based on the similarity in features sets as between Plaintiffs' commercial offerings and those of Toast, and the speed with which Toast developed its competing product features, Plaintiffs began to believe that Toast had obtained access to Plaintiffs' confidential trade secrets from its PayDayPortal system and was using that information to further develop Toast Tips Manager.  Following the stay of the Patent Action, Plaintiffs began noticing that Toast was adding additional features to its Toast Tips Manager, leading Plaintiffs to believe that Toast was continuing to misappropriate and implement Plaintiffs' trade secrets in its competing product.

### Toast's Customer Advisory Boards

According to Toast's website, it also maintains an official Customer Advisory Board.  (*See* Ex. 1, https://pos.toasttab.com/customer-advisory-board.)  According to Toast, its official Customer Advisory Board is "composed of industry leaders from across the Toast customer network . . ." who "***provide Toast with valuable insights to help guide the future of Toast*** . . ." and provide "***insights and feedback that help inform***

*our product roadmap* . . . .”; Ex. 2, https://pos.toasttab.com/news/toast-announces-2024-customer-advisory-board-members.)  A number of present and former members of Toast’s official Customer Advisory Board are, or were, also customers of Plaintiffs, and as such, have had access to and have received Plaintiffs’ trade secrets and other confidential information pursuant to other confidentiality agreements including, but not limited to, Plaintiffs’ Joint User Agreement, including the Confidentiality Provisions of Section 11, which are designed to protect the confidentiality of Plaintiffs’ valuable trade secrets and other confidential information, and accordingly survive Plaintiffs’ Joint User Agreement. Also according to Toast’s Customer Advisory Board website, Joy Zarembka (“Zarembka”) has been the Vice President of Planning and Innovation for third party Busboys and Poets since 2014, and is also a member of Toast’s Customer Advisory Board.   (*See* Ex. 3, https://pos.toasttab.com/customer-advisory-board; https://www.busboysandpoets.com/.)

**Zarembka Remains Subject to Plaintiffs’ Joint User Agreement**

Upon information and belief, at least Zarembka has been involved in the misappropriation of Plaintiffs’ trade secrets and other confidential information, both in her capacity as a member of Toast’s Customer Advisory Board and in her capacity as Vice President of Planning and Innovation for Busboys and Poets.  On or about August 18, 2016, Joy Zarembka (“Zarembka”) of Busboys and Poets was provided with Plaintiffs’ offer to provide Busboys and Poets with gratuity management services “subject to the terms set forth” in Plaintiffs’ Service Level and User Agreement.  Since at least January 20, 2018, Busboys and Poets and all employees thereof, including

Zarembka who as Vice President of Planning and Innovation for Busboys and Poets, have been subject to the provisions of Plaintiffs' Joint User Agreement, including the Confidentiality Provisions of Section 11.

**Toast's Recently Began Publishing Plaintiffs' Trade Secrets on Its Website**

Based on the belief that Toast had misappropriated Plaintiffs' trade secrets, and continues to do so, as set forth above, Plaintiffs filed their Verified Second Amended Complaint on September 16, 2024, (D.I. 50), to stop the misappropriation of its trade secrets and other confidential information that has occurred, and continues to occur, by certain of Defendant Toast's officers, directors, and/or members of its Customer Advisory Board(s), who obtained access to Plaintiffs' trade secrets and other confidential information pursuant to confidentiality agreements as set forth above, and who have violated those agreements by then using, disclosing, and/or encouraging others to disclose Plaintiffs' protected trade secrets and other confidential information to Defendant Toast, which then used such misappropriated information to develop its own competing tip management systems, thereby damaging Plaintiffs' business and business relationships.

Most troubling, however, on or about July 17, 2024, Plaintiffs became aware of Toast's further misuse of Plaintiffs' trade secrets and other confidential information when it discovered publication of certain information on Toast's public website, as set forth more fully herein. More specifically, Exhibit 29 of Plaintiffs' Verified Second Amended Complaint, which is filed under seal, sets forth pages and videos from Toast's website that disclose features that contain Plaintiffs' specific trade secrets and

other confidential information, including confidential details about the specific configurations of those features, functions, and methodologies for implementing Plaintiffs' software solutions, that are only made available to Plaintiffs' customers pursuant to the confidentiality provisions of Plaintiffs' Joint User Agreement with its customers, and other measures to prevent unauthorized access to its PayDayPortal.

The evidence set forth in the Verified Second Amended Complaint establishes that Toast misappropriated Plaintiffs' trade secrets and other confidential information, has used that information to develop its competing Toast Tips Manager product, and is now publishing Plaintiffs' trade secrets and confidential information publicly on Toast's website for the world to see and use.  These confidential details on how to implement Plaintiffs' software solutions is highly valuable because the information identifies how Plaintiffs have implemented specific features that were identified by Plaintiffs as valuable to their customers, and which were developed by Plaintiffs to address those customers' needs.

Plaintiffs' trade secrets and other confidential information includes detailed information on how Plaintiffs' software and/or hardware is implemented to allow users to tailor Plaintiffs' software to their specific user preferences, plus information about additional features developed by Gratuity that are otherwise unavailable outside of Plaintiffs trade secrets and other confidential information on its PayDyPortal.

### Irreparable Harm and Need for a Preliminary Injunction

Plaintiffs' business has been and continues to be irreparably harmed by Defendant's actions.  Plaintiffs have always maintained the strictest confidentiality

8

over their trade secrets and other confidential information. As noted in the Verified Second Amended Complaint, not only do Plaintiffs' condition access to their trade secrets and other confidential information on various agreements, including their Joint User Agreement, Plaintiffs also restrict access to their websites, data, and other information.

Toast's misappropriation of Plaintiffs' trade secrets and other confidential information has led to Plaintiffs losing a substantial number of customers to Toast. But now, by publishing Plaintiffs' trade secrets and other confidential information on its public website, Toast has made Plaintiffs' valuable trade secrets and other confidential information freely available for the world to see, use, and take—which is an existential threat to Plaintiffs' viability as a business because such confidential information is the technological heart of its product offerings.  Every minute that Toast allows Plaintiffs' trade secrets and confidential information to remain freely available to anyone with access to Toast's website, Toast is irreparably harming Plaintiffs.

## ARGUMENT

### Preliminary Injunction

A court is authorized to enter a preliminary injunction pursuant to Federal Rule of Civil Procedure 65(a).[1]  To prevail on such a request, Plaintiffs must demonstrate

---

[1] Pursuant to 18 U.S.C. § 1836(b)(3), the Court is also authorized to grant the remedy of an injunction to prevent actual or threatened misappropriation.  The Florida Trade Secrets Act alternatively provides the basis for injunctive relief.  *See*, *generally*, *Q. Grady Minor & Assocs., LLC v. Blueshore Eng'g, LLC*, 2024 U.S. Dist. LEXIS 120690, Civ. A. No. 2:24-cv-00634-JLB-KCD (M.D. Fla. July 10, 2024) (granting preliminary injunction in action brought under the Defendant Strade Secrets Act and the Florida

the following four elements:  (1) a substantial likelihood of success on the merits of the underlying case; (2) the movant will suffer irreparable harm in the absence of an injunction; (3) the harm suffered by the movant in the absence of an injunction would exceed the harm suffered by the opposing party if the injunction is grated; and (4) an injunction would not disserve the public interest.  *Johnson & Johnson Vision Care, Inc. v. 1-800 Contacts, Inc.*, 299 F.3d 1242, 1246-47 (11th Cir. 2002).  Here, Plaintiff has shown all four of these factors.

First, there is a substantial likelihood that Plaintiffs' will succeed on the merits of their trade secrets action.  Plaintiffs have shown how their trade secret information, which is maintained in confidence in their PayDayPortal system with access subject to acceptance of the terms of the Joint User Agreement, began appearing recently on Toast's public website.  (*See* Verified Second Amended Complaint Ex. 29 (under seal).). Had Toast developed these features independently, it is unlikely that they would use nearly identical terminology, definitions, work-flows and ordering of configuration steps as those maintained as trade secrets on Gratuity Solutions' PayDayPortal system.

Further the Verified Second Amended Complaint sets forth video evidence of at least one of Toast's Customer Advisory Board members who had access to Plaintiffs' trade secrets through her employment with former customer Busboys and

---

Uniform Trade Secret Act.).  Thus, under either DTSA or the Florida trade secret act, Plaintiffs are also entitled to an immediate Preliminary Injunction against Toast due to the immediate irreparable injury, loss, or damage that has and will result to Plaintiffs.

Poets, Zarembka, admitting that she provided various information to Toast to improve its products. (*See, e.g.*, Verified Second Amended Complaint Ex. 25, https://www.youtube.com/watch?v=-hu71rRbVCA.) Notably, according to Toast, its official Customer Advisory Board is "composed of industry leaders from across the Toast customer network . . ." who "***provide Toast with valuable insights to help guide the future of Toast* . . .**" and provide "***insights and feedback that help inform our product roadmap* . . . .**" (*See* Verified Second Amended Complaint Ex. 2, https://pos.toasttab.com/news/toast-announces-2024-customer-advisory-board-members.). Accordingly, Plaintiffs have demonstrated a reasonable likelihood that members of Toast's Customer Advisory Boards, including at least Zarembka, improperly misappropriated Plaintiffs' trade secrets and other confidential information and provided it to Toast, who has used it to further develop its competing products and now is publishing Plaintiffs' information publicly on Toast's website.

Second, there is little question Plaintiffs are suffering and will continue to suffer irreparable harm if Toast is permitted to continue to post Plaintiffs' confidential trade secrets on Toast's public website for the world to see, including Plaintiffs' competitors. Further, Toast must be prevented from misappropriating Plaintiffs' trade secrets through members of its Customer Advisory Board and using them to develop Toast's competitive products. Both activities by Toast have irreparably harmed and continue to irreparably harm Plaintiffs.

Third, the likelihood of harm to Toast if the requested relief is granted is minimal – merely the inconvenience of losing possession of specific files and

information containing Plaintiffs' trade secrets that Toast maintains on its servers, computers, drives, and/or memory devices, for a limited time, in order for forensic analysis to be completed.  Accordingly, the balance of harm overwhelmingly favors Plaintiffs.

Fourth, the facts set forth above demonstrate that an injunction is in the public interest.  The purpose of the DTSA is to "equip companies with the … tools they need to protect their proprietary information … [so that U. S. companies will] continue to lead the world in creating new and innovative products, technologies, and services." (*See* H.R. Rep. No. 114-529, at 6 (2016).)  The public is clearly benefitted by this protection, and so a Preliminary Injunction would serve the public interest.

### Bond

Under Rule 65(c), "no restraining order or preliminary injunction shall issue except upon the giving of security by the applicant, in such sum as the court deems proper, for the payment of such costs and damages as may be incurred or suffered by any party who is found to have been wrongfully enjoined or restrained."  Here, Plaintiffs respectfully submits that a nominal bond, or even a bond of zero, is appropriate in light of the absence of harm to Toast.

### CONCLUSION

For the reasons stated above, Plaintiffs respectfully moves the Court to issue a Preliminary Injunction ordering Toast to remove from its public website any of Gratuity's trade secrets, as set forth in Ex. 29 to Plaintiffs' Second Amended Complaint, and to discontinue any dissemination of such trade secrets to its

12

customers or others, and to cease its unauthorized access or use of Gratuity's trade

secrets, whether in its Toast Tips product or otherwise.


Dated:  October 18, 2024                          DEVLIN LAW FIRM LLC


                                                  */s/ Alan Wright*
                                                  Alan Wright (admitted *pro hac vice*)
                                                  Virginia Bar No. 46506
                                                  awright@devlinlawfirm.com
                                                  Timothy Devlin (admitted *pro hac vice*)
                                                  Delaware Bar No. 4241
                                                  tdevlin@devlinlawfirm.com
                                                  DEVLIN LAW FIRM LLC
                                                  1526 Gilpin Avenue
                                                  Wilmington, DE 19806
                                                  Telephone: (302) 449-9010
                                                  Facsimile: (302) 353-4251


                                                  CHEFFY PASSIDOMO, P.A.

                                                  */s/  Louis D. D'Agostino*
                                                  Louis D. D'Agostino, Esq.
                                                  Florida Bar No. 776890
                                                  Rachael S. Loukonen, Esq.
                                                  Florida Bar No. 668435
                                                  lddagostino@napleslaw.com
                                                  rloukonen@napleslaw.com
                                                  CHEFFY PASSIDOMO, P.A.
                                                  821 Fifth Avenue South
                                                  Naples, FL 34102
                                                  Telephone: (239) 261-9300
                                                  Facsimile: (239) 261-9782

                                                  *Attorneys for Plaintiffs*
                                                  *Gratuity Solutions, LLC and Gratuity, LLC*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on October 18, 2024, I electronically filed a copy of the

foregoing with the Clerk of the Court using the CM/ECF system, which will send a

notice of electronic filing to all CM/ECF participants in this case.

<div align="center" style="margin-left:40%">

*/s/ Alan Wright*
Alan Wright

</div>