## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF FLORIDA
## FT. MYERS DIVISION

|  |  |
|---|---|
| GRATUITY SOLUTIONS, LLC and GRATUITY, LLC, | C.A. No. 2:24-cv-737-JLB-NPM |
| *Plaintiffs,* | |
| v. | JURY TRIAL DEMANDED |
| TOAST, INC., | |
| *Defendant.* | |

**PLAINTIFFS' OPPOSITION TO TOAST, INC.'S MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT OR, IN THE ALTERNATIVE, TO TRANSFER TO THE DISTRICT OF MASSACHUSETTS**

## I.    INTRODUCTION

Plaintiffs Gratuity Solutions, LLC and Gratuity, LLC ("Gratuity") opposes Defendant Toast, Inc.'s ("Toast") Motion to Dismiss or in the Alternative to Transfer this action to the U.S. District Court for the District of Massachusetts.  As set forth below, Gratuity has adequately pled its claims for trade secret misappropriation under both the federal Defend Trade Secrets Act ("DTSA") and the Florida Uniform Trade Secrets Act ("FUTSA"), as well as counts for various Florida business torts.

Toast mistakenly contends that none of the information it has misappropriated is a "trade secret" because Gratuity's PayDayPortal website is a "commercially available product" whose features "are available to anyone with a login and password."  (D.I. 54 at 2.)  But this is demonstrably incorrect.  To obtain a login and password, users of the PayDayPortal must first establish an authorized account by agreeing to abide by Gratuity's Joint User Agreement and maintain the confidentiality of the information and trade secrets contained on the PayDayPortal. Only after users have agreed to these restrictions can they access Gratuity's PayDayPortal, which provides features that permit authorized users to define, configure, and establish various rules or "*recipes*" to tailor Gratuity's management system to their individual business needs.  Once the fallacy is dispelled that Gratuity's PayDayPortal is publicly accessible and its trade secrets publicly available, it is clear Gratuity pleads plausible claims for trade secret misappropriation.

2

Toast further bemoans this trade secret action as "claim-splitting" because it is purportedly based on the same operative facts as a patent case Gratuity brought against Toast in the district of Massachusetts ("the Massachusetts patent action"). (D.I. 54 at 1.)  However, as Gratuity explains here and in its Second Amended Complaint, the Massachusetts patent action is based on Toast's infringement of U.S. Patent No 9,741,050 ("the '050 patent"), which is directed to specific *system components and architectures* for gratuity management systems as disclosed and claimed in the '050 patent.  Following Toast's breach of two nondisclosure agreements between Gratuity and Toast, Toast used information provided by Gratuity to develop its infringing gratuity management system.  (D.I. 50 at ¶¶27-28.)

Conversely, the trade secrets misappropriated by Toast from Gratuity's PayDayPortal, by definition, are *not* publicly disclosed—in the '050 patent or otherwise—and are directed to the confidential configurations of Gratuity's PayDayPortal which allows its customers to configure their gratuity management "recipes" depending on their specific needs.  As set forth in Gratuity's Second Amended Complaint, the operative facts involved in the misappropriation of Gratuity's trade secrets are separate and distinct from the operative facts supporting the Massachusetts patent action.  Gratuity's confidential trade secrets were misappropriated by Toast's Customer Advisory Board—which was formed in 2021, and whose members are (or were) Gratuity's customers who had access to the PayDayPortal and breached Gratuity's Joint User Agreement.  These facts have no relation to the operative facts of the Massachusetts patent action where Toast

3

breached different nondisclosure agreements with Gratuity as part of acquisition discussions in 2016, and built their competing gratuity management system that infringes Gratuity's '050 patent.

The types of intellectual property taken, and the facts regarding the methods and timing of Toast's unauthorized taking of Gratuity's intellectual property are not only separate and distinct, they are ***mutually*** exclusive.  Resolution of the Massachusetts patent action would have no preclusive impact over the trade secret claims in Gratuity's Second Amended Complaint.  There is no claim-splitting or violation of the first-to-file rule as Toast contends because the causes of action are, by definition, directed to fundamentally different forms of protectible intellectual property that were each improperly "taken" at different times and in different ways.

## II.    LEGAL STANDARD

In reviewing a 12(b)(6) motion to dismiss, a court applies the plausibility standard set forth in *Bell Atlantic Corp. v. Twombly*, 55 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009).  *See Kinghorn Med. LLC v. Nat'l DME LLC*, Civ. A. No. 8:23-cv-1308-CEH-AAS, 2024 U.S. Dist. LEXIS 41651 at * 6 (M.D. Fla. Jan. 30, 2024).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible in its face,'" *Id.* citing *Iqbal*, 556 U.S. at 679.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*  In deciding a Rule 12(b)(6)

motion to dismiss, the Court must accept all factual allegations in a complaint as true and in a light most favorable to plaintiff. *Erickson v. Pardus*, 551 U.S. 89 (2007).

To survive dismissal, the factual allegations must be "plausible" and "must be enough to raise a right to relief above the speculative level. *Id*. See also *Phx. Entm't Partners LLC v. Caset Rd. Food & Bev., LLC*, 728 F. App'x 910, 912 (11th Cir. 2018). This requires "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "To plausibly allege a claim under the Defend Trade Secrets Act, 18 U.S.C. § 1836, the plaintiff must adequately plead three elements: (1) the plaintiff owns a valid trade secret; (2) the trade secret related to a product or service used in, or intended for use in, interstate commerce; and (3) the defendant misappropriated that trade secret." *KOVA Commercial of Naples, LLC v. Sabin*, Case No: 2:23-cv-614-JES-KCD, 2024 U.S. Dist. LEXIS 82718 at *4 (M.D. Fla. May 7, 2024)(citing *It Works Mktg. Inc. v. Melaleuca, Inc.,* No. 820CV1743TKKMTGW, 2021 U.S. Dist. LEXIS 80298 at *7 (M.D. Fla. Apr. 27, 2021)(citing 11th Cir. Pattern Jury. Instr. Civ. 11.1.) Here, Plaintiff has plausibly pled all three elements, which also covers the elements of trade secret misappropriation under the FUTSA, as well as other Florida business torts. Accordingly Toast's Motion to Dismiss must be denied.

With respect to claim-splitting, "[i]n determining whether a plaintiff violated the rule against claim-splitting, the Court examines "(1) whether the case involves the same parties and their privies, and (2) whether separate cases arise from the same transaction or series of transactions." *Vanover v. NCO Fin. Servs., Inc.*, 857 F.3d 833,

5

841-42 (11th Cir. 2017). "Successive causes of action arise from the same transaction or series of transactions when the two actions are based on the same nucleus of operative facts." *Id*. at 842. While this test borrows from the *res* judicata test, the question "is not whether there is finality of judgment, but **whether the first suit, assuming it were final, would preclude the second suit**." *Id*. at 841.[1] Here, even if the patent action were final in the district of Massachusetts—and regardless of outcome—the trade secret cause of action would not be precluded because, by definition, it relies on an entirely different set of facts. Specifically, Gratuity's trade secrets were misappropriated by members of Toast's Customer Advisory Board, who are customers or former customers of Gratuity—facts that are not involved in the Massachusetts patent action and which occurred separate and apart from the facts giving rise to Toast's patent infringement which, as the U.S. Supreme Court has recognized, is a fundamentally different type of intellectual property.

### III.    ARGUMENT

#### A. This Court Has Personal Jurisdiction Over Toast

As an initial matter, Toast again raises its "no personal jurisdiction" argument that Judge Badalamenti rightly noted was "so weak it's pathetic." (9/4/24 Hearing Tr. at 19:13.) As set forth in Gratuity's Second Amended Complaint, Toast: (1) routinely partners with numerous businesses in Florida, including within this district; (2) admittedly employs a number of sales personnel that service and expand Toast's business partnerships in Florida; and (3) misappropriated Gratuity's trade secrets in

---

[1] Emphasis added by Gratuity unless otherwise noted.

Florida using members of Toast's Customer Advisory Board, who are (or were) customers of Gratuity and had access to its confidential PayDayPortal in Florida. (D.I. 50 at ¶15.)  Accordingly, Gratuity not only makes itself "at home" in this district, but the facts underlying Gratuity's trade secret misappropriation claims and state law torts occurred in Florida.  Accordingly, as Judge Badalamenti warned Toast, "I wouldn't hang your hat on" lack of personal jurisdiction.  (Tr. at 19:19.)

### B.  Gratuity's PayDayPortal Contains Protectible Trade Secrets

Toast contends that Gratuity's trade secrets as set forth in sealed Exhibit 29, (D.I. 51-1), cannot contain protectible trade secrets, purportedly because its PayDayPortal is publicly available to anyone with a login and a password.  What Toast fails to explain is that "anyone with a login and a password" must have first established an authorized account with Gratuity and agreed to abide by the confidentiality obligations in Section 11 of Gratuity's Joint User Agreement.  (D.I. 50 at ¶45.)  Toast relegates to a footnote this court's prior decision in *Humanitary Med. Ctr., Inc. v. Artica*, Civ. A. No. 8:23-cv-1792-WJF-TGW; 2023 US Dist. LEXIS 225349, at *7 (M.D. Fla. Dec. 19, 2023) as standing "only for the unremarkable proposition that using password-protection *may* be enough to establish that someone has taken reasonable measures to protect their trade secrets."  But this is highly misleading as Toast completely ignores the court's holding that "[t]aking together all the allegations of fact, Humanitary states a plausible claim for misappropriation of trade secrets including employee and patient identities and referral sources, which

7

Plaintiff ***reasonably attempted to protect with password protection and confidentiality policies and agreements***." (*Id*. at *9.)

Toast cites to *Warehouse Sols., Inc. v. Integrated Logistics, LLC*, 610 F. App'x 881, 885-86 (11th Cir. 2015) as denying trade secret protection to a software's features and functions that are apparent to authorized users with a login and a password. (D.I. 54 at 11.) But Toast again mischaracterizes the appellate court's holding, and in particular, the importance of Gratuity's requiring its authorized users to abide by its Joint User Agreement to maintain the confidentiality of its trade secrets contained on its PayDayPortal:

> Though not dispositive, the absence of a written non-disclosure agreement is relevant to assessing whether WSI took reasonably available steps to preserve the program's secrecy. WSI points to use of 'numerous confidentiality measures,' including limiting access to authorized users as well as employing encryption and password protection. However, these security measures served to restrict access to customer data—which WSI does not claim as trade secrets—rather than the functionality of the program itself."

*Warehouse Solutions,* 610 Fed. Appx. at 885. Indeed, the Court of Appeals in *Warehouse Solutions* expressly distinguished password protection from the use of a "written non-disclosure agreement" to protect the "functionality of the program itself." (*Id*.) Gratuity's Joint User Agreement similarly seeks to prevent disclosure of the functionality of the PayDayPortal itself:

8

## 11. Confidentiality

a.       You agree to not use any technical information, financial information, designs, work flows, software, user interfaces, marketing designs or materials, operational methods, product development plan and techniques, data, computer programs, systems, software, source code, object code, hardware systems, mask words databases, financial information, customer information, legal or litigation information and strategy, pricing information or terms of contracts, or any other similar or related information developed or possessed by GS, including, without limitation, trade secrets as defined under Applicable Law, relating to the Services, to GS or GS's business, operations or real or intellectual properties (collectively, "**Confidential Information**") disclosed to You by GS or learned by You through Your use of the Services for any purpose other than the limited purposes set forth in the Agreement.  You shall not disclose or permit disclosure of any Confidential Information to any third party.  You shall take all reasonable measures to protect the secrecy of the Confidential Information of GS, and prevent it from falling into the public domain.

(D.I. 50 at ¶45.)  Gratuity pleads these facts in its Second Amended Complaint, including that the features identified in Exhibit 29, (D.I. 51-1), are maintained as trade secrets, and these allegations must be taken as true for purposes of a motion to dismiss.

Toast also cites *IDX Sys. Corp. v. Epic Sys. Corp.*, 285 F.3d 581, 584 (7th Cir. 2002) for the similar proposition that "data-entry screens" are not protectible trade secrets when they are "readily ascertainable by proper means."  But *IDX* is distinguishable for a variety of reasons.  Foremost, *IDX* is an appeal from a district court judgment, and not a decision on a motion to dismiss where factual allegations are taken as true.  *See, e.g., Le Tote Inc. v. Urban Outfitters*, Civ. A. No. 20-3009, U.S. Dist. LEXIS 117788, *9 (E.D. Pa. June 24, 2021) (citing *IDX* and noting that "Defendant selectively highlights cases that were decided on Rule 56 summary judgment motions to argue trade secrets were not properly identified, not Rule 12 motions to dismiss."); *Blue Ocean Labs, Inc. v. Tempur Sealy Int'l, Inc.*, Civ. A. No. 1:15CV331, 2015 U.S. Dist. LEXIS 173487, *19 (M.D.N.C. Dec. 31, 2015) (citing *IDX* and distinguishing as "dismissing an action when the court interpreted the

plaintiff's position as effectively claiming that 'all information in or about [the plaintiff's] software is a trade secret.").  Here, however, as Toast notes, Plaintiffs have strived in Ex. 29 to the Second Amended Complaint to specifically identify which features found on its confidential PayDayPortal are protectible trade secrets.  (D.I. 51-1.)  Again, these allegations must be taken as true for purposes of a motion to dismiss.  Further, as with *Warehouse Solutions*, Toast's reliance on *IDX* ignores Gratuity's Joint User Agreement that prevents any member of the public from "readily ascertaining" Gratuity's trade secrets and other confidential information without first agreeing to maintain their confidentiality.

Toast further contends that Gratuity's trade secrets, (D.I. 51-1), are not secrets because they were disclosed in the '050 patent. (D.I. 54 at 2; D.I. 54-3.)  However, while the '050 patent provides generalized examples of the varied situations where the claimed gratuity management system of the '050 patent could be used by customers having different equipment, different business requirements, and different gratuity management needs, the examples in the patent do not provide the specific implementations and "recipes" that form the trade secrets found on Gratuity's PayDayPortal.  (D.I. 51-1.)  Indeed, as Gratuity alleges in its Second Amended Complaint, during the Massachusetts patent action, Toast argued that the "interface" component of the '050 patent, which can be configured to tailor communications between individual users with individual needs and the remote management system, was *indefinite* because Gratuity purportedly ***did not disclose how the interface was configured***.  (D.I. 50 at ¶35 citing D.I. 50-26 at 3-4.)  That is, Toast argued in the

Massachusetts patent action that the specific configurations of the claimed interface were *not disclosed*, yet argues in its Motion now that the '050 patent does disclose such configurations. Toast cannot have it both ways. The '050 patent does not disclose the specifics of the interface configuration because: (1) it can be tailored depending on each customer's specific needs and (2) Gratuity opted to maintain those specific configurations as a trade secret.

Toast also contends that Gratuity does not allege that its trade secrets derive independent economic value. But Gratuity specifically alleges the value of its confidential trade secrets in its Second Amended Complaint:

40.    More importantly, however, the configurations of Plaintiffs' interface, including the implementation of specific features, include customer-specific "*recipes*" used depending one each customer's specific equipment, requirements, needs, and preferences, all are trade secrets maintained in confidence, including through Plaintiffs' Joint User Agreement. These confidential details on how to implement Plaintiffs' software solutions is *highly valuable* because the information identified how Plaintiffs have implemented specific features that were identified by Plaintiffs as valuable to their customers, and which were developed by Plaintiffs to address those customers' needs. Had Toast developed these features independently, it is unlikely that they would use nearly identical terminology, definitions, work-flows and ordering of configuration steps as found in Gratuity Solutions' PayDayPortal system.

(D.I. 50 at ¶40.)  Similarly, Gratuity alleges that "Toast has used members of its Customer Advisory Board, including at least Zarembka, to access, obtain, improperly use, and now disseminate without authorization, Plaintiffs' *valuable* and confidential trade secrets thus damaging Plaintiffs and their business operations." (*Id.* at ¶47.)

Toast attempts to cast the features on Gratuity's PayDayPortal as "generally known" and "readily ascertainable through proper means," (D.I. 54 at 12-13.)  But here again, Toast ignores that access to Gratuity's PayDayPortal is subject to the confidentiality obligations of its Joint User Agreement.  Thus any knowledge of the features on the PayDayPortal are not "generally known" and Toast's misappropriation is not ascertaining those trade secrets by "proper means."

### C. Gratuity's Second Amended Complaint Pleads Numerous Facts and Information Supporting a Plausible Claim of Misappropriation by Toast

Toast also argues that Gratuity's claim of misappropriation is implausible because it is based solely on "information and belief" (D.I. 54 at 14.)  Here again, however, Toast simply mischaracterizes numerous facts alleged in Gratuity's Second Amended Complaint.  As Gratuity states, in 2022 it began noticing similarities between the information on Toast's website and Gratuity's confidential PayDayPortal which led Gratuity to suspect that Toast was misappropriating its confidential trade secrets.  (D.I. 50 at ¶ 37.)  Gratuity was aware that Toast had established its Customer Advisory Board, which Toast expressly characterizes as "composed of industry leaders from across the Toast customer network . . ." who

12

"provide Toast with valuable insights to help guide the future of Toast . . ." and provide "insights and feedback that help inform our product roadmap." (D.I. 50 at ¶¶ 5, 10 citing D.I. 50-17.) Notably, many members of Toast's Customer Advisory Board are customers (or former customers) of Gratuity who have (or had) access to Gratuity's confidential PayDayPortal and are obligated to maintain the confidentiality of any trade secrets contained therein. (D.I. 50 at ¶6.) One example of a former customer of Gratuity that is a member of Toast's Customer Advisory Board is Joy Zarembka, Vice President of Planning and Innovation for Gratuity's former customer, Busboys and Poets, who had access to Gratuity's trade secrets and was subject to the confidentiality provisions of its Joint User Agreement. (D.I. 50 at ¶¶8-9.) Further, Zarembka was publicly interviewed by Toast and describes how she provided information to Toast to improve its product offerings. (D.I. 50 at ¶11.) Based on Zarembka's access to Gratuity's PayDayPortal, her obligations to keep Gratuity's trade secrets confidential, and her public admissions that she shared certain information with Toast, Gratuity plausibly alleges its belief that Zarembka misappropriated Gratuity's trade secrets. Indeed, as Gratuity alleges in its Second Amended Complaint, "[h]ad Toast developed these features independently, it is unlikely that they would use nearly identical terminology, definitions, work-flows and ordering of configuration steps as found in Gratuity Solutions' PayDayPortal system." (D.I. 50 at ¶40.) Accordingly, Toast's assertion that Gratuity's claim of misappropriation is based *solely* on information and belief is demonstrably false.

13

**D. Gratuity's Florida Tort Claims Are Also Fully Supported**

Toast argues that Gratuity's Florida Tort claims (Counts III and IV) should also be dismissed based on "pleading deficiencies." (D.I. 54 at 15-16.)   But here again, Toast ignores clear factual allegations in the Second Amended Complaint related to these counts.  First, because Gratuity has pled a "colorable misappropriation claim" under both the federal Defend Trade Secrets Act and the Florida Uniform Trade Secrets Act, it also has pled facts to support Toast's conspiracy to misappropriate those trade secrets via its Customer Advisory Board.

Toast further argues that Gratuity "does not even allege an agreement or an overt act in furtherance thereof" but once again Gratuity ignores the allegations in the Second Amended Complaint that Gratuity's trade secrets were "misappropriated via an understanding among Toast and certain members of its Customer Advisory Board, to misappropriate Plaintiffs' trade secrets and other confidential information on behalf of Toast . . . ." including, but not necessarily limited to Zarembka.  (D.I. 50 at ¶65.)  Further, "[b]y allowing and/or encouraging members of its Customer Advisory Board to breach their obligations and duties to protect Plaintiffs' trade secrets pursuant to Gratuity's Joint User Agreement, Toast is liable for damages caused by the conspiracy to misappropriate. (*Id.* at 68.)  These allegations, taken as true for purposes of Toast's motion, plausibly claim a conspiracy to misappropriate Gratuity's trade secrets.  The same holds true with respect to Gratuity's intentional interference claim, which is also factually pled as "Toast knew or should have known that certain members of its Customer Advisory Board were under obligations and

14

duties to protect Plaintiffs trade secrets and other confidential information." (*Id.* at ¶70.)  Further "Toast encouraged members of its Customer Advisory Board including, but not necessarily limited to, Zarembka, to breach her duties and obligations to protect Plaintiffs' trade secrets and other confidential information, such as those under the Joint User Agreement between Plaintiffs and Busboys and Poets, including Section 11's Confidentiality provisions, thereby interfering with Plaintiffs' contracts with its customers." (*Id.* at ¶71.)  These allegations, when accepted as true for purposes of this motion to dismiss, plead plausible claims.

Toast further argues that Gratuity's state law tort claims should be dismissed as preempted by Florida's Uniform Trade Secrets Act. (D.I. 54 at 15.)  However, if a plaintiff alleges additional materially distinct facts "not based upon misappropriation of a trade secret," then other tort claims are not barred.  *See, Trinet USA, Inc. v. Vensure Emplr. Servs., Inc.*, 8:20-cv-2018-VMC-AAS; 2021 U.S. Dist. LEXIS 120647 at *5-6 (M.D. Fla. June 29, 2021).  Here, Gratuity has pled additional materially distinct facts showing that the Florida state torts involve Toast's "conspiracy" to have members of Toast's Customer Advisory Board misappropriate Gratuity's trade secrets, and doing so with the knowledge (or that Toast should have known or was willfully blind to the fact) that such misappropriations were breaches of the Gratuity Joint User Agreement.  Thus, because of these additional pled materially distinct facts, and accepting them as true, Gratuity's state law torts are plausibly pled and not preempted. (*Id.* at *13-17.)

### E. Gratuity's Second Amended Complaint Is Not Improper Claim-Splitting

Toast decries Gratuity's Second Amended Complaint as improper claim-splitting in view of the Massachusetts Patent Action. (D.I. 54 at 1.) But Toast's position is demonstrably false for several reasons. First, as the Supreme Court has long-recognized, trade secrets by their very definition are an inherently different form of intellectual property than patents. Further, as Gratuity sets forth in its Second Amended Complaint, the nucleus of operative facts surrounding its trade secret claims are entirely distinct from those of the Massachusetts Patent Action. So different, in fact, that Gratuity's trade secret claims and patent claims are ***mutually exclusive***, meaning that resolution of Gratuity's patent claim in Massachusetts—whether favorable or unfavorable to Gratuity—would have no preclusive impact on Gratuity's trade secret claims in this district. Accordingly, Toast's Motion to Dismiss for improper claim-splitting must be denied.

### 1. The Supreme Court Recognizes Trade Secrets As Distinct From Patents

The U.S. Supreme Court has recognized the important distinction between patents, which by definition provide their owner with exclusive rights for a limited term in exchange for public disclosure, versus trade secrets which provide owners with distinct rights as long as those trade secrets remain confidential. *See Bonito Boats v. Thunder Craft Boats*, 489 U.S. 141 (1989) ("state protection of trade secrets did not operate to frustrate the achievement of the congressional objectives served by the patent laws."); *Kiwanee Oil v. Bicron*, 416 U.S. 470 (1974). Because of their different

16

schemes of protection, the evidence used to prove claims of patent infringement and trade secret misappropriation are vastly different, as here.

### 2. Gratuity's Trade Secret Claims Are Factually Distinct From The Patent Infringement Claims in the Massachusetts Action

Toast attempts to link the Massachusetts Patent Action and this action based on broad generalizations as to the nature of the dispute such as "they involve highly similar, overlapping issues." (D.I. 54 at 18.). For example, Toast's states "[b]oth actions center on the technology used in the design and implementation of Toast Tips Manager. . . . And both actions allege (falsely) that Toast misused confidential information it received from GS pursuant to NDAs." (D.I. 54 at 7-8 (citations omitted.)) But Toast's over-generalizations brush aside the fact that Toast's actions giving rise to Gratuity's trade secrets claims in this action are separate and distinct from those that gave rise to the claims brought in the Massachusetts Patent Action.

Rather, as Gratuity makes clear in its Second Amended Complaint, the Massachusetts Patent Action makes no mention whatsoever of Toast's Customer Advisory Board members, who either are or were customers of Gratuity, and who had access to Gratuity's confidential trade secrets set forth in Ex. 29, (D.I. 51-1), via its PayDayPortal. (D.I. 50 at ¶26.) Toast itself, is not a customer of Gratuity, and had no independent access Gratuity's PayDayPortal. (D.I. 50 at ¶26.) Rather, Toast obtained access to Gratuity's trade secrets through members of its Customer Advisory Board, who did have access to Gratuity's PayDayPortal and were obligated to maintain the confidentiality of Gratuity's trade secrets pursuant to Gratuity's

17

separate Joint User Agreement between Gratuity and its customers. (D.I. 50 at ¶26.) This is not a question of Toast's Customer Advisory Board breaching the nondisclosure agreements between Toast and Gratuity—they are separate breaches by Gratuity's customers (or former customers) of Gratuity's Joint User Agreement related to protecting the trade secrets on Gratuity's PayDayPortal. These differences are critical because they clearly demonstrate that the operative facts for the two actions are distinct and mutually exclusive. (D.I. 50 at ¶30.)

### 3. Gratuity's Trade Secret Case Would Not Be Precluded By Resolution Of The Massachusetts Patent Claims

Courts in this district have long-recognized that the touchstone to whether claims are based on the same nucleus of operative fact is *whether the second action would be precluded by the first action*. *Grant v. Judd*, Case No. 8:23-cv-02230-MSS-AEP, 2024 U.S. Dist. LEXIS 131668, *4-5 (M.D. Fla. October 24, 2024); T.T. Int'l Co., Ltd. v. BMP Int'l, Inc., Civ. A. No. 8:23-cv-2829-WFJ-TGW, 2024 U.S. Dist. LEXIS 47486, *3-4 (M.D. Fla. March 18, 2024); *Mohamad v. HSBC Bank, N.A.*, Civ. A. No. 6:16-cv-2239-Orl-41DCI, 2018 U.S. Dist. LEXIS 233572, *6-7 (M.D. Fla. March 27, 2018) (citing *Vanover v. NCO Fin. Serv., Inc.*, 857 F.3d 833 (11th Cir. 2017). Indeed, as the Eleventh Circuit recognized in *Vanover*, "the claim splitting rule exists to allow district courts to manage their docket and dispense with duplicative litigation," (quoting *Katz v. Girardi*, 655 F.3d 1212, 1218-19 (10th Cir. 2011), and has adopted the Tenth Circuit's test for determining whether the doctrine of claim-splitting bars a subsequent suit." *Vanover*, 857 F.3d at 841. **That test asks "whether the**

*first suit, assuming it were final, would preclude the second suit*." *Id*. (quoting *Katz*, 655 F.3d at 1218).

Here, there is no question that the trade secret misappropriation claims would *not* be precluded by the Massachusetts patent action, regardless of its outcome. That is, whether Gratuity's '050 patent is found to be valid or invalid by the U.S. Patent and Trademark Office in the pending IPR, and regardless of whether the '050 patent is found to infringe or not in the Massachusetts patent action, the trade secret claims brought in this action could proceed regardless. There are no issues involved in the Massachusetts patent action that would have any preclusive impact on the trade secret misappropriation claims—the factual basis for the patent infringement claims and the trade secret misappropriation claims are thus mutually exclusive.

Nor is there any preclusive effect based on the breach of contract claim in the Massachusetts action because the breach there is based on Toast's failure to abide by two nondisclosure agreements entered into as part of the parties' prior acquisition discussions. Conversely, the trade secret claims are based on breach of Gratuity's Joint User Agreement by customers (or former customers) of Gratuity who are also members of Toast's Customer Advisory Board which was not even established until 2021. The agreements involved are again entirely distinct both in time and substance, and the results of the Massachusetts breach of contract claim would have no preclusive impact on the trade secret claims, regardless of outcome.

Accordingly, because the operative facts involved in the Massachusetts patent action are mutually exclusive from those of trade secret claims, and involve different

19

agreements breached by different actors at different times, the trade secret action would not be precluded by the Massachusetts patent action, regardless of outcome.

### 4. Transfer Of This Action To Massachusetts Is Unnecessary and Unwarranted

Because Gratuity's Second Amended Complaint is not improper claim-splitting, transfer to the District of Massachusetts is not warranted. *See Roca Labs. Inc. v. Century Scis., LLC*, Civ. A. No. 14-60123-CIV-ALTONAGA; 2014 U.S. Dist. LEXIS 189308, *15 (S.D. Fla. June 16, 2014) ("Because Roca Labs' Complaint is not barred by the rule against claim splitting, *neither dismissal nor transfer of this action is warranted*.")

## IV.    CONCLUSION

For the foregoing reasons, Defendant's Motion to Dismiss Plaintiffs' Second Amended Complaint Or, In The Alternative, To Transfer To The District of Massachusetts should be denied in its entirety.

Dated: October 28, 2024

DEVLIN LAW FIRM LLC

*/s/ Alan Wright*
Timothy Devlin (*pro hac vice*)
Delaware Bar No. 4241
tdevlin@devlinlawfirm.com
Alan Wright (*pro hac vice*)
Virginia Bar No. 46506
awright@devlinlawfirm.com
1526 Gilpin Avenue
Wilmington, DE 19806
Telephone: (302) 449-9010
Facsimile: (302) 353-4251

CHEFFY PASSIDOMO, P.A.
*/s/ Louis D. D'Agostino*
Louis D. D'Agostino, Esq.
Florida Bar No. 776890
Rachael S. Loukonen, Esq.
Florida Bar No. 668435
lddagostino@napleslaw.com
rloukonen@napleslaw.com
821 Fifth Avenue South
Naples, Florida 34102
Telephone: (239) 261-9300
Facsimile: (239) 261-9782

*Attorneys for Plaintiffs*
*Gratuity Solutions, LLC and*
*Gratuity, LLC*

## CERTIFICATE OF SERVICE

I hereby certify that on October 28, 2024, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to all registered participants.

*/s/ Alan Wright*
Alan Wright

21