**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

|  |  |
|---|---|
| GRATUITY SOLUTIONS, LLC and GRATUITY, LLC,<br><br>      Plaintiffs,<br><br>v.<br><br>TOAST, INC.,<br><br>      Defendant. | Civil Action No. 1:25-cv-10948-JEK<br><br>██████████████<br><br>Leave to file granted<br>May 9, 2025 (D.I. 104) |

**<u>DEFENDANT TOAST, INC.'S MEMORANDUM IN SUPPORT OF MOTION TO
DISMISS GRATUITY'S SECOND AMENDED COMPLAINT</u>**

**TABLE OF CONTENTS**

I.    INTRODUCTION ................................................................................................................. 1

II.   BACKGROUND ................................................................................................................ 4

    A.    The First-Filed Litigation and Associated IPR Proceedings ............................................. 4

    B.    The Pending Trade Secret Action ..................................................................................... 5

        1.    Procedural Background ................................................................................................ 5

        2.    The Alleged Misappropriation of Trade Secrets .......................................................... 6

        3.    The Alleged Trade Secrets ........................................................................................... 7

III.  LEGAL STANDARD ........................................................................................................ 8

IV.   ARGUMENT ..................................................................................................................... 8

    A.    GS's SAC Fails To Adequately Plead Trade Secret Misappropriation (Counts I-II) ....... 8

        1.    GS Has Not Sufficiently Identified Any Trade Secret .................................................. 9

        2.    The PayDayPortal Information Does Not Constitute a Trade Secret ........................... 10

        3.    GS Fails To Allege Misappropriation ........................................................................ 15

    B.    GS's Tort Claims (Counts III-IV) Likewise Fail .............................................................. 16

        1.    GS's Tort Claims are Preempted ............................................................................... 16

        2.    GS Fails to Adequately Plead Civil Conspiracy or Intentional Interference with Contract ..................................................................................................................... 17

V.    CONCLUSION ................................................................................................................ 19

i

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Analog Techs., Inc. v. Analog Devices, Inc.*,
105 F.4th 13 (1st Cir. 2024) ........................................................................................... 9, 11, 15

*Anderson v. Kimberly-Clark Corp.*,
570 F. App'x 927 (Fed. Cir. 2014) .......................................................................................... 12

*ARP Wave, LLC v. Salpeter*,
Case No. 18-cv-2046, 2021 WL 168501 (D. Minn. Jan. 19, 2021) ......................................... 13

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ................................................................................................................... 8

*Barrigas v. United States*,
Civ. A No. 17-cv-10232, 2018 WL 1244780 (D. Mass. Mar. 9, 2018) ..................................... 7

*Barthelmes v. Kimberly-Clark Corp.*,
Case No. 13-30164-MGM, 2015 WL 1431156 (D. Mass. Mar. 27, 2015) .............................. 18

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ............................................................................................................. 8, 16

*Blake v. Pro. Coin Grading Serv.*,
898 F. Supp. 2d 365 (D. Mass. 2012) ..................................................................................... 12

*Cashman Dredging & Marine Contracting Co., LLC v. Belesimo*,
759 F. Supp. 3d 120 (D. Mass. 2024) ....................................................................................... 9

*CVD, Inc. v. Raytheon Co.*,
769 F.2d 842 (1st Cir. 1985) ................................................................................................... 14

*Debose v. Univ. of S. Fla.*,
178 F. Supp. 3d 1258 (M.D. Fla. 2016) ................................................................................... 17

*Developmental Techs., LLC v. Valmont Indus., Inc.*,
Case No. 8:14-cv-2796-MSS-JSS, 2016 WL 7320908 (M.D. Fla. July 18, 2016) .............. 16

*Direct Techs., LLC v. Elec. Arts, Inc.*,
836 F.3d 1059 (9th Cir. 2016) ................................................................................................. 12

*Foster v. Pitney Bowes Corp.*,
549 F. App'x 982 (Fed. Cir. 2013) .......................................................................................... 14

*Gamst v. Bos. Univ.*,
Case No. CV 23-12452-FDS, 2024 WL 758173 (D. Mass. Feb. 23, 2024) ............................. 6

*Gateway Invs., LLC v. Innovest Capital, Inc.*,
402 F. App'x 459 (11th Cir. 2010) ................................................................................. 17

*Gregory v. YWCA Haverhill, Inc.*,
Case No. CIV. 13-11342-FDS, 2014 WL 3798893 (D. Mass. July 30, 2014) ................................ 8, 16

*Hallal v. Vicis Cap. Master Fund Ltd.*,
C.A. Case No. 12-10166-NMG, 2013 WL 1192384 (D. Mass. Feb. 25, 2013) ............................. 18, 19

*Hurry Fam. Revocable Tr. v. Frankel*,
Case No. 8:18-cv-2869-CEH-CPT, 2023 WL 23805 (M.D. Fla. Jan. 3, 2023) ................................. 12

*IDX Sys. Corp. v. Epic Sys. Corp.*,
285 F.3d 581 (7th Cir. 2002) ................................................................................. 10, 13

*ISO Claims Servs., Inc., ACI Div. v. Bradford Techs., Inc.*,
Case No. 3:09-cv-976-J-34JRK, 2011 WL 13176422 (M.D. Fla. Sept. 29, 2011) ............................. 18

*Koch Acton, Inc. v. Koller*,
Case No. 21-10374-FDS, 2024 WL 1093001 (D. Mass. Mar. 13, 2024) ............................................ 15

*Let Us Claim Consultants Ins., Inc. v. Cepeda*,
No. 6:23-CV-2378-PGB-EJK, 2024 WL 3650673 (M.D. Fla. Aug. 5, 2024) ................................. 9, 11

*Lyons v. Gillette*,
882 F. Supp. 2d 217 (D. Mass. 2012) ................................................................................. 18

*Mullane v. Breaking Media, Inc.*,
433 F. Supp. 3d 102 (D. Mass. 2020), *aff'd*, No. 20-1061, 2021 WL 3027150 (1st
Cir. Feb. 26, 2021) ................................................................................. 17

*My Mavens, LLC v. Grubhub, Inc.*,
Case No. 20 Civ. 4657 (PGG), 2023 WL 5237519 (S.D.N.Y. Aug. 14, 2023) ................................. 13

*Nationwide Van Lines, Inc. v. Transworld Movers Inc.*,
853 F. App'x 604 (11th Cir. 2021) ................................................................................. 12

*Nephron Pharms. Corp. v. Hulsey*,
Case No. 6:18-cv-1573-Orl-31LRH, 2020 WL 7684863 (M.D. Fla. Oct. 7, 2020) ............................. 16

*Neural Magic, Inc. v. Meta Platforms, Inc.*,
659 F. Supp. 3d 138 (D. Mass. 2023) ................................................................................. 9

*P2i Ltd. v. Favored Tech USA Corp.*,
Case No. 23-CV-01690-AMO, 2024 WL 4294652 (N.D. Cal. Sept. 24, 2024) ................................. 10

*Penalbert-Rosa v. Fortuno-Burset*,
631 F.3d 592 (1st Cir. 2011) ................................................................................. 16

*Reis v. Tavant Techs., Inc.*,
No. 19-cv-609-WQH-JLB, 2019 WL 5727453 (S.D. Cal. Nov. 5, 2019) ......................................... 12

*Repat, Inc. v. IndieWhip, LLC*,
 281 F. Supp. 3d 221 (D. Mass. 2017)................................................................................... 9

*Ruggers, Inc. v. United States*,
 736 F. Supp. 2d 336 (D. Mass. 2010)............................................................................ 18, 19

*Surfaces, Inc. v. Point Blank Enters., Inc.*,
 Case No. 20-62648-CIV-SMITH, 2022 WL 18956101 (S.D. Fla. Mar. 25, 2022)............................. 17

*Sutra, Inc. v. Iceland Exp.*,
 Case No. 04-11360-DPW, 2008 WL 2705580 (D. Mass. 2023)...................................... 9, 10

*Synopsys, Inc. v. Risk Based Sec., Inc.*,
 70 F.4th 759 (4th Cir. 2023)................................................................................. 11

*Take it Away, Inc. v. The Home Depot, Inc.*,
 Case No. 05-12484-DPW, 2009 WL 458552 (D. Mass. Feb. 6, 2009), *aff'd sub nom.*
 *Take It Away, Inc. v. Home Depot, Inc.*, 374 F. App'x 47 (1st Cir. 2010)........................................... 13

*Tedder Boat Ramp Sys., Inc. v. Hillsborough Cnty., Fla.*,
 54 F. Supp. 2d 1300 (M.D. Fla. 1999) ............................................................................. 12

*TLS Mgmt. & Mktg. Servs., LLC v. Rodriguez-Toledo*,
 966 F.3d 46 (1st Cir. 2020) ........................................................................................ 9, 10

*Trust Safe Pay, LLC v. Dynamic Diet, LLC*,
 Case No. 17-10166-MPK, 2017 WL 3974949 (D. Mass. Sept. 8. 2017)........................................... 11

*Warehouse Sols., Inc. v. Integrated Logistics, LLC*,
 610 F. App'x 881 (11th Cir. 2015)................................................................................ 13

*Welter v. Med. Prof. Mut. Ins. Co.*,
 Case No. 22-cv-11047-PBS, 2023 WL 2988627 (D. Mass. Feb. 23, 2023)........................................ 11

*Whitman & Co., Inc. v. Longview Partners (Guernsey) Ltd.*,
 Case No. 14-cv-12047-ADB, 2015 WL 4467064 (D. Mass. July 20, 2015)....................................... 17

*Wong v. Resolve Tech.*,
 Case No. CIV.A. 10-11642-DJC, 2011 WL 3157198 (D. Mass. July 25, 2011) .................................. 7

**Statutes**

18 U.S.C. §................................................................................................................. 11

18 U.S.C. § 1839...................................................................................................... 3, 11

Fla. Stat. § 688.002 ............................................................................................... 3, 11, 15

Fla. Stat. § 688.008 ..................................................................................................... 16

## I.    INTRODUCTION

The Second Amended Complaint ("SAC") should be dismissed with prejudice because Plaintiffs Gratuity Solutions, LLC and Gratuity, LLC ("GS") have failed to sufficiently plead nearly all of the elements which must be established to sustain this action.  GS's entire case is premised on the speculative notion that one member of Toast, Inc.'s ("Toast") Customer Advisory Board—an unpaid group of Toast customers who give feedback to Toast about its products—divulged information about GS's software gained when her restaurant used GS's product years ago.  But the only evidence cited in the SAC to support this specious allegation is an interview available on YouTube that Judge Badalamenti already held does not disclose "anything … particularly probing as to trade secrets."  Sept. 4, 2024 Hearing Tr. (D.I. 45) ("Sept. 4, 2024 Hr'g Tr."), 27:8–18.

This dispute dates back to 2022 when GS sued Toast in this Court for patent infringement and breach of contract as retaliation for Toast's refusal to acquire GS.  The locus of GS's first complaint related to Toast's development of a restaurant tip-pooling solution called Toast Tips Manager.  *See* Compl. (D.I. 1), *Gratuity Sols., LLC v. Toast, Inc.*, Case No. 1:22-cv-11539-JEK (D. Mass. Sept. 19, 2022) ("D. Mass. Compl.").  This Court subsequently stayed that case pending the Patent Trial and Appeal Board's ("PTAB") *inter partes* review of the asserted patent.  D.I. 109, *Gratuity Sols.,* Case No. 1:22-cv-11539-JEK (D. Mass. Apr. 24, 2024).  Unhappy with that order, GS sued Toast again in the Middle District of Florida on August 14, 2024, alleging an alternative theory of purported wrongdoing:  that Toast misappropriated GS's trade secrets when building Toast Tips Manager.  *See* Compl. (D.I. 1), *Gratuity Sols., LLC v. Toast, Inc.*, Case No. 2:24-cv-00737 (M.D. Fla. Aug. 14, 2024).[1]

---

[1] Unless otherwise specified, docket entry numbers in the remainder of this motion refer to the Florida action now transferred to this Court.

GS filed an Amended Complaint in the Florida action on August 28, 2024 and a verified declaration referencing a pending ***ex parte*** motion for Temporary Restraining Order and Civil Seizure ("TRO motion") that was not listed on the public docket. D.I. 17, 18. Toast offered to waive service and requested copies of any documents regarding the TRO motion. D.I. 28-1. After GS failed to provide the requested papers, Toast asked for a status conference on an emergency basis. D.I. 28. Instead of a status conference, Judge Badalamenti held a hearing on the TRO motion on September 4. D.I. 41. Judge Badalamenti denied the TRO motion, noting that "myriad purportedly misappropriated trade secrets were discovered during today's hearing as publicly available on websites that Plaintiff(s) maintain." D.I. 42. He likewise characterized Gratuity's allegations as "absurd" and "insulting to the Court." Sept. 4, 2024 Hr'g Tr, 26:1-3.

Undeterred, GS abandoned its claims as to every alleged trade secret mentioned in the Amended Complaint and concocted a new set of alleged trade secrets in the SAC. D.I. 50. Judge Badalamenti subsequently granted Toast's motion to transfer the case to the District of Massachusetts under the first-to-file rule. D.I. 88.

The SAC fails to allege any plausible claim of trade secret misappropriation under either the Defend Trade Secrets Act ("DTSA") or the Florida Uniform Trade Secrets Act ("FUTSA"). ▮

First, GS has failed to identify any trade secrets that it possesses with the specificity required at the pleadings stage. At most, GS vaguely describes general business concepts like providing part time employees a share of tips, along with features of its commercially available

---

[2] A unredacted version of Example 29 to the SAC is available at D.I. 51.

product that are apparent to all of GS's customers and its employees and independent contractors. What's more, those same features and functions were published in GS's patent applications over a decade ago. Thus, GS's trade secrets are merely broad categories of information that are "readily ascertainable through proper means"—they are not secret. *See* 18 U.S.C. § 1839(3)(B); Fla. Stat. § 688.002(4)(a) (defining a trade secret). GS not only fails to identify any secret information, but also fails to plead that the alleged trade secrets derive independent economic value from their secrecy. Each one of these fatal errors is an independent basis for dismissal.

Second, GS has failed to plausibly allege a claim for misappropriation under either the DTSA or FUTSA. The SAC parrots the elements of misappropriation and asserts, on "information and belief," that they have been satisfied. The *only* factual allegation that GS pleads in support of this claim is a July 2023 video in which a member of Toast's Customer Advisory Board "provid[ed] Toast with information to improve its products." SAC ¶ 11. GS does not identify what in the nearly 30-minute video supports its misappropriation claim, and its theory is particularly baffling given that the video makes no mention of tip allocation, let alone GS or the products at issue.

GS's tort claims for civil conspiracy to misappropriate trade secrets and intentional interference likewise fail. Because these claims are based on the same underlying factual allegations as the misappropriation claims, they fail on the merits and, separately, are preempted by FUTSA. In addition, they suffer the same pleading defects as the misappropriation claims that came before them.

For these reasons, as laid out more fully below, GS's SAC should be dismissed in its entirety—and because this is GS's third attempt to assert these claims, dismissed with prejudice.

## II.    BACKGROUND

Toast is a Massachusetts-based company that sells restaurant management products and services throughout the United States.  SAC ¶ 4.  GS has developed a platform for gratuity distribution for the hospitality industry.  *Id.* ¶ 17.

In 2016, GS "approached Toast to discuss building a solution to enable Toast Point-of-Sale customers to utilize the Plaintiffs' platform for gratuity distributions."  *Id.*  According to GS, Toast drafted and signed a Non-Disclosure Agreement, and Toast thereafter had access to GS's gratuity management system.  *Id.* ¶ 18.[3]

"In late 2019, a business broker approached Toast on behalf of [GS] to ask whether Toast would be interested in discussing acquiring [GS]" and Toast "sent over a second NDA agreement . . . for both parties as part of discussions related to merger or acquisition of [GS] by Toast."[4]  *Id.* ¶ 20.  Shortly thereafter, on a January 14, 2020 call, Toast informed GS that it "would *not* be moving forward with acquiring [GS] . . . ."  *Id.* ¶ 21 (emphasis in original).  On September 1, 2021, GS again reached out to Toast seeking to be acquired.  *Id.* ¶ 24.  Toast did not respond.  *Id.*  GS filed two lawsuits thereafter.

### A.    The First-Filed Litigation and Associated IPR Proceedings

In the first-filed case, GS alleged that Toast Tips Manager infringes two GS patents, and further that Toast breached its contractual obligations from the pair of NDAs purportedly executed in 2016 and 2019.  *See generally* D. Mass. Compl. (D.I. 1).

GS alleged that Toast breached the NDAs by "disclosing or causing to be disclosed through its website . . . proprietary information revealed to it by GS, including through the design,

---

[3] While GS pleads that a "true and correct copy of the [the 2016 NDA] Agreement is attached as Exhibit 22" to the SAC, what it filed is only a single page of a larger document.  *Id.* at ¶ 18; *see* D.I. 50-23.

[4] The 2019 NDA attached as an exhibit to the SAC is not signed by GS.  *See* D.I. 50-24.

implementation, and instructions for use of the Toast Tips Manager." *Id.* ¶ 83. On Toast's motion, this Court dismissed the infringement claim as to one of the two asserted patents because it claimed only unpatentable subject matter. *Gratuity Sols.*, Case No. 1:22-cv-11539, D.I. 13; *id.*, D.I. 48 (D. Mass. June 7, 2023).

On September 18, 2023, Toast petitioned for *inter partes* review ("IPR") of all claims in the remaining asserted patent with the PTAB. *Id.*, D.I. 109 (Apr. 24, 2024) at 4. The PTAB instituted the IPR on March 27, 2024, and Toast moved to stay the district court case. *Id.* at 4-5. GS opposed the motion, but "concede[d] that [its breach of contract] claim is factually 'intertwined to some extent' with its infringement claim." *Id.* at 8. This Court stayed the case in its entirety on April 24, 2024. *Id.* at 10. On March 24, 2024, the PTAB issued a final written decision finding all claims of the remaining asserted patent invalid. *See id.*, D.I. 113. The Court thereafter lifted the stay and the parties filed a joint status report with proposed schedules on April 21, 2025. *Id.*, D.I. 114, 115, 116.

### B.    The Pending Trade Secret Action

#### 1.    Procedural Background

GS initially filed this action in the Middle District of Florida. As described above, GS initially filed an *ex parte* TRO motion, which Judge Badalamenti denied after explaining that many of the "purportedly misappropriated trade secrets" were in fact "publicly available on websites that Plaintiff(s) maintain." D.I. 42. Notwithstanding Judge Badalamenti's concern with its allegations, GS plowed ahead with a SAC identifying an entirely new set of alleged trade secrets. *See generally* D.I. 50.

On October 14, 2024, Toast moved to dismiss the SAC, or in the alternative to transfer the case to the District of Massachusetts. D.I. 54. After a hearing, Magistrate Judge Mizell granted Toast's motion to transfer the case to this Court under the first-to-file rule, but deferred resolution

of Toast's Rule 12(b)(6) motion to dismiss the SAC to the transferee court.  D.I. 85 at 6.  GS objected to Judge Mizell's order, but Judge Badalamenti rejected GS's objection and adopted the order.  D.I. 88.  This action was then transferred to this Court.  D.I. 89.

### 2.    The Alleged Misappropriation of Trade Secrets

GS baldly alleges that "certain of Toast's officers, directors, and/or members of its Customer Advisory Board(s)" have "obtained access to Plaintiffs' trade secrets and other confidential information pursuant to confidentiality agreements," and Toast subsequently used those "protected trade secrets and other confidential information . . .to develop its own competing systems" (Toast's Tip Manager product) for gratuity management.  SAC ¶ 1; *see also id.*, Ex. 29.

Toast's Customer Advisory Board is a group of roughly 20 Toast customers that meet quarterly to discuss the challenges they face in their businesses and to provide feedback on the solutions and tools Toast is developing.  *Id.* ¶ 5.  Joy Zarembka, an employee of Busboys and Poets, is a Toast CAB member.  *Id.* ¶ 7.  GS alleges that Busboys and Poets—though not Zarembka herself—signed a Joint User Agreement with GS in January 2018.  *Id.* ¶¶ 51, 55, 60.  Despite this allegation, GS failed to attach Busboys and Poets' signed Joint User Agreement; the SAC instead includes a version of the Agreement with no signature page and no date.  *Id.*, Ex. 18.  The Joint User Agreement, to which Toast is not a party, specifies that GS may amend the agreement "at any time by posting the amended version on GS's website located at http://gratuitysolutions.com."  *Id.*, Ex. 18 at 1.  While the unsigned Joint User Agreement attached to the SAC includes a confidentiality provision, SAC ¶ 6, the current "Terms and Conditions" for the use of PayDayPortal, available on GS's website, contain **no confidentiality provision at all**.[5]  *See*

---

[5] "On a motion to dismiss, the court may consider four types of documents outside the complaint without converting the motion into one for summary judgment: (1) documents of undisputed authenticity; (2) official public records; (3) documents central to plaintiff's claim; and (4) documents sufficiently referred to in the complaint." *Gamst v. Bos. Univ.*, Case No. CV 23-

Declaration of Srikanth K. Reddy in Support of Defendant Toast Inc.'s Motion to Dismiss Gratuity's Second Amended Complaint ("Reddy Decl."), Ex. A.

### 3. The Alleged Trade Secrets

The SAC has no factual allegations describing the purported trade secrets with any meaningful degree of detail. Exhibit 29 to the Complaint—which Plaintiff describes as setting forth the alleged trade secrets, SAC ¶¶ 41-42—lists 16 features of Toast's Tips Manager program that GS claims Toast misappropriated from GS's own PayDayPortal program. These features are highly generic. ████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

██████████████████████

GS maintains that *how* Toast has implemented these common features was misappropriated from GS. But the SAC provides zero detail about GS's PayDayPortal program—information that

---

12452-FDS, 2024 WL 758173, at *1 n.1 (D. Mass. Feb. 23, 2024). Applying this principle here, the Court should consider the current Terms and Conditions available on GS's website. The Joint User Agreement is central to GS's claims and is referred to repeatedly throughout the SAC. Toast can therefore properly rely on the current version of the policies GS has in place to govern use of its product. *See, e.g.*, *Barrigas v. United States*, Civ. A No. 17-cv-10232, 2018 WL 1244780, at *1 (D. Mass. Mar. 9, 2018) (court may consider document that is "central to the dispute" even if "not attached to the complaint or expressly incorporated therein"); *Wong v. Resolve Tech.*, Case No. CIV.A. 10-11642-DJC, 2011 WL 3157198, at *1 (D. Mass. July 25, 2011) ("In ruling on a Rule 12(b)(6) motion to dismiss, the Court may properly consider the relevant entirety of a document integral to or explicitly relied upon in the complaint, even though not attached to the complaint, without converting the motion into one for summary judgment.") (internal quotations omitted). This approach is particularly appropriate here because publicly available information establishes that GS's trade secrets are in fact not secret—precisely the reason Judge Badalamenti previously denied GS's request for a TRO. *See supra*, p. 2.

is, of course, entirely in GS's possession.  The SAC reproduces screenshots from *Toast's* websites and declares that the information and processes at issue were taken from GS's PayDayPortal program, but the SAC has no allegations describing GS's product, let alone any allegations explaining how the features of GS's PayDayPortal overlap with Toast's Tips Manager.  GS's allegation that "Toast's Tips Manager product has begun offering more feature sets that are nearly identical to those found in Plaintiff's commercial product," SAC ¶ 39, is thus entirely unsupported by factual allegations.

## III.    LEGAL STANDARD

A complaint cannot survive a motion to dismiss unless it "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  While the Court must accept factual allegations as true, it is not required to accept allegations that amount to legal conclusions, conclusory statements, "a formulaic recitation of the elements of a cause of action," or "'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* at 678 (quoting *Twombly*, 550 U.S. at 557).  In other words, a court neither must (nor should) accept every allegation made by the complainant, no matter how conclusory or generalized. *See Gregory v. YWCA Haverhill, Inc.*, Case No. CIV. 13-11342-FDS, 2014 WL 3798893, at *2 (D. Mass. July 30, 2014).

## IV.    ARGUMENT

### A.    GS's SAC Fails To Adequately Plead Trade Secret Misappropriation (Counts I-II)

The SAC should be dismissed because it fails to allege any plausible claim of trade secret misappropriation under either the DTSA or FUTSA.  To plead a violation of the DTSA or FUTSA, GS must show that: (1) it possessed a trade secret; (2) it took "reasonable measures" to protect the

8

trade secret; and (3) Toast "disclosed or used" the trade secret despite a duty to maintain secrecy. *Analog Techs., Inc. v. Analog Devices, Inc.*, 105 F.4th 13, 17 (1st Cir. 2024); *see Let Us Claim Consultants Ins., Inc. v. Cepeda*, No. 6:23-CV-2378-PGB-EJK, 2024 WL 3650673, at *10 (M.D. Fla. Aug. 5, 2024) (comparing standards for misappropriation under the DTSA and FUTSA). GS's claim fails at every prong.

### 1. GS Has Not Sufficiently Identified Any Trade Secret

As a threshold matter, GS's new list of alleged trade secrets (its third attempt) does not "defin[e] the information for which protection is sought with sufficient definiteness . . . to determine the fact of an appropriation." *TLS Mgmt. & Mktg. Servs., LLC v. Rodriguez-Toledo*, 966 F.3d 46, 48, 53 (1st Cir. 2020) (reversing district court decision finding liability because plaintiff "failed to satisfy its burden to prove the existence of trade secrets"). A "plaintiff's description of its alleged trade secrets 'must be made with clarity that can be understood by a lay person … and distinguish what is protectable from that which is not." *Cashman Dredging & Marine Contracting Co., LLC v. Belesimo*, 759 F. Supp. 3d 120, 139 (D. Mass. 2024) (quotation omitted); *see also Repat, Inc. v. IndieWhip, LLC*, 281 F. Supp. 3d 221, 227 (D. Mass. 2017) (the party asserting a claim of trade secret misappropriation "must identify with adequate specificity the trade secret or proprietary information that was allegedly misappropriated by the defendant"). Applying these principles, "a would-be plaintiff" does not have "license to define its trade secrets broadly or imprecisely." *Neural Magic, Inc. v. Meta Platforms, Inc.*, 659 F. Supp. 3d 138, 167 (D. Mass. 2023).; *see Sutra, Inc. v. Iceland Exp.*, Case No. 04-11360-DPW, 2008 WL 2705580, at *3 (D. Mass. 2023). The SAC fails this standard.

9

██████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████

███████████████████    But GS makes no attempt to identify what information in these screen grabs and videos actually is an alleged trade secret, as opposed to public information or functionality that Toast developed.  *See, e.g.*, *Sutra, Inc.*, 2008 WL 2705580, at \*4 (dismissing trade secret claim where the plaintiff's "description of its alleged trade secret [was] overly broad and this lack of specificity [was] fatal to its claim"); *P2i Ltd. v. Favored Tech USA Corp.*, Case No. 23-CV-01690-AMO, 2024 WL 4294652, at \*3–\*5 (N.D. Cal. Sept. 24, 2024) (dismissing trade secret misappropriation claim and noting that "a plaintiff must describe the trade secret with sufficient particularity to permit the defendant to ascertain at least the boundaries within which the secret lies").

██████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████

███████████████████████████████████████████████    But tasks like "setting workflows" and "adjusting settings" are hopelessly vague tasks that are common across industries. GS "must do more than just identify a kind of technology and then invite the court to hunt through the details in search of items meeting the statutory definition [of a trade secret]." *TLS Mgmt.*, 966 F.3d 46, 54 (quoting *IDX Sys. Corp. v. Epic Sys. Corp.*, 285 F.3d 581, 584 (7th Cir. 2002)).

GS's complaint should be dismissed for this reason alone.

### 2.  The PayDayPortal Information Does Not Constitute a Trade Secret

Next, even assuming its descriptions are sufficiently detailed, what GS describes does not actually meet the definition of a trade secret.  Under the DTSA and FUTSA, information qualifies as a trade secret if (A) "the owner … has taken reasonable measures to keep [the] information secret;" and (B) the information "derive[s] independent economic value, actual or potential, from

10

not being generally known to, and not being readily ascertainable through proper means, by another person who can obtain economic value from the disclosure of that information." *Analog Techs.*, 105 F.4th at 17; *Let Us Claim Consultants Ins.*, Case No. 6:23-cv-2378-PGB-EJK, 2024 WL 3650673, at *10. GS fails to satisfy each of these requirements.

> a.    The PayDayPortal features do not derive independent economic value from not being generally known.

First, GS fails to identify any information that derives independent economic value from not being generally known and readily ascertainable by proper means. *See* 18 U.S.C. § 1839(3)(B); Fla. Stat. § 688.002(4)(A). As an initial matter, even assuming GS could identify any information that is secret (it cannot, *see infra* § IV.A.3), GS does not sufficiently allege that the information at hand "derive[s] independent economic value" from that secrecy. 18 U.S.C. § 1839(3)(B); Fla. Stat. § 688.002(4)(A). The SAC refers to GS's "valuable and confidential trade secrets," SAC ¶ 47, and asserts that the "confidential details on how to implement Plaintiffs' software solutions is [*sic*] highly valuable because the information identified how Plaintiffs have implemented specific features that were identified by Plaintiffs as valuable to their customers, and which were developed by Plaintiffs to address those customers' needs." *Id.* ¶ 40. These conclusory allegations cannot survive Rule 8. *Welter v. Med. Prof. Mut. Ins. Co.*, Case No. 22-cv-11047-PBS, 2023 WL 2988627, at *13 (D. Mass. Feb. 23, 2023); *see also Trust Safe Pay, LLC v. Dynamic Diet, LLC*, Case No. 17-10166-MPK, 2017 WL 3974949, at *9 (D. Mass. Sept. 8. 2017).

Even putting that aside, information does not acquire trade secret status merely because it has generic commercial value. Rather, as the text of the statute makes clear, the information must derive economic value *from its confidential status*. 18 U.S.C. § 1839(3); *see also Synopsys, Inc. v. Risk Based Sec., Inc.*, 70 F.4th 759, 772 (4th Cir. 2023) ("Proof of value untethered to value derived from secrecy does not show an alleged trade secret's independent economic value.");

11

*Hurry Fam. Revocable Tr. v. Frankel*, Case No. 8:18-cv-2869-CEH-CPT, 2023 WL 23805, at *13 (M.D. Fla. Jan. 3, 2023) ("independent economic value … is derived from [the information's] secrecy"). GS's failure to allege as much dooms GS's claim. *E.g.*, *Direct Techs., LLC v. Elec. Arts, Inc.*, 836 F.3d 1059, 1071 (9th Cir. 2016) (affirming summary judgment ruling of no misappropriation where plaintiff had "not presented any evidence that there was value in the secrecy" of the alleged trade secrets); *Reis v. Tavant Techs., Inc.*, No. 19-cv-609-WQH-JLB, 2019 WL 5727453, at *4 (S.D. Cal. Nov. 5, 2019) (dismissing claim for misappropriation where plaintiff failed to state facts to show that the trade secret derived value from not being known).

> b.  <u>The PayDayPortal features are generally known or, at a minimum, readily ascertainable.</u>

GS's claims fail for the more fundamental reason that the features and functionality of the PayDayPortal are simply not secret. Indeed, the vast majority of the features identified in Exhibit 29 were publicly disclosed in GS's U.S. Patent Nos. 9,741,050 and 10,726,436, which issued from an application *first published over a decade ago*.[6] *See* Reddy Decl. Ex. B (chart comparing alleged trade secrets to patent disclosures). To take one example, "trade secret" Feature #2 is disclosed in Figure 4 in the '050 patent. *Id.* at 2; *see also* Reddy Decl. Ex. C ('050 patent) at Col. 17, ll. 12-45; Col. 20, ll. 56-67. Patent and trade secret protection cannot both cover the same information, and public patent disclosure necessarily destroys the requisite secrecy for trade secret protection. *E.g.*, *Tedder Boat Ramp Sys., Inc. v. Hillsborough Cnty., Fla.*, 54 F. Supp. 2d 1300, 1303 (M.D. Fla. 1999) ("The Supreme Court has established that the patenting of a product negates the possibility that the product is also a trade secret."); *Blake v. Pro. Coin Grading Serv.*, 898 F. Supp.

---

[6] The Court can take judicial notice of patent documents at the pleadings stage under Federal Rule of Evidence 201. *See, e.g.*, *Anderson v. Kimberly-Clark Corp.*, 570 F. App'x 927, 932 n.3 (Fed. Cir. 2014); *see also Nationwide Van Lines, Inc. v. Transworld Movers Inc.*, 853 F. App'x 604, 606 (11th Cir. 2021).

12

2d 365, 380 (D. Mass. 2012) (plaintiff "cannot claim that [information] was confidential information as of the date of the patent publication").

Moreover, the PayDayPortal features are apparent to all of GS's users, each of which can use the platform today without signing any confidentiality agreement. *Supra*, pp. 6-7. They are therefore "readily ascertainable by proper means." *See, e.g.*, *Warehouse Sols., Inc. v. Integrated Logistics, LLC*, 610 F. App'x 881, 885–86 (11th Cir. 2015) (affirming summary judgment and denying trade secret protection to a software "program's 'features and functions'" after noting that how the program "looked and worked was readily apparent to authorized users with an ID and password"). As Judge Easterbrook explained in *IDX Sys. Corp.*, "a trade-secret claim based on readily observable material is a bust." 285 F.3d at 584. In *IDX Sys. Corp.*, Judge Easterbrook affirmed dismissal of a trade secret misappropriation claim for software "data-entry screens" because "details that ordinary users of the software could observe without reverse engineering" were "readily ascertainable." *Id.* This Court should find the same. *See also Take it Away, Inc. v. The Home Depot, Inc.*, Case No. 05-12484-DPW, 2009 WL 458552, at *6 (D. Mass. Feb. 6, 2009), *aff'd sub nom. Take It Away, Inc. v. Home Depot, Inc.*, 374 F. App'x 47 (1st Cir. 2010) ("Information available for public view cannot be protected as a trade secret."); *My Mavens, LLC v. Grubhub, Inc.*, Case No. 20 Civ. 4657 (PGG), 2023 WL 5237519, at *20 (S.D.N.Y. Aug. 14, 2023) (rejecting argument that filtering function on a restaurant ordering website was a trade secret); *ARP Wave, LLC v. Salpeter*, Case No. 18-cv-2046 (PJS/ECW), 2021 WL 168501, at *6 n.13 (D. Minn. Jan. 19, 2021) (granting, in part, defendant's motion for summary judgment and criticizing plaintiffs for "fail[ing] to explain how a display or control could possibly be a trade secret when it is exposed to the public").

GS previously tried to distinguish this caselaw by arguing that it did not contemplate the impact of a confidentiality provision similar to that found in the Joint User Agreement. But having all customers sign a broad confidentiality provision does not transform ordinary, readily observable features of a product into trade secrets. That is particularly true here given that each restaurant's employees and independent contractors had access to the PayDayPortal program, despite not having themselves signed the Joint User Agreement. *See supra* pp. 6-7. More fundamentally, the current terms and conditions for users of the PayDayPortal product do not impose *any* confidentiality obligations. *See* Reddy Decl., Ex. A. So even assuming the confidentiality provision in the Joint User Agreement was sufficient to protect the PayDayPortal features when Busboys and Poets purportedly signed the Joint User Agreement in 2018, GS cannot maintain trade secret protection for material that is now publicly available. *CVD, Inc. v. Raytheon Co.*, 769 F.2d 842, 850 (1st Cir. 1985) ("The cornerstone of a trade secret, however, is secrecy. Once a trade secret enters the public domain, the possessor's exclusive rights to the secret are lost.").

c.     <u>GS Has Failed to Allege that It Took Reasonable Measures to Protect the Alleged Confidential Information</u>

For much the same reason, GS has also failed to sufficiently allege that it took reasonable measures to protect its purported trade secrets. To start, by disclosing much of the information in its own patents, GS clearly failed to protect this information. *See, e.g.*, *Foster v. Pitney Bowes Corp.*, 549 F. App'x 982, 989 (Fed. Cir. 2013) ("[I]deas in [a] published patent application [are] not subject to reasonable efforts to maintain confidentiality."). Moreover, whatever steps GS might have taken in the past to protect the confidentiality of the PayDayPortal, it has now made all of the information "readily ascertainable" to anyone who uses PayDayPortal. *See supra*, pp. 6-7. As described, the current terms and conditions for the PayDayPortal application do not include any confidentiality provisions at all. *See id*. Nor does GS allege that it requires all users to sign

14

confidentiality agreements or use password-protected accounts.    Without imposing such protections, GS cannot establish that it took reasonable protective measures to protect its purported trade secrets.  *See, e.g.*, *Koch Acton, Inc. v. Koller*, Case No. 21-10374-FDS, 2024 WL 1093001, at *9–*10 (D. Mass. Mar. 13, 2024) (asserted information lacked the essential element of "secrecy" where plaintiff failed to enter into confidentiality agreements and all employees with login credentials could access the alleged trade secrets).

### 3.  GS Fails To Allege Misappropriation

Even assuming that GS has alleged a trade secret, GS's implausible "information and belief" assertions are insufficient to plead that Toast has misappropriated these trade secrets.  Under either the DTSA or FUTSA, misappropriation requires acquisition, use, or disclosure of another's trade secret by a person who knows or had reason to know that the trade secret was acquired by improper means.  *See Analog Techs.*, 105 F.4th at 17 (quoting 18 U.S.C. § 1839(5)(B)); *see also* Fla. Stat. § 688.002.  Here, however, GS merely parrots the legal standard for misappropriation, accompanied by a handful of purely speculative and implausible allegations.

GS's sole argument for misappropriation is that, "[u]pon information and belief, Toast obtained [GS's] trade secrets" from a member of its Customer Advisory Board ("CAB"), Zarembka, and that Toast "aware of or should have been aware of" Zarembka's provision of information about GS's PayDayPortal program to Toast would violate GS's Joint User Agreement with Zarembka's employer.  SAC ¶¶ 59-61.  To make this argument, GS alleges that Zarembka "admittedly provided information to Toast," citing to a YouTube video that was posted in July 2023.  *Id*. ¶ 52.  But nowhere in the 29-minute video does Zarembka mention GS, Toast Tips Manager, or even tip allocation.  Indeed, at the TRO hearing, the Florida Court recognized that the YouTube video was not "prob[ative] as to trade secrets" and did not even describe what one "would normally understand to be trade secrets."  Sept. 4, 2024 Hr'g Tr. at 27:8–18.

15

Because GS's conclusory assertion of misappropriation is based solely on "information and belief" and not supported by any plausible factual pleadings, the claims must be dismissed. *See Penalbert-Rosa v. Fortuno-Burset*, 631 F.3d 592, 595 (1st Cir. 2011) ("[S]ome allegations, while not stating ultimate legal conclusions, are nevertheless so threadbare or speculative that they fail to cross 'the line between the conclusory and the factual.'") (quoting *Twombly*, 550 U.S. at 557 n. 5); *Gregory*, Case No. CIV. 13-11342-FDS, 2014 WL 3798893, at *2 ("[B]are assertions that amount to nothing more than a formulaic recitation of the elements of a … claim are conclusory and not entitled to be assumed true." (cleaned up)).

### B.   GS's Tort Claims (Counts III-IV) Likewise Fail

#### 1.   GS's Tort Claims are Preempted

The FUTSA preempts GS's tort claims for civil conspiracy to misappropriate GS's trade secrets (Count III) and intentional interference with contracts (Count IV). "[A]s a general proposition other torts involving the same underlying factual allegations as a claim for trade secret misappropriation will be preempted by FUTSA." *Developmental Techs., LLC v. Valmont Indus., Inc.*, Case No. 8:14-cv-2796-MSS-JSS, 2016 WL 7320908, at *4 (M.D. Fla. July 18, 2016); *see also* Fla. Stat. § 688.008(1) (preempting laws that provide civil remedies for trade secret misappropriation). Here, GS's common-law claims involve the same underlying factual allegations as the FUTSA misappropriation claim. Specifically, both tort counts rest on an allegation that Toast used CAB to get access to GS's trade secrets, in what GS alleges was a violation of GS's Joint User Agreement.[7] *See Nephron Pharms. Corp. v. Hulsey*, Case No. 6:18-

---

[7] *Compare* SAC ¶ 62 (FUTSA) ("Toast knew of, should have known of, or was otherwise willfully blind to any members of Toast's Customer Advisory Board member's disclosure of Plaintiffs' trade secrets and other confidential information, including at least Zarembka, in violation of their obligations and duties owed to Plaintiffs under Plaintiffs' Joint User Agreement.") *with* SAC ¶ 66 (civil conspiracy) ("Toast knew, should have known, or was willfully blind to, the unauthorized use, dissemination, and disclosure of Plaintiffs' trade secrets and other confidential information by

cv-1573-Orl-31LRH, 2020 WL 7684863, at *20–*22 (M.D. Fla. Oct. 7, 2020) (tortious interference claim preempted); *Surfaces, Inc. v. Point Blank Enters., Inc.*, Case No. 20-62648-CIV-SMITH, 2022 WL 18956101, at *4 (S.D. Fla. Mar. 25, 2022) (civil conspiracy claim preempted).

### 2. GS Fails to Adequately Plead Civil Conspiracy or Intentional Interference with Contract

Even if not preempted, GS's tort claims are based on the same deficient allegations as its claims for misappropriation, and they therefore fail on the same basis.  *See Whitman & Co., Inc. v. Longview Partners (Guernsey) Ltd.*, Case No. 14-cv-12047-ADB, 2015 WL 4467064, at *12 (D. Mass. July 20, 2015) (dismissing claim for civil conspiracy where plaintiff failed to state a claim for the underlying tort).[8]  In addition, GS's supporting allegations merely recite the elements of each claim, which is insufficient under Rule 8.

To state a claim for civil conspiracy, GS must show "(1) a common design or agreement between two or more persons to do a wrongful act and (2) proof of some tortious act in furtherance of the agreement."  *Mullane v. Breaking Media, Inc.*, 433 F. Supp. 3d 102, 115 (D. Mass. 2020), *aff'd*, No. 20-1061, 2021 WL 3027150 (1st Cir. Feb. 26, 2021) (internal quotations omitted).  GS fails to meet either prong.  On the first, GS offers no allegations of a "common design or agreement" between Toast and members of CAB beyond vague and conclusory

---

any member of its Customer Advisory Board was in breach of the duties and obligations owed to Plaintiffs, including under the Joint User Agreement . . . ") *and* SAC ¶¶ 70–71 (intentional interference with contract) ("Toast knew or should have known that certain members of its Customer Advisory Board were under obligations and duties to protect Plaintiffs trade secrets and other confidential information including, but not necessarily limited to, Zarembka, who was subject to the Joint User Agreement . . . [and] Toast encouraged members of its Customer Advisory Board . . . to breach [their] duties and obligations to protect Plaintiffs' trade secrets . . .").
[8] GS's claims should be dismissed regardless of whether Florida or Massachusetts law applies. *See Gateway Invs., LLC v. Innovest Capital, Inc.*, 402 F. App'x 459, 461 (11th Cir. 2010) (affirming dismissal of claim for civil conspiracy where plaintiff failed to state a claim for the underlying tort); *Debose v. Univ. of S. Fla.*, 178 F. Supp. 3d 1258, 1272 (M.D. Fla. 2016) (requiring pleading "particularized facts that are more than vague or conclusory").

statements. *Barthelmes v. Kimberly-Clark Corp.*, Case No. 13-30164-MGM, 2015 WL 1431156, at \*22 (D. Mass. Mar. 27, 2015) ("A plaintiff advancing a conspiracy claim under the Rule 8 standard must allege with at least some degree of particularity overt acts which defendants engaged in which were reasonably related to the promotion of the claimed conspiracy.") (internal quotations omitted).  GS alleges only an "understanding" between Toast and its CAB, without stating any facts to actually support this claim.

GS similarly fails to plead the required elements of intentional interference with contract. "In order to assert a claim for intentional interference, a plaintiff must allege (1) the existence of a contract or a business relationship which contemplated economic benefit for the claimant; (2) the defendants' knowledge of the contract or business relationship; (3) the defendants' intentional interference with the contract or business relationship for an improper purpose or by improper means; and (4) damages." *See Lyons v. Gillette*, 882 F. Supp. 2d 217, 235 (D. Mass. 2012) (internal quotations omitted).[9]  When asserting a claim for intentional interference with a contract, a plaintiff must allege non-conclusory facts based on more than mere suspicion of wrongdoing. *See Hallal v. Vicis Cap. Master Fund Ltd.*, C.A. Case No. 12-10166-NMG, 2013 WL 1192384, at \*21 (D. Mass. Feb. 25, 2013) (dismissing claim of intentional interference with a contract where plaintiff failed to alleged defendant took any affirmative steps to interfere with the contract or acted with actual malice and instead "provided only conclusory allegations"); *Ruggers, Inc. v. United States*, 736 F. Supp. 2d 336, 343 (D. Mass. 2010) ("[T]he claim that Under Armour knowingly induced the breach [of contract] appears to rest on mere suspicion alone. More is required to survive a motion to dismiss.").

---

[9] Again, Florida law is similar.  *See ISO Claims Servs., Inc., ACI Div. v. Bradford Techs., Inc.*, Case No. 3:09-cv-976-J-34JRK, 2011 WL 13176422, at \*6 (M.D. Fla. Sept. 29, 2011) (requiring a similar standard under Florida law and dismissing a claim for intentional interference).

The conclusory allegations in the SAC do not support GS's bald assertion that Zarembka was subject to a contract that Toast "knew or should have known" about.  The SAC does not plead that Zarembka signed, or was even aware of, the Joint User Agreement, nor does it plead facts explaining why Toast would know that any member of its CAB had a contract or business relationship with GS.  This failure "to allege even minimal facts regarding the who, what, when, and where on the 'knowing inducement' element of its claim" alone warrants dismissal.  *See Ruggers*, 736 F. Supp. 2d at 343.  Even if GS had pleaded facts sufficient to allege Toast's knowledge, the SAC is void of any allegations to show that Toast "encouraged" its CAB members to breach their "duties and obligations" to GS, instead relying on conclusory statements based on nothing more than a "mere suspicion" of wrongdoing.  *See id.* (dismissing claim for intentional interference with a contract where plaintiffs' allegations rested on "mere suspicion alone"); *Hallal*, 2013 WL 1192384, at *21 (dismissing claim of intentional interference with a contract where plaintiff "provided only conclusory allegations").

Accordingly, the Court should dismiss GS's tort claims.

## V.    CONCLUSION

For the foregoing reasons, Toast respectfully requests that the Court dismiss the entirety of GS's Second Amended Complaint with prejudice.

19

Dated: May 9, 2025

/s/ *Srikanth Reddy*
Srikanth Reddy (BBO No. 669264)
Kate MacLeman (BBO No. 684962)
Tara Thigpen (BBO No. 707508)
**GOODWIN PROCTER LLP**
100 Northern Avenue
Boston, MA 02210
Telephone: (617) 570-1000
Fax: (617) 523-1231
SReddy@goodwinlaw.com
KMacleman@goodwinlaw.com
TThigpen@goodwinlaw.com

Andrew Ong (admitted *Pro Hac Vice*)
**GOODWIN PROCTER LLP**
601 Marshall Street
Redwood City, CA 94603
Tel: (650) 752-3100
Fax: (617) 853-1038
AOng@goodwinlaw.com

*Attorneys for Defendant Toast, Inc.*

20

## LOCAL RULE 7.1(a)(2) CERTIFICATION

I hereby certify that I have conferred in good faith with counsel for Plaintiffs Gratuity Solutions, LLC and Gratuity, LLC, regarding the above-captioned motion, and Plaintiffs oppose the relief requested.

*/s/ Srikanth Reddy*

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to the non-registered participants as known this May 16, 2025.

*/s/ Srikanth Reddy*

21